LYSAGHT LAW GROUP
Brian C. Lysaght (Bar. No. 61965)
blysaght@lysaghtlegal.com
12021 Wilshire Boulevard
Los Angeles, California 90025
Telephone: (310) 567-1111
Facsimile: (310) 472-0243
(Additional counsel listed below)
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY et al., <br><br> Plaintiffs, <br><br> - v - <br><br> COUNTRYWIDE FINANCIAL CORPORATION et al., <br><br> Defendants. | Case No. 2:11-cv-07166 <br> Hon. Mariana R. Pfaelzer |
| NATIONAL INTEGRITY LIFE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> - v - <br><br> COUNTRYWIDE FINANCIAL CORPORATION et al., <br><br> Defendants. | Case No. 2:11-cv-09889 <br> Hon. Mariana R. Pfaelzer |

## MEMORANDUM OF POINTS OF AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 2

BACKGROUND ................................................................................................... 4

    I.      Plaintiffs and Their Purchase of Countrywide MBS ........................... 4

    II.     The Complaints .................................................................................... 5

         A.     Procedural History ................................................................... 5

         B.     Plaintiffs' Misrepresentation and Omission Claims ................. 6

         C.     Plaintiffs' OCAA Claims ......................................................... 7

ARGUMENT ........................................................................................................ 8

    I.      Plaintiffs' Claims are Timely ............................................................... 9

         A.     Defendants Concede the OCAA Claims Are Timely ................. 9

         B.     The OSA Claims Are Timely .................................................... 9

             1.     The OSA Claims Based Upon Failure Properly to Transfer Notes and Files, and to Assign Mortgages Are Timely ........................................................................ 9

                  a.     Constructive Notice Must Be Assessed Individually For Each Category of Misrepresentation ................................................. 12

             2.     Western & Southern's OSA and Common Law Claims Based On Countrywide's Systemic Abandonment of Underwriting Guidelines Are Timely ........................... 14

                  a.     Press Reports Contradicted By Defendants Did Not Provide Constructive Notice ......................... 16

i

b.    Complaints Involving Different Frauds Did Not Provide Constructive Notice ..............................18

c.    Countrywide and Bank of America Fraudulently Concealed Their OSA Violations.........................19

d.    Western & Southern Was Not Aware That It Suffered Actual Injury Prior To April 2009.........23

3.    The OSA Statute of Repose Is Not Applicable ..............24

C.    National Integrity's Common Law Fraud Claims Are Timely .............................................................25

1.    The National Integrity Action Is Not "Procedurally Improper".............................................27

II.    Plaintiffs' Securities Act and OSA Claims Are Tolled Under *American Pipe* ..............................................................29

A.    Eight of Plaintiffs' Tranches Are Backed By The Same Loan Pools as Tranches Purchased By the *Luther* Plaintiffs .............30

B.    There Is a Strong Trend In Favor of the Application of *American Pipe* Tolling Notwitstanding That the Class Plaintiff Lacked Standing.........................................................33

C.    *American Pipe* Tolls Plaintiffs' State Law Claims.................36

III.    Western & Southern's OSA Claims Are Tolled Under Ohio Law.....36

IV.    This Court Has Personal Jurisdiction Over All of the Other Defendants.............................................................36

A.    The Tolled Tranches Provide Pendent Personal Jurisdiction Over Sieracki and Spector ...........................................41

B.    Mozilo and Sambol Are Subject to Jurisdiction Under the OCAA ...................................................................42

ii

C.  Jurisdiction Exists Under Ohio's Long Arm Statute ................42

    1.  The Officer Defendants Transacted Business In Ohio ...43

    2.  The Officer Defendants Caused Tortious Injury in Ohio
        ...................................................................................44

D.  This Court's Exercise of Jurisdiction Satisfies Due Process ....47

V.  This Court Should Grant Plaintiffs Leave to Replead Any Claims This
Court Dismisses .................................................................................50

CONCLUSION ...................................................................................51

iii

## <u>TABLE OF AUTHORITIES</u>

<u>Case</u> <u>Page</u>

*United States Fidelity & Guaranty Co. v. Lee Investments, LLC,*
   76 Cal. Comp. Cases 472 (9th Cir. Cal. 2011) ................................40

*Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
   173 F.3d 725 (9th Cir. 1999) .........................................................48

*Aguiar v. Natbony,*
   10-cv-6531-PGG, 2011 U.S. Dist. LEXIS (S.D.N.Y. May 16, 2011) ..........29

*Ahrendt v. Palmetto Federal Sav. & Loan Asso.,*
   680 F. Supp. 1125 (S.D. Ohio 1987) ................................................44

*A-I Nursing Care v. Florence Nightingale Nursing,*
   97 Ohio App. 3d 623, 647 N.E.2d 222 (Ohio 1994) ........................38

*Albano v. Shea Homes Ltd. P'ship,*
   634 F.3d 524 (9th Cir. 2011) .................................................. 30, 36

*Allegaert v. Warren,*
   480 F. Supp. 817  (S.D.N.Y. 1979) ..................................................26

*Allstate Insurance Company v. Countrywide Financial Corporation,*
   No. 2:11-CV-05236-MRP, 2011 U.S. Dist. LEXIS 123844 (C.D. Cal. Oct.
   21, 2011) ...................................................................... 10, 33

*Am. Sign. Inc. v. Moody's Investors,*
   09-cv-878-GLF, 2010 U.S. Dist. 68042 (S.D. Ohio July 2, 2010) ..............29

*American Lumbermens Mutual Casualty Co. of Illinois v. Cochrane,*
   129 N.Y.S.2d 489 (N.Y. Sup. Ct. 1954) ...........................................26

*American Pipe and Construction Company v. Utah,*
   414 U.S. 538 (1974) .......................................................... 29, 30

*Anschutz Corp. v. Merrill Lynch & Co.,*
   785 F. Supp. 2d 799 (N.D. Cal. 2011) ............................................50

*Antone v. General Motors Corporation,*
    64 N.Y.2d 20 (1984) .......................................................................................26

*Arandell Corporation v. American Electric Power Company,*
    No. 09-cv-231-MHW, 2010 U.S. Dist. LEXIS 96372 (S.D. Ohio Sept. 15,
    2010) ................................................................................................................40

*Armstrong v. Martin Marietta Corp.,*
    138 F.3d 1374  (11th Cir. 1998) ....................................................................32

*Ashcroft v. Iqbal,*
    556 U.S. 662, S. Ct. 1937 (2009) ...................................................................8

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgt. Inc.,*
    2011 NY Slip Op 9162 (N.Y. Ct. App. Dec. 20, 2011) ................................15

*Athenian Venture Partners III, L.P. v. Infrastructure Solutions, Inc.,*
    No. 08-cv-821, 2009 U.S. Dist. LEXIS 48840 (S.D. Ohio May 19, 2009) ..43

*Bahn v. Korean Airlines Co. (In re Korean Air Lines Co.),*
    642 F.3d 685 (9th Cir. 2011) ..........................................................................8

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................................8

*Betz v. Trainer Wortham & Co.,*
    519 F.3d 863  (9th Cir. 2008) ..........................................................................8

*Blue Flame Energy Corp. v. Ohio Dep't of Commerce,*
    171 Ohio App. 3d 514 (Ohio Ct. App. 10th Dist. 2006) ..............................44

*Bowles v. Reade,*
    198 F.3d 752 (9th Cir. 1999) .........................................................................50

*Chapman v. Hardin County,*
    No. 05-CV-433-S, 2006 U.S. Dist. LEXIS 47095 (W.D. Ky. May 15,
    2006) ................................................................................................................41

*City of Painesville v. First Montauk Fin.,*

v

178 F.R.D. 180 (N.D. Ohio 1998) .................................................. 12, 18

*CollegeSource, Inc. v. AcademyOne, Inc.,*
653 F.3d 1066 (9th Cir. 2011) ......................................................47

*Commonwealth of Massachusetts v. Bank of America, N.A.,*
No. 11-cv-4363 (Mass. Super. Suffolk Cty.)......................................9

*Connerly v. State Personnel Bd.,*
92 Cal. App. 4th 16 (Cal. App. 3d Dist. 2001) .................................32

*Cullen v. Margiotta,*
811 F.2d 698  (2d Cir. 1987) .......................................................36

*Curtis v. Williamson,*
226 F.3d 133 (2d Cir. 2000) ........................................................27

*DeChant v. Developers,*
No. 37745, 1978 Ohio App. LEXIS 8128  (Ohio Ct. App. 8th App. Dist.
Oct. 28, 1978) ...........................................................................14

*Doe v. Blue Cross/Blue Shield of Ohio,*
79 Ohio App. 3d 369, 607 N.E.2d 492 (Ohio Ct. App. 10th Dist. 2000) .....19

*Dunn & Fenley, LLC v. Diederich,*
06-cv-6243-TC, 2010 U.S. Dist. LEXIS 326 (D. Ore. Jan. 5, 2010)............29

*Esplin v. Hirschi,*
402 F.2d 94 (10th Cir. 1968) .................................................. 32, 35

*Federal Deposit Ins. Corp. v. Nichols,*
885 F.2d 633 (9th Cir. 1989) ........................................................27

*Federated Mgmt. Co. v. Coopers & Lybrand,*
137 Ohio App. 3d 366  (Ohio Ct. App., Franklin County 2000) ........... 16, 22

*Gaines v. Preterm-Cleveland, Inc.,*
33 Ohio St. 3d 54  (1987) ............................................................24

*Garnier v. Ludwick,*

vi

No. H024269, 2003 Cal. App. Unpub. LEXIS 7204 (Cal. App. 6th Dist. 2003) ...................................................................................30

*Gelman v. Westinghouse Electric Corp.*,
    556 F.2d 699 (3d Cir. 1977) .........................................................32

*Genentech, Inc. v. Eli Lilly and Co.*,
    998 F.2d 931 (Fed. Cir. 1993) .....................................................27

*Genesee County Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*,
    No. Civ. 09-CV-300, JB/KBM, 2011 U.S. Dist. LEXIS 133462 (D.N.M. Nov. 12, 2011) .......................................................................34

*Giovanniello v. ALM Media, LLC*,
    No. 09-cv-1409-JBA, 2010 U.S. Dist. LEXIS 92181 (D. Conn. Sept. 3, 2010) ...........................................................................................32

*Goldstein v. Christiansen*,
    70 Ohio St. 3d 232 (Ohio 1994) .................................................43

*Gor-Vue Corp. v. Hornell Elektrooptik AB*,
    634 F. Supp. 535 (N.D. Ohio 1986) ...........................................44

*Griffin v. Singletary*,
    17 F.3d 356 (11th Cir. 1994) ......................................................34

*Gruelich v. Monnin*,
    50 N.E. 2d 310 (Ohio 1943) ........................................................39

*Hardy v. VerMeulen*,
    32 Ohio St. 3d 45 (1987) .............................................................24

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. Cal. 2003) ............................................49

*Hater v. Gradison Div. of McDonald & Co. Secs. Inc.*,
    101 Ohio App. 3d 99, 655 N.E.2d 189 (Ohio Ct. App. 1st App. Dist. 1995)
    ...........................................................................................................14

*Helman v. EPL Prolong, Inc.*,

130 Ohio App. 3d 231 (Ohio Ct. App., 7th Dist. 2002) ........................ 19, 24

*Herbruck v. LaJolla Capital,*
 No. 19586, 2000 Ohio App. LEXIS 4668, 2000 WL 1420282 (Ohio Ct. App.
 9th Dist. Sept. 27, 2000) ...................................................................44

*Heritage Funding & Leasing Co. v. Phee,*
 120 Ohio App. 3d 422 (Ohio Ct. App. 10th Dist. 1997) ...............................45

*In re Alstom SA Sec. Litig.,*
 406 F. Supp 2d 402 (S.D.N.Y. 2005) ......................................... 12, 13, 14, 48

*In re CINAR Corp. Sec. Litig.,*
 186 F. Supp. 2d 279 (E.D.N.Y. 2002) .................................................48

*In re Columbus Skyline Securities,*
 74 Ohio St. 3d 495 (1996) ..............................................................15

*In re Deutsche Bank AG Sec. Litig.,*
 2011 U.S. Dist. LEXIS 93867  (S.D.N.Y. Aug. 19, 2011) ..........................34

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
 352 F. Supp. 2d 429  (S.D.N.Y. 2005) ................................................34

*In re IndyMac Mortgage-Backed Sec. Litig.,*
 793 F. Supp. 2d 637 (S.D.N.Y. June 21, 2011)......................................34

*In re Initial Public Offering Sec. Litig.,*
 No. 21 MC 92, 01-CV-9741 (SAS), 2004 U.S. Dist. LEXIS 26000
 (S.D.N.Y. Dec. 27, 2004). ..............................................................34

*In re LDK Solar Secs. Litig.,*
 No. 07-cv-05182 WHA, 2008 U.S. Dist. LEXIS 80717 (N.D. Cal. 2008)...47

*In re Linerboard Antitrust Litig.,*
 223 F.R.D. 335 (E.D. Pa. 2004) .......................................................36

*In re Medeva Sec. Litig.,*
 93-cv-4376 KN,  1994 U.S. Dist. LEXIS 11675 (C.D. Cal. June 3, 1994) ..49

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
 2011 U.S. Dist. LEXIS 104280 (S.D.N.Y. Sept. 15, 2011) ................... 34, 35

*In re Nat'l Century Fin. Enters.*,
 541 F. Supp. 2d 986 (S.D. Ohio 2007) ........................................................19

*In re Piper Aircraft Distribution System Antitrust Litigation*,
 551 F.2d 213 (8th Cir. 1977) .....................................................................27

*In re Polyurethane Foam Antitrust Litig.*,
 No. 1:10 MD 2196, 2011 U.S. Dist. LEXIS 104419 (N.D. Ohio Sept. 15,
 2011) ..........................................................................................................22

*In re UltraFem Inc. Sec. Litig.*,
 91 F. Supp. 2d 678 (S.D.N.Y. 2000) ...........................................................12

*In re Vertrue Mktg. & Sales Practices Litig.*,
 712 F. Supp. 2d 703  (N.D. Ohio 2010) ................................................. 32, 41

*In re Wachovia Equity Sec. Litig.*,
 No. 08-cv-6171, 2011 U.S. Dist. LEXIS 36129 (S.D.N.Y. Mar. 31, 2011) .34

*Indiana Plumbing Supply v. Standard of Lynn*,
 880 F. Supp. 743 (C.D. Cal. 1995) ..............................................................48

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ........................................47

*Iron Workers Local Union No.17 Ins. Fund v. Philip Morris, Inc.*,
 29 F. Supp. 2d 801, 808 (N.D. Ohio 1998),
 partial summary judgment granted in part, dismissed by 23 F. Supp. 771
 (N.D. Ohio 1998) .................................................................................. 19, 29

*Italian Colors Restaurant*,
 03-cv-3719-SI, 2003 U.S. Dist. LEXIS 20338 (N.D. Cal. Nov. 7, 2003) ....29

*iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*,
 No. C-11-0592 CW, 2011 U.S. Dist. LEXIS 144425 (N.D. Cal. Oct. 24,
 2011) ..........................................................................................................50

*j2 Global Communications, Inc. v. Blue Jay, Inc.*,
    No. 08-cv-4254, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905 (N.D. Cal. Jan. 5, 2009) ..................................................................................................48

*Javitch v. Neuma, Inc.*,
    No. 04-CV-1487, 2006 U.S. Dist. LEXIS 3561 (N.D. Ohio Jan. 31, 2006).43

*Jelm v. Galan*,
    No. 58093, 1991 Ohio App. LEXIS 936 (Ohio Ct. App. 8th Dist. 1991).....22

*Jimenez v. Weinberger*,
    523 F.2d 689 (7th Cir. 1975) ............................................................... 32, 35

*Kellen Co., Inc. v. Calphalon Corp.*,
    54 F. Supp. 2d 218 (S.D.N.Y. 1999) .......................................................27

*Kemp v. Countrywide Home Loans, Inc. (In re Kemp)*,
    440 B.R. 624 (Bankr. D.N.J. Nov. 16, 2010) ..........................................11

*Keystone Fruit Mktg. v. Nat'l Fire Ins. Co. of Hartford*,
    No. 10-CV-5145, 2011 U.S. Dist. LEXIS 83977 (E.D. Wash. Aug. 1, 2011)
    ...........................................................................................................27

*Kinney v. Ohio Dep't of Administrative Services*,
    30 Ohio App. 3d 123 (Ohio Ct. App. 1986).............................................39

*Konig v. State Bar of Cal.*,
    No. 04-cv-2210, 2004 U.S. Dist. LEXIS 19498 (N.D. Cal. Sept. 16, 2004) 50

*Ky. Oaks Mall Co. v. Mitchell's Formal Wear*,
    53 Ohio St. 3d 73 (Ohio 1990) ..............................................................43

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
    501 U.S. 350 (U.S. 1991) ......................................................................24

*Lanthorn v. Cincinnati Ins. Co.*,
    2002 Ohio App. LEXIS 6573 (Ohio Ct. App., 4th Dist. Dec. 5, 2002) ........38

*Lopardo v. Lehman Bros., Inc.*,
    548 F. Supp. 2d 450 (N.D. Ohio 2008) ............................................. 19, 24

*Loyd v. Huntington Nat'l Bank*,
     No. 08-CV-2301-DCN, 2009 U.S. Dist. LEXIS 51858 (N.D. Ohio 2009) ..24

*Luther v. Countrywide Home Loans Servicing LP*,
     BC380698 (Cal. Super. Ct.).............................................. 3, 33, 35

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
     519 F.3d 1025 (9th Cir. 2008) ...................................................50

*Mathison v. Bumbo*,
     No. 08-cv-0369, 2008 U.S. Dist. LEXIS 108511 (C.D. Cal. Aug. 18, 2008)
        ..............................................................................51

*McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*,
     295 F.3d 380 (3d Cir. 2002) ....................................................34

*McMahon & Company v. Donaldson, Lufkin & Jenrette Securities Corporation*,
     727 F. Supp. 833 (S.D.N.Y. 1989) ...............................................26

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
     722 F. Supp. 2d 1157 (C.D. Cal. 2010) ................................ 30, 35, 36, 39

*Merck & Co. v. Reynolds*,
     130 S. Ct. 1784 (2010)...........................................................9

*Merrick Bank Corp. v. Savvis, Inc.*,
     No. 08-cv-675-ERW, 2008 LEXIS 99393 (E.D. Mo. Dec. 8, 2008)..... 27, 28

*Metz v. Unizan Bank*,
     No. 05 CV 1510, 2008 U.S. Dist. LEXIS 37270 (N.D. Ohio May 5, 2008) 24

*Moffitt v. Richard M. Hamlin Constr. Co.*,
     29 Ohio App. 3d 98 (Ohio Ct. App., 9th Dept. 1985)....................23

*National Paint & Coatings Assn. v. State of California*,
     58 Cal. App. 4th 753 (Cal. App. 2d Dist. 1997)..........................32

*New Mexico State Investment Council v. Countrywide Financial Corporation*,
     No. D-0101-CV-2008-02289 (N.M. Dist. Ct.)..............................49

xi

*Newby v. Enron Corp. (In re Enron Corp. Secs)*,
    465 F. Supp. 2d 687 (S.D. Tex. 2006)............................................................36

*Norgard v. Brush Wellman*,
    95 Ohio St. 3d 165 (Ohio 2002) .................................................................23

*NPF XII, Inc. v. Special Care, Inc.*,
    No. 00-CV-1048, 2001 U.S. Dist. LEXIS 24351 (S.D. Ohio Feb. 13, 2001)
    .............................................................................................................45

*Oglesby v. County of Kern*,
    No. 05-cv-873-REC, 2005 U.S. dist. LEXIS 29363 (E.D. Cal. Nov. 4, 2005)
    .............................................................................................................27

*Ohio Civ. Rights Comm'n v. Triangle Real Estate Servs.*,
    No. 06AP-157, 2007 Ohio App. LEXIS 1639 (Ohio Ct. App., 10th App.
    Dist., Apr. 17, 2007) ...............................................................................23

*Ohio ex rel. Dewine v. GMAC Mortg., LLC*,
    No. 10-CV-2537, 2011 U.S. Dist. LEXIS 53449 (N.D. Ohio May 18, 2011)
    .............................................................................................................45

*Openwave Sys. v. Fuld*,
    No. 08-cv-5683-SI, 2009 U.S. Dist. LEXIS 48206 (N.D. Cal. June 6, 2009)
    ......................................................................................................... 48, 50

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ..................................................................48

*Popoola v. Md-Individual Practice Ass'n*,
    230 F.R.D. 424 (D. Md. 2005) ..................................................................34

*Ralston v. Mortgage Investors Group, Inc.*,
    C 08- 536 JF (RS), 2009 WL 688858 (N.D. Cal. Mar. 16, 2009).................51

*Raniere v. Citigroup Inc.*,
    No. 11-cv-2448-RWS, 2011 U.S. Dist. LEXIS 135393  (S.D.N.Y. Nov. 22,
    2011) ......................................................................................................27

*Rippey v. Smith,*
    16 Fed. Appx. 596 (9th Cir. 2001) ....................................................49

*Satterwhite v. City of Greenville,*
    578 F.2d 987 (5th Cir. 1978) ............................................ 32, 35, 42

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) ..............................................................................8

*See In re Nat'l Century Fin. Enters.,*
    755 F. Supp. 2d 857 (S.D. Ohio 2010),
    partial summary judgment denied, 755 F. Supp. 2d 857 (S.D. Ohio 2010)....9

*Semmes Motors, Inc. v. Ford Motor Co.,*
    429 F.2d 1197 (2d Cir. 1970) ...........................................................28

*Sherman v. Air Reduction Sales Co.,*
    251 F.2d 543 (6th Cir. 1958) ...........................................................39

*State ex rel. Coles v. Granville,*
    116 Ohio St. 3d 231, 877 N.E.2d 968 (Ohio 2007).........................38

*State v. Taubman,*
    78 Ohio App.3d 834 (1992) .............................................................15

*The Fair Die & Specialty Co.,*
    228 U.S. 22 (1913).............................................................................28

*Tosti v. Los Angeles,*
    754 F.2d 1485  (9th Cir. 1985) .........................................................36

*Toyz, Inc. v. Wireless Toyz Franchise, LLC,*
    No. C-09-05091 JF, 2010 U.S. Dist. LEXIS 12032 (N.D. Cal. Jan. 25, 2010)
    .........................................................................................................48

*Unencumbered Assets, Trust v. JP Morgan Chase Bank (In re Nat'l Century Fin. Enters.),*
    617 F. Supp. 2d 700 (S.D. Ohio 2009).........................................44

*United States ex rel. Tillson v. Lockheed Martin Energy Sys.,*

No. 5:00CV-39-M, 2004 U.S. Dist. LEXIS 22246 (D. Ky. 2004)..............23

*United Western Bank v. Countrywide Financial Corporation*,
No. 2010-CV-3325 (C.O. Dist. Ct.) ........................................49

*Vaccariello v. Smith & Nephew Richards, Inc.*
94 Ohio St. 3d 380 (Ohio 2002) .....................................3, 36

*Veliz v. Cintas Corp.*,
No. 03-cv-1180-SBA, 2007 U.S. Dist. LEXIS 24428 (N.D. Cal. Mar. 20,
2007) .......................................................................32

*Verizon Directories Corp. v Continuum Health Partners, Inc.*,
2010 NY Slip Op 4640 (N.Y. App. Div. 1st Dept. 2010) ...........25

*Washington State Plumbing & Pipefitting Pension Trust v. Countrywide Financial
Corp.*,
BC392571 (Cal. Super. Ct. 2008) ...................................35

*Womack v. UPS*,
311 F. Supp. 2d 492 (E.D.N.C. 2004) ..............................32

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) ..............50

*Wyatt v. Terhune*,
315 F.3d 1108 (9th Cir. 2003) ........................................8

*Wydallis v. United States Fidelity & Guaranty Co.*,
63 N.Y.2d 872 (1984)...............................................25, 26

*Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*,
413 F.3d 553 (6th Cir. 2005) .........................................40

*Zanders v. O'Gara-Hess & Eisenhardt Armoring Co.*,
1992 U.S. App. LEXIS 535 (6th Circuit 1992)........................39

xiv

| Statute | Case |
|---|---|
| 17 C.F.R. § 229.1121 | 20 |
| C.O. ST § 13-1-124 | |
| N.Y.C.R. 202 | 25, 26 |
| Federal Rule of Civil Procedure 15(a) | 50 |
| N.M. ST § 38-1-16 | 49 |
| O.R.C § 1707.41 | 6 |
| O.R.C. § 1707.40 | 15 |
| O.R.C. § 1707.43 | passim |
| O.R.C. § 1707.44 | 6 |
| O.R.C. § 2305.09(C) | 14, 15 |
| O.R.C. § 2307 | 43 |
| O.R.C. § 2923.34 | 9, 42 |
| Ohio Constitution, Article I, Section 16 | 24 |

The Western and Southern Life Insurance Company, Western-Southern Life Assurance Company, Columbus Life Insurance Company, Integrity Life Insurance Company, and Fort Washington Investment Advisors, Inc. (collectively, "Western & Southern"), plaintiffs in *The Western and Southern Life Insurance Company et al. v. Countrywide Financial Corporation et al.*, No. 11-CV-7166-MRP (the "Western & Southern Action"), and National Integrity Life Insurance Company ("National Integrity"), plaintiff in *National Integrity Life Insurance Company v. Countrywide Financial Corporation et al.*, No. 11-CV-9889-MRP (the "National Integrity Action"), respectfully submit this memorandum of points of authority and the Declaration of Brian C. Lysaght, dated January 13, 2012 ("Lysaght Decl."), in opposition to Countrywide's,[1] Bank of America's[2] and the Officer Defendants'[3] motions to dismiss. *See* Western & Southern Action Dkt. Nos. 152, 154, 158, 162, 164, 168, 170, 171; National Integrity Action Dkt. Nos. 47, 49, 52, 56, 58, 59, 60, 62.[4]

---

[1] References to "Countrywide" are to defendants Countrywide Financial Corporation ("Countrywide Financial"), Countrywide Home Loans, Inc., Countrywide Capital Markets, LLC, Countrywide Securities Corporation ("Countrywide Securities"), and CWALT, Inc., CWABS, Inc., CWHEQ, Inc., and CWMBS, Inc.

[2] References to "Bank of America" are to defendants Bank of America Corporation, Bank of America, N.A., BAC Home Loans Servicing, LP ("BAC Servicing"), and NB Holdings Corporation.

[3] References to the "Officer Defendants" are to defendants Angelo Mozilo, David Sambol, Eric Sieracki, Ranjit Kripalani, Stanford Kurland, David A. Spector, N. Joshua Adler, and Jennifer Sandefur.

[4] Bank of America and the Officer Defendants have joined in Countrywide's motion to dismiss. As a result, the points of authority set forth in this memorandum apply equally to each Defendant's motion to dismiss.

**PRELIMINARY STATEMENT**

Defendants' motions to dismiss should be denied because they are based on the faulty premise that the Western & Southern Action and the National Integrity Action are substantially identical to certain cases already considered by this Court. Aside from the identity of Defendants and some overlapping evidence concerning their misconduct, the instant actions bear little resemblance to those previously considered lawsuits.

First, unlike any of the prior actions, the Western & Southern Action and the National Integrity Action assert claims under the Ohio Corrupt Activities Act (the "OCAA"). Defendants concede that these claims are timely.

Second, the Western & Southern Action and the National Integrity Action assert claims under the Ohio Securities Act (the "OSA") and common law fraud that are based on misrepresentations and other misconduct not before this Court in any of the prior actions. For example, Plaintiffs allege that Countrywide misrepresented to investors that promissory notes and loan files were properly transferred and mortgages properly assigned to securitization trusts. These steps were necessary to ensure that the Countrywide-sponsored securitization trusts could foreclose in the event of a borrower default. As detailed in the Complaints,[5] as well as in recent actions by multiple state attorneys general, Countrywide in fact consistently failed to meet rules governing assignment of mortgages, and transfer of promissory notes and loan files. Countrywide does not contest that Plaintiffs could not have known of this misconduct prior to September 2010. Defendants thus concede that Plaintiffs' OSA and common law fraud claims based on transfer and assignment misrepresentations are timely.

---

[5] References to the "Complaints" are to the Amended Complaint in the Western & Southern Action and the substantially similar Complaint in the National Integrity Action.

1          <u>Third</u>, unlike any of the prior actions, the Western & Southern Action and

2    the National Integrity Action allege that from 2007 through at least June 2009,

3    Countrywide and Bank of America (after its acquisition of Countrywide) provided

4    Remittance Reports[6] for Plaintiffs to use in monitoring their Countrywide

5    mortgage-backed securities ("MBS") certificates (the "Certificates").

6    Unbeknownst to Plaintiffs, the Remittance Reports falsely portrayed material

7    aspects of loan pools underlying the Certificates.  This disinformation led Plaintiffs

8    to believe that virtually all of the Certificates were performing well and would

9    make all expected principal and interest payments.  As a result, the principles of

10   equitable estoppel and fraudulent concealment require tolling of the limitations

11   periods on Plaintiffs' common law fraud claims and certain of Plaintiffs' Exchange

12   Act and OSA claims.

13         <u>Fourth</u>, Plaintiffs assert arguments relating to *American Pipe* tolling that

14   have not been previously submitted to this Court.  Plaintiffs own a number of

15   tranches that are backed by the same loan pools as those at issue in *Luther v.*

16   *Countrywide Home Loans Servicing LP*, BC380698 (Cal. Super. Ct.) ("*Luther*").

17   As this Court is aware, *Luther* has been reinstated.  The Court appears not to have

18   had the opportunity to consider the long line of Circuit Court rulings that when a

19   class action is reinstated, class members' claims are tolled as if the class claims had

20   never been dismissed.  In addition, the Court has yet to consider whether Western

21   & Southern is entitled to tolling under the decision of the Ohio Supreme Court in

22   *Vaccariello v. Smith & Nephew Richards, Inc.* 94 Ohio St. 3d 380 (Ohio 2002)

23   ("*Vaccariello*").  As described below, *Vaccariello* requires that Western &

24   Southern be allowed at least one year from this Court's dismissal of the First

25

26   _____

27   [6] References to "Remittance Reports" are to the loan tapes and statistical matrices
     described in Paragraphs 375 and 380 of the Complaints.

1  Amended Complaint in *Maine State Retirement System v. Countrywide Financial*

2  *Corporation*, No. 10-CV-0302-MRP ("*Maine State*") on November 4, 2010 to

3  assert their Ohio state law claims.

4       In sum, Defendants' motions to dismiss are based on little more than an

5  unsupported mantra that the Western & Southern Action and the National Integrity

6  Action are virtually identical to prior actions dismissed by this Court.  In fact, there

7  are numerous and highly substantial differences between the instant lawsuits and

8  the prior actions, and Plaintiffs respectfully submit that those differences require

9  that Defendants' motions to dismiss be denied.

10                          **BACKGROUND**

11 **I.    Plaintiffs and Their Purchase of Countrywide MBS**

12       Five of the six Plaintiffs in the present actions are mutual life insurance

13 companies.  Complaints ¶ 2.[7]  Mutual insurers are subject to state insurance

14 regulations including capital requirements that effectively limit the types of such

15 insurers' investments.  *Id.*  Plaintiffs generally purchased only senior "Class A"

16 Certificates rated triple-A or the equivalent, seeking securities with stable principal

17 and interest payments that would allow them to comply with insurance regulatory

18 capital requirements.  *Id.*  Plaintiffs diligently analyzed expected cash flows under

19 the Certificates for valuation, regulatory and accounting purposes.  Until mid-2009,

20 Plaintiffs used a propriety monitoring system developed with input from

21 Countrywide for this purpose.  *Id.* ¶¶ 374-75.

22       From June 2005 to March 2008, Plaintiffs purchased $541 million of

23 Countrywide-sponsored MBS (Western & Southern $447 million, and National

24

25 [7] The sixth plaintiff is Fort Washington Investment Advisors, Inc., a registered
26 investment advisor acting on behalf of Fort Washington Active Fixed Income
   LLC.  Western & Southern Am. Complaint ¶ 19.
27

1    Integrity $94 million). Complaints, Ex. A. The Certificates were issued in 32

2    separate offerings; Western & Southern purchased certificates in all 32 offerings,

3    and National Integrity purchased in 24. *Id.* ¶ 11. In total, Plaintiffs bought

4    Certificates in 37 tranches (Western & Southern in 36 tranches, and National

5    Integrity in 26). *Id.* ¶ 373.

6           The Certificates are generally situated at senior levels in the capital structure

7    of their respective offerings. Indeed, 33 of Plaintiffs' 37 tranches are so called

8    "Class A" certificates at or near the top of the payment waterfall, *id.* ¶ 373, and 34

9    tranches were rated triple-A or the equivalent at the time of purchase, *id.* Ex. C.

10          The Certificates did not suffer any diminution in interest or principal

11   payments prior to February 2010, and only 6 of the 37 tranches have experienced

12   such shortfalls since that time. *Id.* ¶ 384.[8]

13   **II.    The Complaints**

14          **A.     Procedural History**

15          On April 27, 2011, Plaintiffs filed a complaint in the Southern District of

16   Ohio against Countrywide, Bank of America, and the Officer Defendants asserting

17   claims under the Securities Act, the Exchange Act, the OSA, and Ohio common

18   law. On November 8, 2011, after this action had been transferred to the

19   Countrywide MBS MDL, Western & Southern filed an Amended Complaint

20   dropping National Integrity as a party, and adding claims under the Ohio Corrupt

21   Activities Act (the "OCAA") and for civil conspiracy.

22          On November 9, 2011, National Integrity filed its own action in the

23   Southern District of New York. The National Integrity Complaint is substantially

24   _____

25   [8] The National Integrity Complaint inaccurately alleges that six of National

26   Integrity's tranches have experienced principal or interest shortfalls. National
     Integrity Complaint ¶ 384. In fact, National Integrity has experienced shortfalls

27   with respect to five tranches, all of which are also held by Western & Southern.

5

1  similar to the Western & Southern Amended Complaint.  National Integrity
2  ensured that the MDL Panel learned of its New York action, and, as a result, the
3  Panel transferred the National Integrity Action to the Countrywide MBS MDL on
4  November 30, 2011.

**B.    Plaintiffs' Misrepresentation and Omission Claims**

6      The Complaints assert that Countrywide made multiple misrepresentations
7  and omissions in registration statements, prospectuses, prospectus supplements,
8  data compilations, and loan tapes concerning the Certificates (collectively, the
9  "Offering Materials"), an in the monthly Remittance Reports Countrywide
10  prepared following the offerings.  The Complaints identify five categories of these
11  misrepresentations and omissions:

12  • Misrepresentations and omissions concerning adherence to prudent
13  underwriting guidelines.  Complaints ¶¶ 76-130.

14  • Misrepresentations and omissions concerning the transfer of notes and
15  loan files and assignment of mortgages to the trusts.  *Id.* ¶¶ 197-242.

16  • Misrepresentations and omissions regarding Countrywide's property
17  appraisal practices.  *Id.* ¶¶ 243-255.

18  • Misrepresentations and omissions regarding the Certificates' credit
19  ratings.  *Id.* ¶¶ 256-259.

20  • Misrepresentations and omissions regarding mortgage insurance and
21  Countrywide's mortgage insurance kickback scheme.  *Id.* ¶¶ 260-276.

22      Plaintiffs allege claims based on these misrepresentations and omissions
23  under the OSA,[9] the Securities Act of 1933 (the "Securities Act"), the Securities

25  ─────────────
26  [9] Western & Southern and National Integrity assert claims under ORC §§ 1707.41
   (Count I), 1707.44(B)(4) (Count II), 1707.44(J) (Count III), 1707.44(G) (Count
   IV), and 1707.43 (Count V).

27

6

1    and Exchange Act of 1934 (the "Exchange Act"), common law fraud, civil

2    conspiracy and negligent misrepresentation.  Plaintiffs further allege that they

3    could not have known of their claims based on Countrywide's failure to properly

4    deliver original notes and loan files and assign mortgages until September 2010,

5    Complaints ¶ 386, and could not have known of their other misrepresentation and

6    omission claims prior to April 27, 2009.  *Id.* ¶¶ 372-386.

7        **C.    Plaintiffs' OCAA Claims**

8            The Complaints allege that Mozilo, Sambol, Countrywide, and Bank of

9    America, along with certain unnamed parties, conducted the affairs of an

10   association-in-fact enterprise through a pattern of corrupt activity in violation of

11   the OCAA.  Complaints ¶¶ 419-420.  This pattern of corrupt activity included

12   Defendants' multiple violations of the OSA and a wide range of other misconduct.

13   For example, Countrywide's principal loan originator, Countrywide Home Loans,

14   approved any loan that could be off-loaded onto investors without regard to

15   whether the loan complied with Countrywide's already lax underwriting standards.

16   *Id.* ¶¶ 5, 62-74, 76-130.  Where borrowers plainly could not repay loans

17   Countrywide sought to foist upon them, Countrywide employees many times

18   forged documents to create the appearance that the borrowers qualified for a loan.

19   *Id.* ¶¶ 131-167.  As another example, BAC Servicing routinely overcharged

20   defaulting borrowers for services such as property inspection and maintenance.

21   Complaints ¶¶ 189-195.  BAC Servicing also engaged in a corrupt "force-placed"

22   insurance scheme whereby it replaced homeowner insurance policies on defaulted

23   properties with policies underwritten by an insurer owned by Bank of America at

24   wildly inflated premiums.  *Id.* ¶ 196.  Bank of America continued the work of the

25   enterprise by having its employees regularly commit perjury in foreclosure

26   proceedings necessitated by Countrywide's failure properly to deliver notes and

27   loan files, and to assign mortgages.  *Id.* ¶¶ 209-240.

1

## **ARGUMENT**

2   In deciding a motion to dismiss, "the Court must assume the plaintiff's

3 allegations are true and draw all reasonable inferences in the plaintiff's favor."

4 *Stichting Pensioenfonds ABP v. Countrywide Financial Corporation*, No. 10-CV-

5 07275 MRP, 2011 U.S. Dist. LEXIS 91441, at *5 (C.D. Cal. Aug. 9, 2011)

6 ("*Stichting*"). A motion to dismiss must be denied if the complaint "'state[s] a

7 claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, __,

8 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S.

9 544, 570 (2007)). "The plausibility standard is not akin to a 'probability

10 requirement.'" *Id.* Accordingly, "a well-pleaded complaint may proceed even if it

11 strikes a savvy judge that actual proof of those facts is improbable, and 'that a

12 recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (*quoting*

13 *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).[10]

14   "[I]t is well-settled that statutes of limitations are affirmative defenses, not

15 pleading requirements." *Wyatt v. Terhune*, 315 F.3d 1108, 1117 (9th Cir. 2003).

16 Defendants bear a "considerable burden" on a motion to dismiss based on a statute

17 of limitations defense. *Betz v. Trainer Wortham & Co.*, 519 F.3d 863, 871 (9th

18 Cir. 2008). Here, Defendants have not met that heavy burden.

19

20

21

22

---

23   [10] As an MDL transferee court, this Court applies the law of the transferor court as

24 to choice of law, and Ninth Circuit law as to interpretation of federal law. *See*
*Bahn v. Korean Airlines Co. (In re Korean Air Lines Co.)*, 642 F.3d 685, 700 n.12

25 (9th Cir. 2011). As a result, Ohio choice of law rules apply to the Western &
Southern Action, and New York choice of law rules to the National Integrity

26 Action.

27

1  **I.    Plaintiffs' Claims are Timely**

2      **A.    Defendants Concede the OCAA Claims Are Timely**

3          Countrywide concedes that Western & Southern's and National Integrity's

4  claims under the OCAA are timely.[11]

5      **B.    The OSA Claims Are Timely**

6          OSA claims are timely if brought within "two years after the plaintiff knew,

7  or had reason to know, of the facts by reason of which the actions of the person or

8  director were unlawful."  O.R.C. § 1707.43(B).  In determining constructive notice

9  under this provision, Ohio courts look to federal law and apply to OSA claims the

10  standard set forth in *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010).  *See In re*

11  *Nat'l Century Fin. Enters.*, 755 F. Supp. 2d 857 at 868 (S.D. Ohio 2010).  Under

12  *Merck*, the limitations period for securities fraud does not begin to run until the

13  plaintiff knew or should have known of all the elements of its fraud claims,

14  including scienter.  130 S. Ct. 1784, 1796 (U.S. 2010).  Countrywide does not

15  dispute that, applying the *Merck* standard, Plaintiffs were not on constructive

16  notice of their OSA claims until they knew or should have known facts alerting

17  that each distinct misrepresentation was made with the requisite intent.  *In re Nat'l*

18  *Century Fin. Enters.*, 755 F. Supp. 2d at 869-70; *see also* Countrywide Mem. at 33.

19          **1.    The OSA Claims Based Upon Failure Properly to Transfer**

20                  **Notes and Files, and to Assign Mortgages Are Timely**

21          Multiple state attorneys general have recently commenced actions against

22  Bank of America or its agents alleging widespread misconduct in foreclosure

23  proceedings due to Countrywide's failure properly to transfer notes and loan files,

24  and to assign mortgages to securitizations trusts.  *See Commonwealth of*

25  _____

26  [11] An OCAA claim is timely if brought (i) within five years "after the unlawful
conduct terminates" or (ii) within five years after "the cause of action accrues,"

27  whichever date is later.  O.R.C. § 2923.34(J).

1   *Massachusetts v. Bank of America, N.A.*, No. 11-CV-4363 (Mass. Super. Suffolk
2   Cty.); *In the Matter of Bank of New York Mellon v. Walnut Place LLC et al.*, No.
3   11-CV-05988-WHP (S.D.N.Y.).  Similar allegations form the basis of a distinct set
4   of Plaintiffs' OSA Claims, and that set of claims was not addressed in *Maine State*,
5   *Stitching*, or *Allstate Insurance Company v. Countrywide Financial Corporation*,
6   No. 11-CV-05236-MRP, 2011 U.S. Dist. LEXIS 123844 (C.D. Cal. Oct. 21, 2011)
7   ("*Allstate*").

8       The Complaints allege that Countrywide misrepresented that original
9   mortgage notes and loan files would be delivered, and that mortgages would be
10  properly assigned, to the securitization trusts that issued the Certificates.
11  Complaints ¶¶ 197-242.  The Offering Materials indicated that "each loan is
12  secured by a valid lien on, or a perfected security interest with respect to, the
13  Property."  Complaints ¶ 205.  Countrywide further represented:

14      In connection with the transfer and assignment of a mortgage loan, the
15      depositor will deliver or cause to be delivered to the trustee, or a
16      custodian for the trustee, the mortgage file, which contains among
17      other things,

18  • the original mortgage note (and any modification or amendment to it)
19      endorsed in blank without recourse, except that the depositor may
20      deliver or cause to be delivered a lost note affidavit in lieu of any
21      original mortgage note that has been lost;

22  • the original instrument creating a first lien on the related mortgaged
23      property with evidence of recording indicated thereon or a copy of
24      such instrument; [and]

25  • an assignment in recordable form of the mortgage or a copy of such
26      assignment . . . .

27

10

1    Complaints ¶ 206 (quoting CWALT 2007-16CB Prospectus Supplement at S-39-S-
2    40); *see also id.* ¶ 207 (reassuring statements regarding the use of the Mortgage
3    Electronic Registration System).

4         The Complaints detail how these statements were false and misleading.
5    Complaints ¶¶ 209-242.  In many instances, the collateral did not properly secure
6    the underlying loans and could not be efficiently realized because Defendants
7    either lost, failed to timely create, or failed to timely deliver the paperwork
8    necessary to prove title to the mortgages and the notes under state law.  *Id.*  For
9    example, the Complaints cite testimony of a Countrywide employee that
10   Countrywide did not make any attempt to transfer or endorse notes to
11   securitization trusts.  *Id.* ¶¶ 211-217.  This testimony came to light only in
12   November 2010.  *See Kemp v. Countrywide Home Loans, Inc. (In re Kemp)*, 440
13   B.R. 624 (Bankr. D.N.J. Nov. 16, 2010).

14        The Complaints establish that Countrywide and Bank of America have
15   engaged in pervasive acts of fraudulent "robo-signing" in an attempt to cover up
16   the massive failure to deliver notes and loan files, and to assign mortgages.
17   Complaints ¶¶ 218-40.  Bank of America and BAC Servicing employ an army of
18   "robo-signers" who execute tens of thousands of foreclosure affidavits a month, all
19   of which falsely aver personal knowledge, and many of which lack valid
20   documentation.  *Id.*  The Complaints detail numerous other acts of perjury and
21   forgery in foreclosure proceedings by Countrywide and BAC Servicing personnel.
22   *Id.* ¶¶ 229-40.

23        Countrywide does not dispute that Plaintiffs could not have known of
24   Countrywide's systemic documentation failures prior to September 2010.  *See*
25   Complaints ¶ 386.  Indeed, none of the complaints or press reports pre-dating
26   September 2010 attached to the Request for Judicial Notice ("RJN") references

27

1  Countrywide's systemic failure properly to deliver notes and loan files, and to

2  assign mortgages to the trusts. *See* Countrywide's RJN Exs. 71-95, 106-114.

3        Countrywide argues that the Complaints' "robo-signing" allegations cannot

4  toll claims relating to Countrywide's fraudulent origination practices. *See*

5  Countrywide Mem. at 36. But Plaintiffs' allegations concerning transfer of notes

6  and loan files and assignment of mortgages do not concern merely "robo-signing"

7  and are entirely unrelated to their allegations concerning loan origination

8  guidelines. The misrepresentations concerning failure properly to transfer notes

9  and loan files, and to assign mortgages to the trusts, and the vast "robo-signing"

10  conspiracy to hide that failure, give rise to distinct claims dealt with in a distinct

11  section of each Complaint. *See* Complaints ¶¶ 197-242.

12               a.    **Constructive Notice Must Be Assessed Individually**

13                  **For Each Category of Misrepresentation**

14        When a prospectus contains multiple categories of misrepresentations, a

15  court must independently assess the date that plaintiffs knew or should have known

16  of *each* category of misrepresentation. *See In re Alstom SA Sec. Litig.*, 406 F.

17  Supp. 2d 402, 423-24, 429 (S.D.N.Y. 2005); *In re UltraFem Inc. Sec. Litig.*, 91 F.

18  Supp. 2d 678, 693 (S.D.N.Y. 2000). Notice of one misstatement does not provide

19  notice of all misstatements or claims. *See City of Painesville v. First Montauk*

20  *Fin.*, 178 F.R.D. 180, 195 (N.D. Ohio 1998) (lawsuit involving same securities did

21  not trigger OSA or federal limitations period because subsequent complaint alleged

22  new and distinct fraud).

23        For example, in *UltraFem*, defendants argued that the plaintiffs were on

24  notice of their Securities Act and Exchange Act claims because a news article

25  disclosed facts concerning some, but not all, of the misstatements cited in the

26  complaint. 91 F. Supp. 2d at 691-92. The court held that knowledge of some

27  misstatements did not start the limitations period for claims relating to other

1   distinct misstatements, and that therefore claims based on misstatements that were

2   not disclosed in the news report were timely. *Id.* at 693.  In *Alstom*, the plaintiffs

3   alleged that the defendants failed accurately to disclose costs associated with

4   defective turbines and certain financing agreements.  406 F. Supp 2d at 421-24.

5   Although the misrepresentations were in the same offering documents and made

6   for the same fraudulent purpose, the court found that because the

7   misrepresentations were "dissimilar" the plaintiffs had alleged two separate frauds.

8   *Id.* 424-25.  That the plaintiffs had notice of misstatements concerning the

9   financing agreements could not cause claims based on the turbine

10  misrepresentations to be untimely.  *Id.* 424-25, 429.

11         Like the misrepresentations in *Ultrafem* and *Alstom*, Countrywide's distinct

12  misrepresentations regarding delivery of notes, delivery of loan files, and

13  assignment of mortgages have nothing to do with Countrywide's other

14  misrepresentations concerning origination guidelines, property appraisals, credit

15  ratings, or mortgage insurance. *Compare* Complaints ¶¶ 197-242 *with id.* ¶¶ 76-

16  130 (misrepresentations concerning origination guidelines), *id.* ¶¶ 243-255

17  (misrepresentations concerning appraisals), *id.* ¶¶ 256-259 (misrepresentations

18  concerning ratings), *id.* ¶¶ 260-276 (misrepresentations concerning mortgage

19  insurance).  Countrywide's failure properly to deliver notes and loan files, and to

20  assign mortgages relates to securitization trust administration and loan servicing,

21  not the fraudulent origination practices earlier considered by this Court.  Moreover,

22  that failure has caused and continues to cause harm arising out of foreclosure and

23  loan restructuring delays that is wholly unrelated to origination practices.

24         Indeed, the parties advocating for the $8.5 billion loan put-back settlement in

25  *In the Matter of Bank of New York Mellon v. Walnut Place LLC et al.*, 11-CV-

26  05988-WHP (S.D.N.Y.) have emphasized that Countrywide's monumental

27  documentation failures have severely harmed investors and threaten future injury

1    as well.  *See* Lysaght Decl. Ex. 1 at 2 (servicing improvements and "document

2    indemnity" agreed to in the settlement agreement could avoid billions of dollars of

3    future investor losses).

4         That Countrywide made all the misstatements alleged in the Complaints in

5    order to cause the Certificates to appear more attractive to investors does not

6    negate the fact that notice of different misstatements—and thus different claims—

7    accrued on different dates.  *See Alstom*, 406 F. Supp 2d at 429.  Accordingly, all of

8    the OSA claims and common law based on the misstatements alleged in Section

9    VII of the Complaints are indisputably timely.  All of the Exchange Act claims are

10   similarly timely to the extent not precluded by the applicable 5-year statute of

11   repose.[12]

12        **2.     Western & Southern's OSA and Common**

13              **Law Claims Based On Countrywide's Systemic**

14              **Abandonment of Underwriting Guidelines Are Timely**

15        Western & Southern filed this action on April 27, 2011.  Accordingly, its

16   OSA and Ohio common law fraud claims based on Countrywide's systemic

17   abandonment of its underwriting standards are timely if Western & Southern did

18   not have actual or constructive notice of its claims prior to April 27, 2009.  *See*

19   O.R.C. § 1707.43(B).[13]

20

21   _____

     [12] While the *Stitchting* opinion mentions allegations regarding failure "to properly
22   convey title to secondary purchasers," *Stitchting*, 2011 U.S. Dist. LEXIS 91441, at
     *22, the *Stitchting* opinions did not address the allegations concerning
23   Countywide's systemic failure to deliver notes and loan files and assign mortgages.
     Indeed, none of the misrepresentations Plaintiffs allege relating to documentation
24   failures were identified in the *Stitchting* complaint.
25
     [13] Under O.R.C. § 2305.09(C), common law fraud claims must be brought within
26   four years of discovery of the facts giving rise to the claim.  The majority of Ohio
     intermediate appellate courts that have considered the issue have ruled that O.R.C.
27

                                         14

1    None of this Court's prior limitations rulings in the Countrywide MDL have

2 involved Ohio law or the OSA, and for that reason, none have had to take into

3 account the unique policy objections of Ohio law and the OSA as regards

4 limitations.  Under Ohio law, statutes of limitations do not set forth fundamental

5 rights, are considered remedial and procedural, and are to be liberally constructed

6 so that whenever possible litigants will win or lose on the merits, and not on a

7 procedural matter.  *See, e.g., In re The Antioch Co.*, 456 B.R. 791, 848-49 (Bankr.

8 S.D. Ohio 2011) (collecting cases).

9    Moreover, the OSA is intended "to prevent the fraudulent exploitation of the

10 investing public through the sale of securities" and was "drafted broadly to protect

11 the investing public from its own imprudence as well as the chicanery of

12 unscrupulous securities dealers." *In re Columbus Skyline Securities*, 74 Ohio St.

13

14 § 1707.43(B) nevertheless applies to common law fraud claims arising out of the

15 sale of securities. *See, e.g., Hater v. Gradison Div. of McDonald & Co. Secs. Inc.*,
101 Ohio App. 3d 99, 655 N.E.2d 189, 198 (Ohio Ct. App. 1st App. Dist. 1995).

16 *But see DeChant v. Developers,* No. 37745, 1978 Ohio App. LEXIS 8128, at *12-

17 14 (Ohio Ct. App. 8th App. Dist. Oct. 28, 1978).  The Ohio Supreme Court has not
yet ruled on the issue.

18

19 Plaintiffs submit that if the issue came before it, the Ohio Supreme Court would
apply O.R.C. § 2305.09(C) to common law fraud claims arising out of the sale of

20 securities.  Section 2305.09(C) expressly provides that common law fraud claims
are subject to a four-year limitations period, "except when the cause of action is a

21 violation of [the Ohio identity theft statute]".  Section 1707.40 of the OSA further

22 provides that nothing in OSA is meant to "restrict common law liabilities for
deception or fraud other than as specified" on the face of the statute.  O.R.C. §

23 1707.40; *see also Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgt. Inc.*, 2011 NY

24 Slip Op 9162, at 4 (N.Y. Ct. App. Dec. 20, 2011) (state securities laws do not
preempt common law claims absent clear legislative intent).  Plaintiffs respectfully

25 suggest that this Court should certify this question to the Ohio Supreme Court. *See*

26 Ohio S. Ct. Prac. R. 18.1 ("The Supreme Court may answer a question of law
certified to it by a court of the United States.").

27

1  3d 495, 498 (1996).  Consistent with the OSA's broad remedial purpose, courts

2  have ruled that conflicting public reports of wrongdoing are insufficient to put an

3  OSA plaintiff on notice of its claims, *see In re Nat'l Century Fin. Enters.*, 755 F.

4  Supp. 2d at 871; *Federated Mgmt. Co. v. Coopers & Lybrand*, 137 Ohio App. 3d

5  366, 400-01 (Ohio Ct. App., Franklin County 2000), and that a prior lawsuit is

6  similarly insufficient where the prior action involved different allegations of fraud,

7  *see City of Painesville*, 178 F.R.D. at 195.

8            **a.**    **Press Reports Contradicted By**

9                    **Defendants Did Not Provide Constructive Notice**

10         Countrywide attaches to its motion to dismiss eight press reports that it

11  claims put Western & Southern on notice of OSA claims and common law based

12  on Countrywide's abandonment of loan origination standards.  *See* Countrywide

13  RJN Exs. 106-113.  But these press reports cannot be read in isolation, and when

14  considered together with the total mix of information, they do not suggest that

15  Western & Southern should have known of OSA claims and common law relating

16  to systemic abandonment of origination guidelines more than two years prior to the

17  filing of its lawsuit on April 27, 2011.  As the press reports themselves

18  demonstrate, any negative information concerning Countrywide was

19  counterbalanced by Countrywide's public statements and other public information.

20         For example, Countrywide cites March 2008 reports that the FBI had

21  commenced an investigation of Countrywide and other loan originators to

22  determine whether they had made false statements regarding their financial

23  condition and the quality of their mortgage loans.  But the reports cited also

24  indicate that Countrywide denied any knowledge of such an investigation.  RJN

25  Ex. 106; *see also id.* Ex. 109.  Moreover, it was widely reported that after

26  conducting due diligence on Countrywide, "Bank of America is rushing to close

27  the Countrywide acquisition as quickly as possible." RJN Ex. 106.  The fact that a

1  powerful and sophisticated financial institution such as Bank of America agreed—

2  after exhaustive due diligence—to pay $4.1 billion for Countrywide more than

3  counterbalanced press reports that Countrywide might be involved in some degree

4  of improper origination activity.

5       Defendants also reference reports of fraud by one Mark Zachary. *Id.* Exs.

6  107, 110.  But Defendants' own documents make clear that Countrywide denied

7  Zachary's claims, and went out of its way to discredit Zachary, stating he was a

8  disgruntled employee who had demanded a million dollars before he went public

9  with the story. *Id.*  As talk-show host Larry King put it according to

10 Countrywide's own exhibit:

11      Here is what Countrywide said – asked them for this, and they said,

12      "while we cannot comment on pending litigation, we will say that

13      during Zachary's employment with Countrywide, the company

14      [investigated] each of his claims and found no merit to his

15      accusations.  Further, we can confirm Mr. Zachary's termination was

16      performance related and not related to concerns he raised.

17      Countrywide has a firm policy against any such action."

18 *Id.* Ex. 110.  Such firm denials of wrongdoing plainly negate allegations of

19 wrongdoing for determining constructive notice under the OSA.  *See, e.g., In re*

20 *Nat'l Century Fin. Enters.*, 755 F. Supp. 2d at 871.

21      Indeed, to this day, Countrywide continues to deny its mortgage

22 underwriting misconduct, and to shift all blame onto the downturn in the real estate

23 market.  For example, in an October 5, 2011 oral argument in *MBIA Ins. Corp. v.*

24 *Countrywide Home Loans, Inc.,* No. 08/602825 (N.Y. Sup. Ct.) Countrywide

25 asserted that MBS plaintiffs are "trying to take advantage of the recession and the

26 mortgage market meltdown to avoid" their losses. Lysaght Decl. Ex. 2 at 62: 16-

27 19.  In October 2010, Brian Moynihan, CEO of Bank of America, sarcastically

1  demeaned MBS investors by comparing them to a car buyer who complains, "I

2  bought a Chevy Vega but I want it to be a Mercedes."  Lysaght Decl. Ex. 3 at 21;

3  *see also id.* at 12 (October 19, 2010 statement by Bank of America CFO: "We

4  believe many of the losses observed in these [MBS] deals have been, and continue

5  to be, driven by external factors . . . diminishing the likelihood that any loan defect

6  should one exist at all, was the cause of the loan's default.").

7          **b.**    **Complaints Involving Different Frauds**

8              **Did Not Provide Constructive Notice**

9        Countrywide attaches to its RJN a number of complaints filed in other

10  actions.  Many of these complaints involve claims brought by investors in

11  Countrywide's common stock or equity securities.  *See* Countrywide RJN Exs. 75-

12  78, 80-84, 86, 88-91.  Plaintiffs in those actions generally allege that Countrywide

13  originated and kept on its books poor quality mortgage loans, and that

14  Countrywide's lax origination guidelines caused losses to Countrywide equity

15  investors. *Id.*   Western & Southern alleges an entirely different fraud, namely that

16  Countrywide off-loaded toxic loans onto MBS investors such as Western &

17  Southern while "cherry picking" more creditworthy loans for its own account.

18  Complaints ¶¶ 87-89.  Under the OSA, a prior lawsuit does not trigger inquiry

19  notice of a plaintiff's claims when it involved a distinct fraud. *See City of*

20  *Painesville*, 178 F.R.D. at 195.

21        Countrywide also cites complaints by MBS investors asserting claims under

22  the Securities Act filed before April 2009.  Countrywide RJN Exs. 72-73.  These

23  complaints do not allege any fraud at all, relying instead on the strict liability

24  provisions of the Securities Act. *Id.*  Indeed, these investors specifically

25  disclaimed any allegations that the Defendants acted knowingly. *Id.* Ex. 72 ¶ 87,

26

27

1  Ex. 73 ¶78.  By definition, these complaints could not provide Plaintiffs with

2  notice of their OSA claims.  *See City of Painesville*, 178 F.R.D. at 195.[14]

3            **c.**    **Countrywide and Bank of America**

4                      **Fraudulently Concealed Their OSA Violations**

5        Under Ohio law, the doctrine of equitable estoppel may be employed to

6  prohibit the inequitable use of the OSA limitations periods.  *See Helman v. EPL*

7  *Prolong, Inc.*, 139 Ohio App. 3d 231, 246 (Ohio Ct. App., 7th Dist. 2002).

8  Equitable estoppel may toll both the OSA two-year statute of limitations and the

9  five-year statute of repose.  *Id.*  In order to allege tolling based on equitable

10  estoppel, a plaintiff must assert that "'(1) that the defendant made a factual

11  misrepresentation; (2) that it is misleading; (3) [that it induced] actual reliance

12  which is reasonable and in good faith; and (4) [that the reliance caused] detriment

13  to the relying party.'").  *Id.* (*quoting Doe v. Blue Cross/Blue Shield of Ohio*, 79

14  Ohio App. 3d 369, 379, 607 N.E.2d 492 (Ohio Ct. App. 10th Dist. 2000)).

15        The limitations period in O.R.C. § 1707.43(B) may also be tolled if a

16  defendant fraudulently conceals its unlawful conduct.  *See Lopardo v. Lehman*

17  *Bros., Inc.*, 548 F. Supp. 2d 450, 466-67 (N.D. Ohio 2008); *In re Nat'l Century*

18  *Fin. Enters.*, 541 F. Supp. 2d 986 at 1008 (S.D. Ohio 2007).  In order to allege

19  tolling based on fraudulent concealment, a plaintiff must assert that (i) the

20  defendant wrongfully concealed its actions; (2) the plaintiff failed to discover

21  operative facts that are the basis of his cause of action; and (3) the plaintiff

22  exercised due diligence in seeking out facts supporting a cause of action.  *See Iron*

23  _____

24  [14] Countrywide also cites Complaints by MBIA Insurance Corporation ("MBIA")
and Syncora Guarantee Inc. ("Syncora").  Countrywide RJN Exs. 87, 95.

25  However, MBIA and Syncora are monoline insurers that had access to relevant
loan files.  The Plaintiffs here never had access to loan files and, thus, cannot be

26  expected to have learned through investigation the facts learned by MBIA and

27  Syncora supporting their claims.

1    *Workers Local Union No.17 Ins. Fund v. Philip Morris, Inc.*, 29 F. Supp. 2d 801,

2    808 (N.D. Ohio 1998).

3        The Complaint alleges that MBS trading seized up following the September

4    2008 Lehman Brothers bankruptcy. In response, using statistical metrics and

5    guidance provided earlier by Countrywide, Plaintiffs developed an internal system

6    to monitor their MBS investments (including the Certificates) and estimate their

7    value based on projected cash flows. Complaints ¶ 376. At the time, there were

8    no industry standards for analyzing MBS values according to cash flows or

9    otherwise. *Id.* ¶¶ 381-82. Indeed, the National Association of Insurance

10    Commissioners ("NAIC") recognized the need for such a pricing model, but did

11    not develop one until late 2009. *Id.*

12        From the fall of 2008 through June 2009, Western & Southern utilized

13    information in monthly Remittance Reports generated by Countrywide and Bank

14    of America (after its acquisition of Countrywide) to monitor and value the

15    Certificates through Western & Southern's internal system. *Id.* ¶¶ 374-78. Under

16    item 1121 of SEC Regulation AB, such reports were to disclose, among other

17    things, data on loan performance and modifications and "[m]aterial breaches of

18    pool asset representations or warranties or transaction covenants." *See* 17 C.F.R. §

19    229.1121(a)(12) (attached as Exhibit 4 to the Lysaght Declaration). The Pooling

20    and Servicing Agreements between loan servicers and the trusts that issued the

21    Certificates include similar requirements. *See, e.g.,* Lysaght Decl. Ex. 5 §§ 2.03(c)

22    at II-10, 4.06 at IV-7.[15]

23

24

---

25    [15] Countrywide never disclosed any intention to change the substance of its
Remittance Reports once the MBS trust ceased to be reporting entities.

26    Accordingly, Western & Southern was entitled to assume the reports would
continue to comply with Regulation AB consistent with past practice.

27

1    Moreover, Countrywide and certain of its affiliates were required to and did
2    file with the SEC a signed certification attesting that they were responsible for
3    assessing and did assess the servicing criteria in Schedule A to the certification.
4    *See, e.g.,* Lysaght Decl. Ex. 6.  In the Schedule, Countrywide, and later Bank of
5    America, certified that it had directly assessed its compliance with numerous
6    requirements, including that monthly Remittance Reports to investors were "in
7    accordance with the transaction agreements and applicable Commission
8    requirements." *Id.,* Schedule A at Reference 1122(d)(3)(i).  Countrywide also
9    certified that collateral on pool assets was maintained as required by the
10   transaction agreements, and that pool assets and related documents were
11   safeguarded. *Id.,* Schedule A at References 1122(d)(4)(i) and (ii).

12        Contrary to their certifications, the monthly Remittance Reports provided to
13   Western & Southern and other investors in the Certificates never indicated
14   (contrary to Commission requirements) that numerous representations in
15   Certificate transaction documents were false, including representations that (i) no
16   mortgage had a loan-to-value ratio greater than 100 percent, (ii) the origination,
17   underwriting and collection practices used by Countrywide with respect to each
18   mortgage loan were "legal, prudent and customary" in all respects, and (iii) each
19   mortgage loan was underwritten in all material respects in accordance with
20   underwriting guidelines as set forth in the Offering Documents.  A representative
21   copy of the relevant representations and warranties is attached hereto as Exhibit 5,
22   Schedule III-A.

23        Nor did the Remittance Reports disclose that Countrywide had breached its
24   covenant to deliver the complete mortgage file to the issuing Trustee as required by
25   Section 2.01 of the relevant pooling and servicing agreements.  Documents that
26   were to have been delivered with the mortgage file included, among others, each
27   original mortgage note and a duly executed assignment of mortgage (except in the

21

1   case of MERS loans). The failure to deliver this documentation has led to the

2   highly-publicized inability of MBS trusts, including the Certificate trusts, to

3   efficiently recover the mortgage collateral following borrower defaults, as

4   discussed above in Section I(B)(1). Complaints ¶ 206. Instead, the Remittance

5   Reports purported to confirm that there were no material breaches of

6   representations regarding the mortgage collateral and most of the Certificates could

7   pay out virtually all expected interest and principal payments. *Id.* ¶¶ 377-380.[16]

8       In sum, the Remittance Reports assured Western & Southern that

9   Countrywide had carefully and faithfully originated and analyzed their mortgage

10  loan pools, such that the pools' performance would be consistent with data

11  presented to Western & Southern. Western & Southern reasonably relied on the

12  Remittance Reports, and was thereby prevented from discovering the true nature of

13  the mortgage loans underlying the Certificates. Western & Southern also exercised

14  reasonable due diligence by diligently analyzing expected cash flows for valuation,

15  regulatory and accounting purposes. Complaints ¶¶ 372-84.

16      For these reasons, under Ohio law, Western & Southern's OSA claims based

17  on Countrywide's misrepresentations concerning adherence to underwriting

18  guidelines were tolled until at least June 2009. *See e.g., In re Nat'l Century Fin.*

19  *Enters.*, 541 F. Supp. 2d at 993, 1008 (fraudulent concealment where defendant

20  gave false assurances about collateral underlying asset-backed securities); *Jelm v.*

21  *Galan*, No. 58093, 1991 Ohio App. LEXIS 936, at *5-6, 19 (Ohio Ct. App. 8th

22  Dist. 1991) (reassuring statements constituted fraudulent concealment); *see also*

23  *Lybrand,* 137 Ohio App. 3d at 400 (plaintiffs satisfied due diligence by following

24

25  _____

    [16] As now disclosed in connection with the settlement action filed in New York,
26  Bank of America artificially indicated a greater recovery under the Certificates due
    to its poor servicing.
27

1  up with company and underwriters who provided reassuring statements concerning

2  certain accruals and liabilities); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10

3  MD 2196, 2011 U.S. Dist. LEXIS 104419, at *49 (N.D. Ohio Sept. 15, 2011)

4  (doctrine requires "reasonable diligence, not constant cynicism.").[17]

### d.   Western & Southern Was Not Aware That It Suffered Actual Injury Prior To April 2009

7  Under Ohio law, a cause of action does not accrue "until the plaintiff

8  discovers, or by the exercise of reasonable diligence should have discovered, that

9  he or she was injured by the wrongful conduct of the defendant." *Norgard v.*

10  *Brush Wellman*, 95 Ohio St. 3d 165, 167 (Ohio 2002); *Ohio Civ. Rights Comm'n v.*

11  *Triangle Real Estate Servs.*, No. 06AP-157, 2007 Ohio App. LEXIS 1639, at *25

12  (Ohio Ct. App., 10th App. Dist., Apr. 17, 2007) ("The discovery rule was designed

13  to prevent unjust results when the wrongful act does not immediately result in

14  injury or damage, such as in . . . fraud" cases.); *see also Moffitt v. Richard M.*

15  *Hamlin Constr. Co.*, 29 Ohio App. 3d 98, 100 (Ohio Ct. App., 9th Dep't 1985)

16  (injury is an essential element of common law fraud claims).

17  Western & Southern did not know, nor could it have known, prior to April

18  27, 2009 that Countrywide's misstatements concerning loan origination practices

19  injured Western & Southern.[18]  Western & Southern did not suffer any diminution

20

---

21  [17] The Complaints further allege that Countrywide fraudulently concealed the

22  existence of Plaintiffs' claims by engaging in a pattern of intimidation against

23  employees who tried to blow the whistle on Countrywide's fraud.  Complaints ¶¶ 132-144, 251-55, 259, 387; *see e.g., United States ex rel. Tillson v. Lockheed*

24  *Martin Energy Sys.*, No. 00-CV-39-M, 2004 U.S. Dist. LEXIS 22246, at *8-11, 74-

25  75 (D. Ky. 2004) (tolling based on fraudulent concealment where defendants concealed whistleblower reports).

26  [18] Western & Southern's Ohio common law fraud claims would also be timely

27  under Section 1707.43(B) for the reasons set forth in Section I(B).

23

1   in interest or principal payments prior to February 2010, and only six of its 36

2   tranches have experienced such shortfalls since.  Western & Southern Complaint ¶

3   384.  As a regulated entity, Western & Southern was (and is) required to monitor

4   the Certificates and regularly evaluate whether they are impaired for the purposes

5   of generally accepted accounting principals ("GAAP") and statutory accounting.

6   Complaints ¶ 378.  Western & Southern is generally required to recognize an

7   impairment of a security when it becomes apparent that the security will result in a

8   loss.  *Id.*  With the exception of nine tranches backed by subprime or second lien

9   loans, Western & Southern did not determine that any of its senior Class A

10  tranches were impaired for regulation purposes prior to June 2009.  *Id.* ¶¶ 378-79,

11  383.  As a result, the Complaints allege that the earliest date Western & Southern

12  could have learned of its injuries was June 2009.[19]

### 3.    The OSA Statute of Repose Is Not Applicable

14          None of Plaintiffs' OSA claims are barred by the OSA statute of repose

15  because absolute statutes of repose are unenforceable under Article I, Section 16 of

16  the Ohio Constitution ("All courts shall be open, and every person, for an injury

17  done him in his lands, goods, person, or reputation, shall have remedy by due

18  course of law, and shall have justice administered without denial or delay").  *See*

19  *Hardy v. VerMeulen*, 32 Ohio St. 3d 45, 48 (1987); *Gaines v. Preterm-Cleveland,*

20  *Inc.*, 33 Ohio St. 3d 54, 57 (1987); *Metz v. Unizan Bank*, No. 05-CV-1510, 2008

21  U.S. Dist. LEXIS 37270, at *20 (N.D. Ohio May 5, 2008) ("[I]t appears most

22  likely that the Ohio courts would find that the five year statute of repose contained

23  in the Ohio securities statute violates the right-to-remedy clause of the Ohio

24  Constitution.  That provision is, therefore, unenforceable."); *see also Loyd v.*

25  _____

26  [19] The arguments in this Section are generally applicable to Western & Southern's Exchange Act claims based on misstatements regarding underwriting guidelines,

27  and those claims are timely as a result.

1   *Huntington Nat'l Bank*, No. 08-CV-2301-DCN, 2009 U.S. Dist. LEXIS 51858, at

2   *34 (N.D. Ohio 2009); *Lopard*, 548 F. Supp. 2d at 466.  For this reason, any

3   argument that the statute of repose in Section 1707.43(B) bars any of Plaintiffs'

4   claims is without merit.

5          **C.      National Integrity's Common Law**

6                    **Fraud Claims Are Timely**

7          Countrywide does not dispute that all of National Integrity's common law

8   fraud claims are timely if National Integrity is a "resident" of New York within the

9   meaning of New York Civil Practice Law and Rules ("NY CPLR") 202, New

10  York's borrowing statute.[20]  According to Countrywide, however, National

11  Integrity is not a resident of New York because, although incorporated under New

12  York law, its principal place of business is in Ohio.

13         Countrywide is plainly wrong.  A New York corporation is a New

14  York "resident" under NY CPLR 202, even if its principal place of business

15  is outside the state.  *See Wydallis v. United States Fidelity & Guaranty Co.*,

16  63 N.Y.2d 872, 873-75 (1984).  The plaintiff in *Wydallis* was a New York

17  corporation with its principal place of business in Massachusetts.  *Id.* at 873-

18  74.  The New York Court of Appeals held that regardless of its

19  Massachusetts place of business, the plaintiff was a resident of New York

20  under NY CPLR 202 because it was incorporated under the laws of New

21  _____

22  [20] NY CPLR 202 provides:

23         An action based upon a cause of action accruing without the state
           cannot be commenced after the expiration of the time limited by the
24         laws of either the state or the place without the state where the cause
           of action accrued, except that where the cause of action accrued in
25         favor of a resident of the state the time limited by the laws of the state
           shall apply.
26

27

1  York.  *Id.* at 875; *see also Verizon Directories Corp. v. Continuum Health*

2  *Partners, Inc.,* 2010 NY Slip Op 4640, at 1 (N.Y. App. Div. 1st Dep't 2010)

3  ("For purposes of CPLR 202, plaintiff is a 'resident' of . . . the state of its

4  incorporation.").

5        Countrywide misreads *Antone v. General Motors Corp.*, 64 N.Y.2d 20

6  (1984).  *See* Countrywide Mem. at 49.  *Antone* was a products liability

7  action arising out of a car accident in Pennsylvania.  64 N.Y.2d at 26.  The

8  plaintiff was an individual who lived in Pennsylvania, but maintained a post

9  office box in the town of his former New York residence.  *Id.*  The Court of

10  Appeals held that the plaintiff was not a "resident" within the meaning of

11  NY CPLR 202, because he did not have "a significant connection with some

12  locality in the State as the result of living there for some length of time

13  during the course of a year." *Id.* at 30.  The court's opinion says nothing

14  about a corporation's residence under NY CPLR 202.[21]

15

16

17

18

---

19  [21] Countrywide's reliance on *McMahon & Company v. Donaldson, Lufkin &*

20  *Jenrette Securities Corporation*, 727 F. Supp. 833, 834 (S.D.N.Y. 1989) is
similarly misplaced.  *McMahon* involved a New York partnership, not a

21  corporation and it failed to consider *Wydallis*, the controlling authority.

22
*Allegaert v. Warren*, 480 F. Supp. 817, 820 (S.D.N.Y. 1979) and *American*

23  *Lumbermens Mutual Casualty Co. of Illinois v. Cochrane*, 129 N.Y.S.2d 489 (N.Y.

24  Sup. Ct. 1954) provide no support for Countrywide's position because in each the
plaintiff was incorporated outside New York.  The cases, which both pre-date

25  *Wydallis*, merely held that a foreign corporation with its principal place of business

26  outside of New York is not a New York resident within the meaning of the
borrowing statute.

27

26

1       **1.    The National Integrity Action**

2             **Is Not "Procedurally Improper"**

3       Countrywide asserts that this Court may dismiss the National Integrity

4   Action as "procedurally improper." Countrywide is wrong.

5             A party that voluntarily dismisses itself from one action without prejudice

6   may file a new action in a different forum regardless of its motivation for doing so.

7   *See Federal Deposit Ins. Corp. v. Nichols*, 885 F.2d 633, 638 (9th Cir. 1989);

8   *Keystone Fruit Mktg. v. Nat'l Fire Ins. Co. of Hartford*, No. 10-CV-5145, 2011

9   U.S. Dist. LEXIS 83977, at *7 (E.D. Wash. Aug. 1, 2011). In *Nichols,* the FDIC

10  voluntarily dismissed a state law action and the same day filed a substantively

11  identical federal action. 885 F.2d at 635. The Ninth Circuit ruled that the district

12  court abused its discretion in declining to exercise jurisdiction and dismissing the

13  case for "improper forum shopping." *Id.* at 637. As the Court of Appeals held,

14  principles of abstention do not apply when there is no concurrent state court

15  proceeding, and a district court cannot decline jurisdiction merely because it

16  believes a party to be forum shopping. *Id.*; *see also In re Piper Aircraft*

17  *Distribution System Antitrust Litigation*, 551 F.2d 213, 219 (8th Cir. 1977) ("The

18  effect of a voluntary dismissal without prejudice is to render the proceedings a

19  nullity and leave the parties as if the action had never been brought.")

20          The cases relied upon by Countrywide merely state that under certain

21  circumstances a court may stay or dismiss one action if there is an entirely

22  duplicative action involving identical parties proceeding concurrently in another

23  forum.[22]  Here, that is plainly not the case. National Integrity is a distinct legal

24

─────────────────────

25  [22] The cases further state that even under such circumstances, dismissal is

26  appropriate only in exceptional circumstances. Indeed, dismissal was denied in all
    but one of the cases. *See Curtis v. Williamson*, 226 F.3d 133, 141 (2d Cir. 2000)

27  (reversing dismissal); *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 939 (Fed.

1   entity. It is not a plaintiff in the Western & Southern Action, and its claims are not

2   asserted in the Western & Southern Action. Countrywide cites no case holding

3   that a distinct legal entity injured by a defendant's conduct must join its corporate

4   family in a litigation in a different forum. As pointed out in a case cited by

5   Countrywide, such a rule "would make [Countrywide] the master of [National

6   Integrity's] claim" contrary to Supreme Court precedent. *Merrick Bank Corp. v.*

7   *Savvis Inc.,* No. 08-CV-675-ERW, 2008 U.S. Dist. LEXIS 99393, at *5; *see also*

8   *The Fair Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("[T]he party who brings

9   suit is master to decide what law he will rely upon.").[23]

10      Countrywide's attempt to characterize National Integrity's filing as improper

11   "forum shopping" is without merit. National Integrity had every right to respond

12   to this Court's holding in *Allstate* by filing a New York action to avail itself of its

13   rights as a New York corporation. National Integrity never sought to extricate

14   itself from this Court. As soon as the National Integrity Complaint was served,

15   National Integrity and Western & Southern notified the MDL Panel that the

16   National Integrity Action was related to the Countrywide MBS MDL. *See* Dkt.

17

18   Cir. 1993) (same); *Raniere v. Citigroup Inc.*, No. 11-CV-2448-RWS, 2011 U.S.
     Dist. LEXIS 135393, at *89 (S.D.N.Y. Nov. 22, 2011) (dismissal denied); *Merrick*
19   *Bank Corp. v. Savvis, Inc.*, No. 08-CV-675-ERW, 2008 U.S. Dist. LEXIS 99393,
20   at *17 (E.D. Mo. Dec. 8, 2008) (same); *Oglesby v. County of Kern*, No. 05-CV-
     873-REC, 2005 U.S. Dist. LEXIS 29363, at *28 (E.D. Cal. Nov. 4, 2005) (same);
21   *Kellen Co., Inc. v. Calphalon Corp.*, 54 F. Supp. 2d 218, 222 (S.D.N.Y. 1999).

22   [23] Defendants contend that *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197
23   (2d Cir. 1970) (Friendly, J.) supports their position. *See* Countrywide Mem. at 41
     n.45. But *Semmes* expressly contradicts Countrywide's argument by noting that if
24   a plaintiff could have terminated its first filed action, the defendant would have no
25   basis to argue for a stay or dismissal of the second filed action. 429 F.2d at 1202.
     The plaintiff did not have that procedural right because the defendant asserted a
26   counterclaim. *Id.* n.7.

27

1   No. 143 (Notice of Related Case).  The matter was transferred to this Court soon

2   thereafter, as Plaintiffs always intended and expected.  As for Countrywide's

3   argument that the National Integrity Action and Western & Southern Action will

4   be tried separately, National Integrity will agree to a transfer to Ohio for trial.[24]

5       **D.    The Civil Conspiracy Claims Are Timely**

6          Under Ohio law, a conspiracy to violate the OCAA supports a civil

7   conspiracy claim.  *See Iron Workers Local Union No. 17 Ins. Fund v. Philip*

8   *Morris Inc.*, 23 F. Supp. 2d 771, 795 (N.D. Ohio 1998).   Countrywide does not

9   dispute that Plaintiffs have asserted timely claims under the OCAA and, thus, their

10  civil conspiracy claims are also timely.

11         Moreover, as set forth throughout Section I, Plaintiffs have asserted timely

12  claims under both the OSA and common law fraud.  These timely claims also

13  support Plaintiffs' civil conspiracy claims.  *See, e.g., Unencumbered Assets Trust*

14  *v. JP Morgan Chase Bank (In re Nat'l Century Fin. Enters.)*, 604 F. Supp. 2d 1128,

15  1154 (S.D. Ohio 2009); *Iron Workers Local Union No. 17 Ins. Fund v. Philip*

16  *Morris Inc.*, 29 F. Supp. 2d 801, 816 (N.D. Ohio 1998).

17  **II.   Plaintiffs' Securities Act and OSA**

18       **Claims Are Tolled Under** *American Pipe*

19          Under *American Pipe and Construction Company v. Utah*, 414 U.S. 538,

20  553 (1974) and its progeny, "'the commencement of the original class suit tolls the

21  ─────────────────

22  [24] Countrywide cites a number of cases that are irrelevant because they involved
    motions to transfer and did not address dismissal.  *See Aguiar v. Natbony*, No. 10-
23  CV-6531-PGG, 2011 U.S. Dist. LEXIS, at *33 (S.D.N.Y. May 16, 2011); *Dunn &*
    *Fenley, LLC v. Diederich*, No. 06-CV-6243-TC, 2010 U.S. Dist. LEXIS 326, at
24  *23 (D. Ore. Jan. 5, 2010); *Am. Sign. Inc. v. Moody's Investors*, No. 09-CV-878-
25  GLF, 2010 U.S. Dist. 68042, at *12 (S.D. Ohio July 2, 2010); *Italian Colors*
    *Restaurant*, No. 03-CV-3719-SI, 2003 U.S. Dist. LEXIS 20338, at *20 (N.D. Cal.
26  Nov. 7, 2003).

27

1  running of the statute for all purported members of the class'" pending a

2  determination on class certification.  *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d

3  524, 531 (9th Cir. 2011) (*quoting American Pipe*, 414 U.S. at 553).  The rule of

4  *American Pipe* is grounded in two fundamental principles.  First, class members

5  should not be forced to file duplicative suits or motions to intervene, as the Rule 23

6  procedure is meant to promote "efficiency and economy of litigation." *Id.* (citation

7  omitted).  Second, because the initial class complaint provided notice of the class

8  claims, "policies of ensuring essential fairness to defendants" must be satisfied. *Id.*

9      **A.  Eight of Plaintiffs' Tranches Are Backed by the Same Loan**

10           **Pools as Tranches Purchased by the *Luther* Plaintiffs**

11      Countrywide represents that the *Luther* plaintiffs purchased at least two

12  tranches owned by Plaintiffs (CWALT 2005-26CB A6 and CWL 2006-S9 A3)[25]

13  citing a filing made by the purported *Luther* plaintiffs in *Maine State*.  *See*

14  Countrywide Mem., Tabs 10-11; Countrywide RJN Ex. 102 at 4195.  Thus,

15  Countrywide in effect concedes that at least some of Plaintiffs' claims are tolled

16  under this Court's prior rulings requiring for class action tolling, that a plaintiff

17  demonstrate a named plaintiff in a class action had standing to assert the relevant

18  claim.  *See, e.g, Maine State I*, 722 F. Supp. 2d 1157, 1166-67 (C.D. Cal. 2010).[26]

19  

20  [25] Countrywide refers to this offering as "CWHEQ 2006-S9" which is another
acronym used to describe the same offering.  Because the Complaints utilize the

21  "CWL" prefix, Plaintiffs will use the "CWL" prefix herein.

22  [26] Countrywide contends that the repose period for CWALT 2005-26CB A6 expired

23  before a named plaintiff with standing to bring this claim was added to the *Luther*

24  action.  *See* Countrywide Mem. at 28-29.  Not so.  Under California law, the
named plaintiff's claims related back to the date of the initial filing of the *Luther*

25  action (November 14, 2007).  *See Garnier v. Ludwick*, No. H024269, 2003 Cal.

26  App. Unpub. LEXIS 7204, at *26 (Cal. App. 6th Dist. 2003) (when original named
plaintiffs lacked standing to bring securities claims, new named plaintiff was added

27  and claims were timely because they were tolled).

1   Plaintiffs also purchased six additional tranches (CWL 2006-S9 A4, CWL

2   2006-S9 A6, CWHL 2007-5 A5, CWALT 2005-46CB A14, CWALT 2005-54CB

3   1A4 and CWALT 2007-17CB M1)[27] backed by the *same loan pools* as tranches

4   purchased by the *Luther* plaintiffs.[28]   This Court's prior rulings do not foreclose

5   that Plaintiffs may obtain tolling for these same-pool tranches.

6   Indeed, the Court observed in *Maine State Retirement System v.*

7   *Countrywide Financial Corporation*, that "[t]he key to the standing issue is the

8   significant differences between the underlying pools of mortgages."  No. 11-CV-

9   0302-MRP, 2011 U.S. Dist. LEXIS 125203, at *27-28 (C.D. Cal. May 5, 2011)

10   (*Maine State III*).

11   Because the loan groups backing the Certificates differed from

12   tranche to tranche, the statements regarding underwriting and credit

13   characteristics found in the prospectus supplements for those MBS

14   deals were essentially different statements for each tranche, given that

15   the point of reference for those statements—the loan groups—differed

16   at the tranche level.  In other words, an alleged misstatement as to the

17   origination practices with respect to one loan group backing a

18   particular tranche would not necessarily constitute a misstatement as

19

20

21   [27] *See* Countrywide RJN, Ex. 102 at 4195 (CWHL 2007-5 A2), 4196 (CWALT

22   2005-46CB A20, CWALT 2005-54CB 1A7, CWALT 2005-J1 3A1, CWALT-

23   17CB 1A3).

24   [28] *See* Lysaght Decl. Ex. 8 (CWL 2006-S9 backed by a single loan pool); *id.* Ex. 9

25   (same for CWHL 2007-5); *id.* Ex. 10 (same for CWALT 2005-46CB); Ex. 11

     (Plaintiffs' CWALT 2005-54CB 1A4 tranche and *Luther* plaintiffs' 1A7 tranche

26   both backed by Loan Group 1); Ex. 12 (Plaintiffs' CWALT 2007-17CB M1

27   tranche and *Luther* plaintiffs' 1A3 tranche both backed by Loan Group 1).

1    to a different loan group backing a different tranche. *In this case, the*
2    *Court must view standing at the loan group level.*
3    *Id.* at *29-30 (emphasis added).

4    Defendants Sieracki, Spector, and Kurland argue that *Luther* cannot provide
5    tolling beyond January 6, 2010, the date *Luther* was initially dismissed. *See*
6    Sieracki Mem. at 36; Spector Mem. at 7 n.6; Kurland Mem. at 16. They are
7    wrong. The *Luther* action was subsequently reinstated and continues to toll the
8    limitations period with respect to Plaintiffs' claims. *See Satterwhite v. City of*
9    *Greenville*, 578 F.2d 987, 997 (5th Cir. 1978) (en banc) ("[I]f a trial court's
10   decision that the class may not be maintained is reversed on appeal, the status of
11   class members is to be determined from the time that suit was instituted."); *Gelman*
12   *v. Westinghouse Electric Corp.*, 556 F.2d 699, 701 (3d Cir. 1977) (same); *Jimenez*
13   *v. Weinberger*, 523 F.2d 689, 696 (7th Cir. 1975) (same); *Esplin v. Hirschi*, 402
14   F.2d 94, 101 n.14 (10th Cir. 1968) (same); *In re Vertrue Mktg. & Sales Practices*
15   *Litig.*, 712 F. Supp. 2d 703, 709, 712-13 (N.D. Ohio 2010) (tolling applied during
16   pendency of successful appeal of order compelling arbitration).[29]  It is nonsensical
17   to argue that a putative class action that is currently being litigated with some of
18   the exact same offerings or loan pools at issue in this case cannot afford tolling
19   under *American Pipe*.[30]

---

20   [29] The cases cited by Defendants are inapposite because none involved a class
21   action reinstated on appeal. *See Armstrong v. Martin Marietta Corp.*, 138 F.3d
     1374, 1379 (11th Cir. 1998); *Giovanniello v. ALM Media, LLC*, No. 09-CV-1409-
22   JBA, 2010 U.S. Dist. LEXIS 92181, at *2 (D. Conn. Sept. 3, 2010); *Veliz v. Cintas*
     *Corp.*, No. 03-CV-1180-SBA, 2007 U.S. Dist. LEXIS 24428, at *22 (N.D. Cal.
23   Mar. 20, 2007) (no appeal); *Womack v. UPS*, 311 F. Supp. 2d 492, 497 (E.D.N.C.
24   2004).

25   [30] *See, e.g., Connerly v. State Personnel Bd.*, 92 Cal. App. 4th 16, 29 (Cal. App. 3d
26   Dist. 2001); *National Paint & Coatings Assn. v. State of California*, 58 Cal. App.
     4th 753, 760-62 (Cal. App. 2d Dist. 1997).
27

32

1    Even if Plaintiffs' claims relating to their eight *Luther* tranches were not

2    subject to tolling as a result of *Luther's* reinstatement, all such claims of Western

3    & Southern and all but two of National Integrity would nevertheless be timely.

4    The *Luther* plaintiffs filed the *Maine State* action and did not withdraw from that

5    action until the filing of the First Amended Complaint on July 13, 2010. Thus, the

6    claims relating to all eight tranches held by Plaintiffs were tolled until that date.

7    *See* Appendix A.[31]

8    **B.    There Is a Strong Trend In Favor of the Application of**

9    ***American Pipe* Tolling Notwithstanding that the Class**

10    **Plaintiff Lacked Standing**

11    Plaintiffs recognize that this Court previously ruled in *Maine State*,

12    *Stichting,* and *Allstate* that a party may seek tolling from *Luther* or *Maine State*

13    only to the extent that a named plaintiff in either one of those cases purchased

14    certificates in the same tranches, or in trances with the same loan pools as those

15    purchased by the party. Plaintiffs respectfully submit that this Court should

16    reconsider those rulings and find that both *Luther* and *Maine State* toll all of

17    Plaintiffs' Securities Act claims. The majority of district courts and the two

18    Circuit Courts that have considered the issue have held that a putative class

19    _____

20    [31] Similarly, the First Amended Complaint in *Maine State* demonstrates that the *Maine State* named plaintiffs purchased two tranches purchased by Western &

21    Southern (CWALT 2007-5CB 1A13 and CWL 2007-11 2A1). *See* Lysaght Decl.

22    Ex. 14 at ¶ 21. The First Amended Complaint in *Maine State* further reveals that the *Maine State* class plaintiffs purchased certificates from three offerings at issue

23    in the Western & Southern Action (CWL 2006-S8 A2, CWL 2006-S9 A2, CWL

24    2007-11 2A1 and CWL 2007-S1 A1B). The tranches purchased by Western & Southern in these offerings were backed by ***exactly the same loan pools*** as the

25    tranches purchased by the *Luther* plaintiffs. Indeed, each of these offerings

26    involved a single loan pool. *Id.* Exs. 8-12. As a result, these tranches were subject to tolling from *Maine State* if deemed timely filed in *Maine State*.

27

33

1   member may obtain tolling under *American Pipe* notwithstanding that the original

2   plaintiff lacked standing to bring the putative class member's claims.[32]

3        These courts have generally reasoned that a contrary rule "would be unduly

4   harsh" because *American Pipe,* and Rule 23 encourage class members "to remain

5   passive during the early stages of the class action." *In re Morgan Stanley Mortg.*

6   *Pass-Through Certificates Litig.*, 2011 U.S. Dist. LEXIS 104280, at *53-54. As

7   the court in *Morgan Stanley* recently explained:

8        The Court is mindful that a blanket application of American Pipe

9        tolling to cases where purported representatives lack standing holds

10        the potential for abuse. There may be circumstances where the

11        representative so clearly lacks standing that no reasonable class

12        member would have relied. However, this is not such a case. The

13        original complaint contained allegations that the harms of which

14        Plaintiffs complain flowed from the registration statement as well as

15        other offering documents. While this Court ultimately found that the

16

17   [32] *See, e.g., McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380, 385 (3d

18   Cir. 2002); *Griffin v. Singletary*, 17 F.3d 356, 360 (11th Cir. 1994); *Genesee*

19   *County Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*, No. 09-CV-300, JB/KBM, 2011 U.S. Dist. LEXIS 133462, at *198 (D.N.M. Nov. 12, 2011) (stating

20   the majority rule and collecting cases); *In re Morgan Stanley Mortgage Pass-*

21   *Through Certificates Litigation*, No. 09-CV-2137, 2011 U.S. Dist. LEXIS 104280, at *51-55 (S.D.N.Y. Sept. 15, 2011); *In re Deutsche Bank AG Sec. Litig.*, 2011

22   U.S. Dist. LEXIS 93867, at *19 (S.D.N.Y. Aug. 19, 2011); *In re IndyMac*

23   *Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 647 (S.D.N.Y. June 21, 2011); *see also In re Wachovia Equity Sec. Litig.*, No. 08-CV-6171, 2011 U.S. Dist.

24   LEXIS 36129, at *102 (S.D.N.Y. Mar. 31, 2011); *In re Flag Telecom Holdings,*

25   *Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 455-56 (S.D.N.Y. 2005); *Popoola v. Md-Individual Practice Ass'n*, 230 F.R.D. 424, 430 (D. Md. 2005); *In re Initial Public*

26   *Offering Sec. Litig.*, No. 21 MC 92, 01-CV-9741 (SAS), 2004 U.S. Dist. LEXIS

27   26000, at *21 (S.D.N.Y. Dec. 27, 2004).

1      original plaintiffs lacked standing to bring the claims in question,

2      there was at least some authority as of December 2008 that indicated

3      that a reasonable class member could have believed that MissPERS

4      had standing to sue on behalf of purchasers from other trusts. *See,*

5      *e.g., In re Countrywide Financial Corp. Securities Litigation,* 588 F.

6      Supp. 2d 1132, 1165-66 (C.D. Cal. 2008) (plaintiffs have standing

7      regarding later offerings from which they did not purchase securities

8      because those offerings were based on the same initial registration

9      statement) . . . .

10 *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.,* 2011 U.S. Dist.

11 LEXIS 104280, at \*54-56.

12     Under this reasoning, Plaintiffs' Securities Act claims are timely because

13 Luther has been reinstated and the claims they all relate to MBS offerings that

14 were included in *Luther*.[33] *See* Complaints ¶¶ 390-95; *Satterwhite,* 578 F.2d at 997

15 (when class action is reinstated class members claims are deemed tolled from the

16 date suit was filed); *Gelman,* 556 F.2d at 701 (same); *Jimenez,* 523 F.2d at 696

17 (same); *Esplin,* 402 F.2d at 101 n.14 (same); *In re Vertrue Mktg. & Sales Practices*

18 *Litig.,* 712 F. Supp. 2d at 709, 712-13 (tolling applied during pendency of

19 successful appeal).

20     Virtually all of Western & Southern's Securities Act claims are also tolled

21 by virtue of their inclusion in *Maine State*.[34] *Maine State* tolled Western &

---

22 [33] This Court recognizes that *American Pipe* tolling applies to class actions filed in

23 state court. *Me. State Ret. Sys. v. Countrywide Fin. Corp.,* 722 F. Supp. 2d 1157,

24 1166 (C.D. Cal. 2010) (*Maine State I*). As this Court is aware, the *Luther* action

was subsequently consolidated with *Washington State Plumbing & Pipefitting*

25 *Pension Trust v. Countrywide Financial Corp.,* BC392571 (Cal. Super. Ct. 2008)

26 which increased the number of MBS offerings included in *Luther*.

27 [34] National Integrity is not claiming that *Maine State* tolls its Securities Act claims.

1  Southern's claims with respect to 31 of its 36 tranches until this Court's dismissal

2  on November 4, 2011. As set forth in Appendix B to this brief, 29 of Western &

3  Southern's 36 tranches were offered publicly after May 7, 2005. As a result, the

4  statute of repose had not run with respect to these claims when the Western &

5  Southern Action was filed on April 27, 2011. *See* Appendix B.[35]

6          **C.**    ***American Pipe* Tolls the OSA Claims**

7        An individual plaintiff's claims need not be identical to the claims asserted

8  in a class action complaint in order for *American Pipe* tolling to apply. *Tosti v. Los*

9  *Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985). When state law claims rely on the

10  same evidence as the federal claims in a class action complaint, *American Pipe*

11  tolls the state as well as the federal law claims. *See Cullen v. Margiotta*, 811 F.2d

12  698, 720-21 (2d Cir. 1987); *Newby v. Enron Corp. (In re Enron Corp. Secs.)*, 465

13  F. Supp. 2d 687, 718-719 (S.D. Tex. 2006) (same); *In re Linerboard Antitrust*

14  *Litig.*, 223 F.R.D. 335, 352 (E.D. Pa. 2004) (same).

15        Plaintiffs' OSA claims indisputably involve the same evidence and

16  witnesses as Plaintiffs' Securities Act claims. Accordingly, to the extent *American*

17  *Pipe* tolls Plaintiffs' Securities Act claims, Plaintiffs' OSA claims are also tolled.

18  **III.**    **Western & Southern's OSA Claims Are Tolled Under Ohio Law**

19        "Federal courts [applying state law] must abide by a state's tolling rules,

20  which are integrally related to statutes of limitations." *Albano*, 634 F.3d at 530. In

21  *Vaccariello* , the Ohio Supreme Court held "that the filing of a class action,

22  whether in Ohio or the federal court system tolls the statute of limitations as to all

23

24

25  [35] This Court and others recognize that the Securities Act's three-year statute of

26  repose is subject to *American Pipe* tolling. *See, e.g., Maine State I*, 722 F. Supp.
    2d at 1166; *see also Albano*, 634 F.3d at 535.

27

1    asserted members of the class who would have been parties had the suit been
2    permitted to continue as a class action." 94 Ohio St. 3d at 382-83. While
3    *Vaccariello* discusses some federal case law, the Ohio Supreme Court emphasized
4    that its decision announced a unique Ohio rule for Ohio claims, stating that "we
5    reach our conclusion independently, without regard to the federal cases discussed
6    as binding on this Court." *See id.* at 382.

7        *Vaccariello* applies tolling to "all asserted class members," so that "a
8    plaintiff who could have filed suit in Ohio irrespective of the class action filed in
9    federal court . . . [may] rely on that class action to protect her rights in Ohio." *Id.*
10   at 383. The court reasoned that to hold otherwise "would encourage all potential
11   plaintiffs in Ohio who might be part of a class action to file suit individually in
12   Ohio to preserve their Ohio claims," thus defeating the efficiency purpose of
13   federal class actions. *Id.* The court held that where a federal class action fails
14   "otherwise than on the merits," the Ohio savings statute, (O.R.C. § 2305.19),
15   applies, and allows a plaintiff one year from failure of the federal class action to
16   file a new action asserting Ohio claims.[36] *Id.* at 383.

17       The Ohio Savings Statute, O.R.C. § 2305.19 provides, in relevant part, that
18   "in any action . . . if the plaintiff fails otherwise than upon the merits, the plaintiff .
19   . . may commence a new action within one year . . . or within the period of the
20   original applicable statute of limitations, whichever occurs later." O.R.C. §
21   2305.19. "Ohio law thus provides for a kind of tolling that extends, rather than
22   suspends, a statute of limitations." *Vaccariello*, 94 Ohio St. 3d at 392. If a
23   plaintiff has commenced an action that fails otherwise than on the merits, and if the

24

25   [36] The federal class action in *Vaccariello* failed due to denial of class certification.
26   *Vaccariello*, however, quoting the Ohio savings statute, concludes that tolling
     applied because the failure of the class action was "otherwise than on the merits."
27

37

1    applicable limitation period for the action has expired, O.R.C. § 2305.19 permits

2    the plaintiff to commence a new action within one year.

3         On November 4, 2010, Western & Southern's status as an asserted class

4    member in *Maine State* failed due to lack of standing.  Western & Southern filed

5    this action on April 27, 2011, within one year of the failure of its status as an

6    asserted class member.  Under established Ohio law, when an action fails for lack

7    of standing it is a failure "otherwise than on the merits."  *See, e.g., State ex rel.*

8    *Coles v. Granville*, 116 Ohio St. 3d 231, 241, 877 N.E.2d 968, 977 (Ohio 2007); *A-*

9    *I Nursing Care v. Florence Nightingale Nursing*, 97 Ohio App. 3d 623, 627 N.E.2d

10    222 (Ohio 1994).  Accordingly, Western & Southern's Ohio state claims were

11    tolled by *Vaccariello*, and, under the Ohio savings statute, are deemed to have been

12    filed on the same date as *Maine State* – January 14, 2010.

13         In contrast to cases decided under *American Pipe*, tolling under *Vaccariello*

14    applies to all of Western & Southern's claims, including those requiring scienter,

15    despite the fact that *Maine State* asserted only strict liability claims under the

16    Securities Act.  The Ohio savings statute applies "when the original suit and the

17    new action are substantially the same," *Children's Hospital v. Ohio Dep't of Public*

18    *Welfare*, 433 N.E.2d 187, 189 (Ohio 1982), but the question of whether actions are

19    substantially the same, however, "largely turns on whether the original complaint

20    and the new complaint contain similar factual allegations so that it can reasonably

21    be said that the party or parties were put on fair notice of the type of claims that

22    could be asserted."  *Lanthorn v. Cincinnati Ins. Co.*, 2002 Ohio App. LEXIS 6573,

23    *11 (Ohio Ct. App., 4th Dist. Dec. 5, 2002).[37]

24

25

26    _____

[37] The Ohio savings statute the statute is "'broad and unambiguous' and should be
'liberally construed in order that controversies . . . be decided upon important
27    substantive questions rather than upon technicalities of procedure." *Kinney v. Ohio*

1    Given that Ohio law mandates liberal construction of the savings statute,
2    Ohio courts have held that a new action asserts a claim that is substantially the
3    same where, for example, the first action alleges negligent construction and the
4    second alleges negligent supervision, the first action alleges wrongful death but
5    fails to invoke the wrongful death statute and the second does, and where the
6    second action adds allegations of "willful and wanton misconduct." *See Sherman*
7    *v. Air Reduction Sales Co.*, 251 F.2d 543, 545-546 (6th Cir. 1958); *Zanders v.*
8    *O'Gara-Hess & Eisenhardt Armoring Co.,* 1992 U.S. App. LEXIS 535, at *7 (6th
9    Circuit 1992) (Sixth Circuit applied tolling doctrine to permit plaintiffs wrongful
10   termination claim, even though plaintiff only timely filed his claim for wrongful
11   suspension).  Given that by the filing of *Maine State* on January 14, 2010
12   Countrywide had already been the subject of a criminal investigation and
13   numerous regulatory and private civil proceedings alleging scienter-based claims
14   relating to its MBS offerings, it cannot be seriously asserted that Countrywide was
15   not on full notice of possible scienter-based claims on January 14, 2010.  Thus, all
16   of such Plaintiffs' claims under Ohio law are timely.[38]

17   Countrywide contends that *Vaccariello* does not apply because *Maine State*
18   was not timely filed.  Countrywide Mem. at 34.  Countrywide utterly misreads
19   *Vaccariello*.  Since *Vaccariello* tolls the statute for *Ohio state claims* for putative
20   members of a federal class, the question is whether such *Ohio state claims* were
21   timely as of the date the federal class action was filed and tolling began.  The Ohio

23   *Dep't of Administrative Services*, 30 Ohio App. 3d 123, 126 (Ohio Ct. App. 1986)
24   (*quoting Gruelich v. Monnin*, 50 N.E. 2d 310, 312 (Ohio 1943)).

25   [38] This Court has previously ruled that inquiry notice as to such claims accrued "in
26   late 2007 or early 2008." *See, e.g, Maine State I*, 722 F. Supp. 2d at 1165.  A
     further factual record must be developed before a precise date is determined.
27   Western & Southern's claims requiring scienter were timely in January 2010.

1    state claims at issue were all clearly alive as of the filing of *Maine State,* at least

2    for purposes of this motion.  While Countrywide may believe that the tolling

3    afforded by *Vaccariello* is too broad, this Court is required to apply Ohio law as it

4    was written by the Ohio Supreme Court in *Vaccariello,* "without predicting

5    potential changes in that law."  *United States Fidelity & Guaranty Co. v. Lee*

6    *Investments, LLC*, 76 Cal. Comp. Cases 472, 479 (9th Cir. 2011) (citation omitted).

7         Defendants' reliance on *Arandell Corporation v. American Electric Power*

8    *Company*, No. 09-CV-231-MHW, 2010 U.S. Dist. LEXIS 96372 (S.D. Ohio Sept.

9    15, 2010) is also clearly misplaced.  The federal court in *Arandell* declined to

10   allow tolling because the class action that failed was originally filed in a foreign

11   state court – and Ohio clearly does not allow cross jurisdictional tolling from a

12   foreign-filed state action to Ohio.  *Id.* at *28 (holding that the court "will follow the

13   Supreme Court of Ohio's 'unambiguous holding that the savings statute is not to be

14   applied to protect actions originally filed in other states'").  The court's suggestion

15   that *Vaccariello* may not apply to failures of class member status due to lack of

16   personal jurisdiction is thus clearly dicta.  *Id.*   It is also plainly incorrect, as

17   *Vaccariello* expressly incorporates the standard of a failure "otherwise than on the

18   merits" set forth in the Ohio savings statute, and nowhere suggests that the savings

19   statute may only apply where failure of the class action was due to denial of class

20   certification.  *Vaccariello*, 94 Ohio St. 3d at 382-83.  Further, no Ohio court has

21   adopted the reasoning of *Arandell,* and *Arandell* does not purport to address

22   whether a plaintiff may obtain the benefit of Ohio's savings statute where, as here,

23   it loses its status as a putative class member due to lack of standing. [39]

24

25   [39] Defendants also rely upon *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413

26   F.3d 553 (6th Cir. 2005).  While *Wyser* holds that a plaintiff who files an action
     during the pendency of a class certification loses tolling, courts in the Sixth Circuit

27   do not apply *Wyser-Pratte* where, as here, no motion for class certification was

**IV.    This Court Has Personal Jurisdiction Over All of the Other Defendants**

Defendants Mozilo, Sambol, Adler, Kripalani, Sandefur, Sieracki and Spector argue that this Court lacks jurisdiction over them in the Western & Southern Action because they lack sufficient contacts with the State of Ohio. Defendant Adler also contends that the National Integrity Action must be dismissed as to him because he lacks sufficient contacts with the State of New York.  Defendant Kurland does not contest personal jurisdiction.

None of the Officer Defendants contend that this Court lacks jurisdiction over them if the Complaints assert timely federal claims.  Thus, they concede their motions to dismiss must be denied if any of the federal claims against them survive.  As set forth above, Plaintiffs have alleged timely Securities Act claims against all Officer Defendants, and timely Exchange Act claims against Defendants Mozilo and Sambol.  Thus, the Officer Defendants' jurisdictional motions should be denied.  They must also be denied for the following additional reasons.

**A.    The Tolled Tranches Provide Personal Jurisdiction**

The Officer Defendants do not dispute that if a plaintiff in *Luther* purchased a tranche held by Western & Southern, their motions should be denied if (i) the repose period for filing a claim did not expire before April 27, 2011 (giving credit for applicable tolling); and (ii) the Officer Defendant either signed the relevant registration statement or is alleged to be a control person.

---

pending at the time that the plaintiff filed its own action, or where the class certification issue will never be reached as to the putative plaintiff in question because the class action failed prior to certification on some other ground (such as lack of standing).  *See, e.g., The Western and Southern Life Insurance Company v. Morgan Stanley Mortgage Capital, Inc.*, No. 1:11-cv-00576, 2011 U.S. Dist. LEXIS 146213, at *12 (S.D. Ohio Dec. 20, 2011); *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d at 709, 712-13; *Chapman v. Hardin County*, No. 05-CV-433-S, 2006 U.S. Dist. LEXIS 47095, at *4-5 (W.D. Ky. May 15, 2006).

41

1    The *Luther* plaintiffs purchased CWL 2006-S9 A3, a tranche that was also

2  purchased by Western & Southern.  Defendants Sieracki and Spector signed the

3  registration statement that facilitated this offering.  Complaints ¶¶ 32, 35.  They

4  claim that the statute of repose with respect to claims related to CWL 2006-S9 A3

5  prior to the filing of the Western & Southern Action.  However, this argument

6  ignores the fact that the *Luther* action was reinstated and that "the status of class

7  members is to be determined from the time that suit was instituted." *Satterwhite*,

8  578 F.2d at 997; *see also supra* Section II(A).[40]

9    **B.    Mozilo and Sambol Are Subject to Jurisdiction Under the OCAA**

10    Mozilo and Sambol essentially concede for the purposes of this motion that

11  they were members of an association-in-fact enterprise that committed numerous

12  criminal acts in the state of Ohio and caused injuries in Ohio.  *See* Complaints ¶

13  421.  The OCAA expressly provides for jurisdiction over all members involved in

14  the conduct of an enterprise under the OCAA.  O.R.C. § 2923.34(K).  Mozilo and

15  Sambol do not contest that Western & Southern's OCAA claims are timely and

16  thus concede jurisdiction exists under O.R.C. § 2923.34(K).

17    **C.    Jurisdiction Exists Under Ohio's Long Arm Statute**

18    Ohio's long arm statute provides, in relevant part:

19    (A) A court may exercise personal jurisdiction over a person who acts

20    directly or by an agent, as to a cause of action arising from the

21    person's:  (1) Transacting any business in this state; . . .  (6) Causing

22

23  ───────────────

[40] As set forth in Section II(A), Western & Southern purchased several other
24  tranches (CWL 2006-S9 A4, CWL 2006-S9 A6, CWHL 2007-5 A5, CWALT
2005-46CB A14, CWALT 2005-54CB 1A4 and CWALT 2007-17CB M1) which
25  are backed by the same loan pools at issue in the *Luther* Action.  Defendants Adler,
26  Kripalani, Sandefur, Sieracki and Spector all signed registration statements related
to these offerings.  *See* Western & Southern Am. Compl. ¶¶ 32-37.
27

1         tortious injury in this state to any person by an act outside this state

2         committed with the purpose of injuring persons, when he might

3         reasonably have expected that some person would be injured thereby

4         in this state; . . . .

5  O.R.C. § 2307.382.  The Officer Defendants are subject to jurisdiction in Ohio

6  under the long arm staute because (i) this action arises out of their transaction of

7  business within the state; and (ii) the Officer Defendants caused tortious injury in

8  Ohio reasonably expecting that an investor in Ohio could be injured.

9            **1.**    **The Officer Defendants Transacted Business In Ohio**

10      "It is clear that [O.R.C.] 2307.382(A)(1) . . . [is] very broadly worded and

11  permit[s] jurisdiction over nonresident defendants who are transacting *any* business

12  in Ohio." *Ky. Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 75

13  (Ohio 1990).  A lack of "physical presence in Ohio does not preclude a finding that

14  [an individual] transacted business in this state." *Id.* at 53; *Javitch v. Neuma, Inc.,*

15  No. 04-CV-1487, 2006 U.S. Dist. LEXIS 3561, at \*11 (N.D. Ohio Jan. 31, 2006)

16  ("direction of documents to Ohio" constitutes transacting business in Ohio).

17      Ohio courts have jurisdiction over a defendant who participated in the

18  preparation of false financial information that is disseminated into the state. *See*

19  *Goldstein v. Christiansen,* 70 Ohio St. 3d 232, 236-37 (Ohio 1994) ("dissemination

20  of misleading financial information to Ohio investors" constituted transacting

21  business in Ohio); *Athenian Venture Partners III, L.P. v. Infrastructure Solutions,*

22  *Inc.,* No. 08-CV-821, 2009 U.S. Dist. LEXIS 48840, at \*8-9 (S.D. Ohio May 19,

23  2009) (same).  Here, the Complaints allege that each of the Officer Defendants was

24

25

26

27

1  actively involved in the dissemination of false Offering Materials in Ohio.[41]

2  Accordingly, each of the Officer Defendants transacted business in Ohio.

3         Moreover, when a dispute involves a claim relating to securities, any officer

4  that signed a securities filing necessary to facilitate the sale of a security in Ohio is

5  subject to jurisdiction in Ohio.  *See Blue Flame Energy Corp. v. Ohio Dep't of*

6  *Commerce,* 171 Ohio App. 3d 514, 531-532 (Ohio Ct. App. 10th Dist. 2006)

7  (defendant's "actions in his official capacity as the president of Blue Flame—

8  specifically, his signature on the Form Ds" justified the "assertion of personal

9  jurisdiction.").  Defendants Adler, Kripalani, Sandefur, Sieracki and Spector all

10 signed multiple registration statements that allowed Countrywide to offer the

11 Certificates to Plaintiffs and, thus, transacted business in Ohio.  *See* Complaints ¶¶

12 32-37.

### 2.   The Officer Defendants Caused Tortious Injury in Ohio

14        "Ohio courts seem to be quite willing to give a broad definition to tortious

15 conduct." *Gor-Vue Corp. v. Hornell Elektrooptik AB,* 634 F. Supp. 535, 537 (N.D.

16 Ohio 1986).  Long arm jurisdiction exists over an officer of a corporation who

17 allegedly violated securities law in connection with the issuance of securities by

18 the corporation.[42]

---

[41] *See* Complaints ¶¶ 33,179, 290, 303, 306, 463 (Kripalani); 32, 100, 179, 290, 300, 301, 463 (Sieracki); 35, 179, 290, 463 (Spector); 36, 179, 290, 463 (Adler); 37, 179, 290, 301, 463 (Sandefur); 5, 88, 97, 179, 290, 305-317 (Mozilo); 5, 87, 179, 193, 290, 323, 325, 330, 332 (Sambol).

[42] *See, e.g., Unencumbered Assets, Trust v. JP Morgan Chase Bank (In re Nat'l Century Fin. Enters.),* 617 F. Supp. 2d 700, 710 (S.D. Ohio 2009) (officer whose conduct allowed issuance of securities in Ohio is subject to long arm jurisdiction even if her acts occurred outside the state); *Ahrendt v. Palmetto Federal Sav. & Loan Asso.,* 680 F. Supp. 1125, 1128 (S.D. Ohio 1987) (similar holding); *Herbruck v. LaJolla Capital,* No. 19586, 2000 Ohio App. LEXIS 4668, 2000 WL 1420282 at *3 (Ohio Ct. App. 9th Dist. Sept. 27, 2000) (similar holding); *see also Ohio ex rel.*

1    The Officer Defendants argue that this Court lacks long arm jurisdiction
2    under the fiduciary shield doctrine.  They are wrong.  The fiduciary shield doctrine
3    does not apply when a corporate officer participated in alleged securities law
4    violations.  *See NPF XII, Inc. v. Special Care, Inc.*, No. 00-CV-1048, 2001 U.S.
5    Dist. LEXIS 24351, at *16 (S.D. Ohio Feb. 13, 2001); *Heritage Funding &*
6    *Leasing Co. v. Phee*, 120 Ohio App. 3d 422, 431 (Ohio Ct. App. 10th Dist. 1997).
7    The Complaints establish that each of the Officer Defendants participated in
8    the OSA violations alleged in the Western & Southern Action.  For example,

9    • Mozilo personally directed Countrywide Home Loans to approve any
10   loan that could be off-loaded onto investors such as Western & Southern.
11   Complaints ¶ 5.  Mozilo was a member of Countrywide Financial's
12   Executive Strategy Committee, Credit Committee, and Finance
13   Committee, and, as CEO and Chairman of the Board, he oversaw the
14   Ethics and Asset Liability Committees.  *Id.* ¶ 28.  Mozilo orchestrated
15   Countrywide Financial's scheme to dominate the mortgage-lending
16   market by abandoning underwriting standards, creating and selling
17   fraudulent mortgage-backed securities, and engaging in various other
18   wrongful acts.  *See generally id.* ¶¶ 305-332.

19   • Sambol played a central role in bringing about the sweeping change that
20   transformed Countrywide from a mortgage company with relatively
21   prudent underwriting policies into an entity that originated virtually any
22   loan that could be repackaged for investors.  Complaints ¶¶ 323, 326.  He
23   expressly directed Countrywide employees "to price virtually any loan
24

25   *Dewine v. GMAC Mortg.,* LLC, No. 10-CV-2537, 2011 U.S. Dist. LEXIS 53449,
26   at *4-7 (N.D. Ohio May 18, 2011) (Defendant caused tortious injury in Ohio by his
     acts in Pennsylvania (where he signed the allegedly false affidavits)).
27

45

1    that we reasonably believe we can sell/securitize without losing money,
2    even if other lenders can't or won't do the deal." *Id.* ¶ 5; *see also id.* ¶¶
3    323, 330.

4    • Sieracki authorized the dissemination of the Offering Materials relating
5       to the Certificates. Complaints ¶¶ 32, 463. As member of the
6       Asset/Liability Committee and Corporate Credit Risk Committee, he was
7       responsible for managing fraud prevention and investigation, and
8       protecting against risk. *Id.* ¶¶ 299-300.

9    • Spector authorized the dissemination of the Offering Materials.
10      Complaints ¶ 35. He served as Executive Vice President of Secondary
11      Markets, was promoted to Managing Director in 2001, and served as
12      Senior Managing Director of Secondary Marketing at Countrywide
13      Financial from 2004 to 2006. *Id.* As head of Secondary Markets, he was
14      part of the Countrywide team that consciously endeavored to off-load
15      toxic mortgage loans onto investors such as Western & Southern.

16   • Kripalani, President and CEO of both Countrywide Capital Markets and
17      Countrywide Securities, authorized the dissemination of the Offering
18      Materials relating to seven offerings at issue. Complaints ¶¶ 33, 303.
19      His responsibilities included oversight of Countrywide Securities,
20      Countrywide's underwriting arm. *Id.* ¶ 303. Kripalani allowed
21      Countrywide Securities to ignore the gate-keeping function normally
22      expected of underwriters in order to allow Countrywide to offload its
23      toxic mortgages.

24   • Sandefur and Adler authorized the dissemination of the Offering
25      Materials relating to seven offerings at issue. Complaints ¶¶ 36-37.
26   The Complaints further allege that the Officer Defendants sold an enormous
27   amount of the stock of Countrywide at prices they themselves artificially inflated

46

1   and received multi-million dollar bonuses for their participation in the

2   Countrywide fraud.  Complaints ¶¶ 71, 179.  These allegations are more than

3   sufficient to establish Ohio long arm jurisdiction over all the Officer Defendants.

4   **D.    This Court's Exercise of Jurisdiction Satisfies Due Process**

5         The Due Process Clause requires that a non-resident defendant have

6   sufficient minimum contacts with the forum state such that imposition of personal

7   jurisdiction "does not offend traditional notions of fair play and substantial

8   justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed.

9   95 (1945).  Courts in the Ninth Circuit apply a three part test in determining

10  whether the exercise of long arm jurisdiction comports with due process:

11        (1) The non-resident defendant must purposefully direct his activities

12        or consummate some transaction with the forum or resident thereof; or

13        perform some act by which he purposefully avails himself of the

14        privilege of conducting activities in the forum, thereby invoking the

15        benefits and protections of its laws; (2) the claim must be one which

16        arises out of or relates to the defendant's forum-related activities; and

17        (3) the exercise of jurisdiction must comport with fair play and

18        substantial justice, i.e., it must be reasonable.

19  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011).

20        The first prong of this test is satisfied in a securities action when the officer

21  defendant signed the relevant registration statement, *see, e.g., In re LDK Solar*

22  *Secs. Litig.*, No. 07-CV-05182 WHA, 2008 U.S. Dist. LEXIS 80717, at *16-17

23  (N.D. Cal. 2008), or was otherwise an active participant in the fraud, *see, e.g.,*

24  *Openwave Sys. v. Fuld*, No. 08-CV-5683-SI, 2009 U.S. Dist. LEXIS 48206, at

25

26

27

1  \*34-35 (N.D. Cal. June 6, 2009).[43]  As discussed above, the Officer Defendants
2  each played a significant role in Countrywide's scheme to off-load toxic MBS on
3  investors such as Western & Southern, and for this reason alone personal
4  jurisdiction over the Officer Defendants in Ohio comports with due process.  *See*
5  *Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999)
6  (corporate officers cannot "hide behind the corporation where [the officer was] an
7  actual participant in the tort"); *j2 Global Communications, Inc. v. Blue Jay, Inc.*,
8  No. 08-CV-4254, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at \*5, 9 (N.D.
9  Cal. Jan. 5, 2009) (jurisdiction where defendant directed agents to send fax
10  advertisements to nationwide network of servers); *Openwave Sys.*, 2009 U.S. Dist.
11  LEXIS 48206, at \*34-35; *In re LDK Solar Secs. Litig.*, 2008 U.S. Dist. LEXIS
12  80717, at \*16-17.[44]
13
14

---

15  [43] Defendant Adler is the only defendant who contests New York's exercise of
16  personal jurisdiction.  His motion must be denied because under New York law,
   the signing of a registration statement is sufficient to confer personal jurisdiction.
17  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d at 399 ("The signing of documents
18  filed with the SEC which form the basis for [p]laintiffs' claims is sufficient contact
   with the jurisdiction to justify this Court's exercise of jurisdiction over
19  [defendant]"); *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 305-06
20  (E.D.N.Y. 2002) (holding that the "signing the Registration Statement was enough
   to put the defendant on notice of potential suit in the United States and shows
21  purposeful availment," thus conferring personal jurisdiction over defendant).

22  [44]  Defendant Mozilo's reliance on *Indiana Plumbing Supply v. Standard of Lynn*,
23  880 F. Supp. 743 (C.D. Cal. 1995) is misplaced because the defendant was not
   alleged to have had any role in the underlying misconduct.  Similarly, *Toyz, Inc. v.*
24  *Wireless Toyz Franchise, LLC*, No. C-09-05091 JF, 2010 U.S. Dist. LEXIS 12032,
25  at \*24-25 (N.D. Cal. Jan. 25, 2010) and *Pebble Beach Co. v. Caddy*, 453 F.3d 1151
   (9th Cir. 2006) are inapposite because the plaintiff did not allege that any act was
26  directed to the relevant state.
27

1    Moreover, due process concerns are satisfied here for the Officer Defendants
2    who signed registration statements, because by signing registration statements for
3    securities that they knew would be offered to investors in Ohio, those Officer
4    Defendants purposefully availed themselves of the privilege of conducting
5    activities in the forum. *See, e.g., In re Medeva Sec. Litig.*, No. 93-CV-4376 KN,
6    1994 U.S. Dist. LEXIS 11675, at *18-19 (C.D. Cal. June 3, 1994) (purposeful
7    availment met where defendant signed the registration statement); *In re CINAR*
8    *Corp. Sec. Litig.,* 186 F. Supp. 2d at 305-06 ("signing the Registration Statement
9    was enough to put the defendant on notice of potential suit in the United States and
10   shows purposeful availment").[45]

11   The second prong of the Ninth Circuit jurisdictional due process test is
12   satisfied if "[b]ut–for defendants' forum related conduct, the injury would not have
13   occurred." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d
14   1122, 1131-32 (9th Cir. Cal. 2003). Defendants implausibly contend that their
15   contacts with Ohio were not the "but for" cause of Western & Southern's claim.
16   However, it is settled law in the Ninth Circuit that when a defendant orchestrated
17   the alleged fraud or participated in the dissemination of misrepresentations, the
18   "but for" prong is easily met. *See e.g., Rippey v. Smith*, 16 Fed. Appx. 596, 599
19   (9th Cir. 2001); *Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1132 (same);

20
21

22   [45] Defendants Adler, Sieracki, Mozilo and Spector's reliance on *New Mexico State*
23   *Investment Council v. Countrywide Financial Corporation*, No. D-0101-CV-2008-
     02289 (N.M. Dist. Ct.), and Defendants Sieracki and Spector's reliance on *United*
24   *Western Bank v. Countrywide Financial Corporation*, No. 2010-CV-3325 (C.O.
25   Dist. Ct.) are misplaced, as the Colorado and New Mexico long arm statutes at
     issue in those cases are much narrower than Ohio's long arm statute. *See* C.O. ST
26   § 13-1-124 and N.M. ST § 38-1-16.
27

1   *Openwave Sys.*, 2009 U.S. Dist. LEXIS 48206, at \*37 (same); *Anschutz Corp. v.*

2   *Merrill Lynch & Co.*, 785 F. Supp. 2d 799, 828 (N.D. Cal. 2011) (same).

3       Finally, the third prong of the due process test is met as there is a

4   presumption that the exercise of jurisdiction is reasonable when the first two

5   prongs of the specific jurisdiction test have been met, as here. *See iYogi Holding*

6   *Pvt. Ltd. v. Secure Remote Support, Inc.*, No. C-11-0592 CW, 2011 U.S. Dist.

7   LEXIS 144425, at \*28-29 (N.D. Cal. Oct. 24, 2011). "[T]he touchstone [of a

8   court's inquiry] is whether the defendant's conduct and connection with the forum

9   State are such that he should reasonably anticipate being haled into court there."

10  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62

11  L. Ed. 2d 490 (1980). The Officer Defendants benefited from the sale of the

12  Certificates in Ohio, and they were aware that the Certificates would be purchased

13  by Ohio investors. In light of the Officer Defendants' active participation in the

14  activities that caused Western & Southern's injuries in Ohio, the exercise of

15  jurisdiction simply does not offend any notions of fair play and justice.

16  **V.    This Court Should Grant Plaintiffs Leave to Replead Any Claims This**

17  **Court Dismisses**

18       Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be

19  freely given when justice so requires." *See Bowles v. Reade*, 198 F.3d 752, 757

20  (9th Cir. 1999). "A complaint should not be dismissed unless it appears beyond

21  doubt that plaintiff can prove no set of facts in support of the claim which would

22  entitle him or her to relief." *Konig v. State Bar of Cal.*, No. 04-CV-2210, 2004

23  U.S. Dist. LEXIS 19498, at \*14-15 (N.D. Cal. Sept. 16, 2004). Because Plaintiffs

24  have never had the opportunity to address any inadequacies that may exist in their

25  pleadings, leave should be granted. *See Manzarek v. St. Paul Fire & Marine Ins.*

26  *Co.*, 519 F.3d 1025, 1034-35 (9th Cir. 2008) (district court abused its discretion

27  when it dismissed a complaint without leave to amend before providing the

50

1  plaintiffs with an opportunity to explain how they could amend); *Ralston v.*
2  *Mortgage Investors Group, Inc.,* C 08- 536 JF (RS), 2009 WL 688858, at *10
3  (N.D. Cal. Mar. 16, 2009); *Mathison v. Bumbo,* No. 08-CV-0369, 2008 U.S. Dist.
4  LEXIS 108511, at *34 (C.D. Cal. Aug. 18, 2008).

5                                        **CONCLUSION**

6          For all of the foregoing reasons, Western & Southern and National Integrity
7  respectfully submit that Defendants' partial motions to dismiss should be denied.

8  Dated: January 13, 2011

9                                    By: Brian C. Lysaght
10                                   Brian C. Lysaght (Bar. No. 61965)
11                                   blysaght@lysaghtlegal.com
                                     LYSAGHT LAW GROUP
12                                   12021 Wilshire Boulevard
13                                   Los Angeles, California 90025
                                     Telephone: (310) 567-1111
14                                   Facsimile: (310) 472-0243

15                                        -and-

16                                   David H. Wollmuth (*pro hac vice*)
                                     dwollmuth@wmd-law.com
17                                   Thomas P. Ogden (*pro hac vice* pending)
18                                   togden@wmd-law.com
                                     Steven S. Fitzgerald (*pro hac vice*)
19                                   sfitzgerald@wmd-law.com
20                                   WOLLMUTH MAHER & DEUTSCH LLP
                                     500 Fifth Avenue
21                                   New York, New York 10110
22                                   (212) 382-3300

23                                   *Attorneys for Plaintiffs The Western and Southern*
24                                   *Life Insurance Company, Western-Southern Life*
                                     *Assurance Company, Columbus Life Insurance*
25                                   *Company, Integrity Life Insurance Company, and*
                                     *Fort Washington Investment Advisors, Inc. and*
26                                   *National Integrity Life Insurance Company*
27

                                          51

## APPENDIX A

*Western & Southern*

| Offering/Tranche | Prospectus Supplement Date | Date Added to *Luther* | Days Elapsed Prior to Inclusion | Date Dismissed from *Luther* | Date Added to *Maine State* | Days Elapsed Prior to Inclusion | Date Dismissed From *Maine State* | Days Elapsed Prior to Filing of Western & Southern | Total Days Elapsed |
|---|---|---|---|---|---|---|---|---|---|
| CWALT 2005-26CB (A6) | 5/24/2005 | 11/14/2007 | 904 | 1/6/2010 | 1/14/2010 | 8 | 11/4/2010 | 174 | 1086 |
| CWALT 2005-46CB (A14) | 8/29/2005 | 11/14/2007 | 807 | 1/6/2010 | 1/14/2010 | 8 | 11/4/2010 | 174 | 989 |
| CWALT 2005-54CB (1A4) | 9/27/2005 | 11/14/2007 | 778 | 1/6/2010 | 1/14/2010 | 8 | 11/4/2010 | 174 | 960 |
| CWALT 2007-17CB (M1) | 6/28/2007 | 9/9/2008 | 439 | 1/6/2010 | 1/14/2010 | 8 | 11/4/2010 | 174 | 621 |
| CWHL 2007-5 (A5) | 3/29/2007 | 9/9/2008 | 530 | 1/6/2010 | 1/14/2010 | 8 | 11/4/2010 | 174 | 712 |
| CWL 2006-S9 (A3)[1] | 12/28/2006 | 9/9/2008 | 621 | 1/6/2010 | 1/14/2010 | 8 | 6/6/2011 | 0 | 629 |
| CWL 2006-S9 (A4) | 12/28/2006 | 9/9/2008 | 621 | 1/6/2010 | 1/14/2010 | 8 | 6/6/2011 | 0 | 629 |
| CWL 2006-S9 (A6) | 12/28/2006 | 9/9/2008 | 621 | 1/6/2010 | 1/14/2010 | 8 | 6/6/2011 | 0 | 629 |

*National Integrity*

| Offering/Tranche | Prospectus Supplement Date | Date Added to *Luther* | Days Elapsed Prior to Inclusion | Date Dismissed from *Luther* | Date Added to *Maine State* | Days Elapsed Prior to Inclusion | Date Dismissed From *Maine State* | Days Elapsed Prior to Filing of National Integrity | Total Days Elapsed |
|---|---|---|---|---|---|---|---|---|---|
| CWALT 2005-26CB (A6) | 5/24/2005 | 11/14/2007 | 904 | 1/6/2010 | 1/14/2010 | 8 | 11/4/2010 | 370 | 1282 |
| CWALT 2005-54CB (1A4) | 9/27/2005 | 11/14/2007 | 778 | 1/6/2010 | 1/14/2010 | 8 | 11/4/2010 | 370 | 1156 |
| CWALT 2007-17CB (M1) | 6/28/2007 | 9/9/2008 | 439 | 1/6/2010 | 1/14/2010 | 8 | 11/4/2010 | 370 | 817 |
| CWHL 2007-5 (A5) | 3/29/2007 | 9/9/2008 | 530 | 1/6/2010 | 1/14/2010 | 8 | 11/4/2010 | 370 | 908 |
| CWL 2006-S9 (A4) | 12/28/2006 | 9/9/2008 | 621 | 1/6/2010 | 1/14/2010 | 8 | 6/6/2011 | 156 | 785 |
| CWL 2006-S9 (A6) | 12/28/2006 | 9/9/2008 | 621 | 1/6/2010 | 1/14/2010 | 8 | 6/6/2011 | 156 | 785 |

---

[1] Countrywide refers to this offering as "CWHEQ 2006-S9." Because the Complaints utilize the "CWL" prefix to describe the same offering, Plaintiffs will use the "CWL" prefix here.

Appendix A to Plaintiffs' Opposition - 1

**Appendix B**

*MBS PURCHASED BY WESTERN & SOUTHERN*

| Offering/Tranche | Prospectus Supplement Date | Date Added to *Luther* | Days Elapsed Prior to Inclusion | Date Dismissed from *Maine State* | Days Elapsed Prior to Filing of Western & Southern Action | Total Days Elapsed* |
|---|---|---|---|---|---|---|
| CWALT 2005-10CB (1A8) | 3/28/2005 | 11/14/2007 | 961 | 11/4/2010 | 174 | 1135 |
| CWALT 2005-13CB (A8) | 3/22/2005 | 11/14/2007 | 967 | 11/4/2010 | 174 | 1141 |
| CWALT 2005-20CB (1A3) | 5/25/2005 | 11/14/2007 | 903 | 11/4/2010 | 174 | 1077 |
| CWALT 2005-20CB (1A4) | 5/25/2005 | 11/14/2007 | 903 | 11/4/2010 | 174 | 1077 |
| CWALT 2005-26CB (A6)*? | 5/24/2005 | 11/14/2007 | 904 | 11/4/2010 | 174 | 1078 |
| CWALT 2005-28CB (2A4) | 6/27/2005 | 11/14/2007 | 870 | 11/4/2010 | 174 | 1044 |
| CWALT 2005-30CB (1A6) | 6/27/2005 | 11/14/2007 | 870 | 11/4/2010 | 174 | 1044 |
| CWALT 2005-46CB (A14) | 8/29/2005 | 11/14/2007 | 807 | 11/4/2010 | 174 | 981 |
| CWALT 2005-47CB (A11) | 8/25/2005 | 11/14/2007 | 811 | 11/4/2010 | 174 | 985 |
| CWALT 2005-49CB (A3) | 9/27/2005 | 11/14/2007 | 778 | 11/4/2010 | 174 | 952 |

* 3 years= 1095 days
** Defendants concede tolled by *Luther*.

Appendix B to Plaintiffs' Opposition - 1

| Offering/Tranche | Prospectus Supplement Date | Date Added to *Luther* | Days Elapsed Prior to Inclusion | Date Dismissed from *Maine State* | Days Elapsed Prior to Filing of Western & Southern Action | Total Days Elapsed* |
|---|---|---|---|---|---|---|
| CWALT 2005-54CB (1A4) | 9/27/2005 | 11/14/2007 | 778 | 11/4/2010 | 174 | 952 |
| CWALT 2005-J1 (1A8) | 1/26/2005 | 11/14/2007 | 1,022 | 11/4/2010 | 174 | 1196 |
| CWALT 2006-14CB (A7) | 4/25/2006 | 11/14/2007 | 568 | 11/4/2010 | 174 | 742 |
| CWALT 2006-39CB (1A4) | 11/29/2006 | 11/14/2007 | 350 | 11/4/2010 | 174 | 524 |
| CWALT 2006-7CB (1A14) | 3/29/2006 | 11/14/2007 | 595 | 11/4/2010 | 174 | 769 |
| CWALT 2007-15CB (M) | 5/31/2007 | 11/14/2007 | 167 | 11/4/2010 | 174 | 341 |
| CWALT 2007-16CB (M1) | 6/28/2007 | 9/9/2008 | 439 | 11/4/2010 | 174 | 613 |
| CWALT 2007-17CB (M1) | 6/28/2007 | 9/9/2008 | 439 | 11/4/2010 | 174 | 613 |
| CWALT 2007-21CB (1A6) | 7/27/2007 | 9/9/2008 | 410 | 11/4/2010 | 174 | 584 |
| CWALT 2007-5CB (1A13) | 2/26/2007 | 9/9/2008 | 561 | 12/6/2010 | 142 | 703 |
| CWHL 2005-24 (A33) | 9/27/2005 | 9/9/2008 | 1,078 | 11/4/2010 | 174 | 1252 |

\* 3 years= 1095 days
\*\* Defendants concede tolled by *Luther*.

Appendix B to Plaintiffs' Opposition - 2

| Offering/Tranche | Prospectus Supplement Date | Date Added to *Luther* | Days Elapsed Prior to Inclusion | Date Dismissed from *Maine State* | Days Elapsed Prior to Filing of Western & Southern Action | Total Days Elapsed* |
|---|---|---|---|---|---|---|
| CWHL 2005-24 (A7) | 9/27/2005 | 9/9/2008 | 1,078 | 11/4/2010 | 174 | 1252 |
| CWHL 2005-25 (A6) | 9/27/2005 | 9/9/2008 | 1,078 | 11/4/2010 | 174 | 1252 |
| CWHL 2005-J2 (3A14) | 6/29/2005 | 9/9/2008 | 1,168 | 11/4/2010 | 174 | 1342 |
| CWHL 2006-21 (A15) | 12/27/2006 | 9/9/2008 | 622 | 11/4/2010 | 174 | 796 |
| CWHL 2007-14 (M) | 7/27/2007 | 9/9/2008 | 410 | 11/4/2010 | 174 | 584 |
| CWHL 2007-15 (M) | 7/27/2007 | 9/9/2008 | 410 | 11/4/2010 | 174 | 584 |
| CWHL 2007-5 (A5) | 3/29/2007 | 9/9/2008 | 530 | 11/4/2010 | 174 | 704 |
| CWL 2006-S8 (A4) | 12/27/2006 | 9/9/2008 | 622 | 12/6/2010 | 142 | 764 |
| CWL 2006-S9 (A3)*[1] | 12/28/2006 | 9/9/2008 | 621 | 6/6/2011 | 0 | 621 |
| CWL 2006-S9 (A4) | 12/28/2006 | 9/9/2008 | 621 | 6/6/2011 | 0 | 621 |
| CWL 2006-S9 (A6) | 12/28/2006 | 9/9/2008 | 621 | 6/6/2011 | 0 | 621 |
| CWL 2007-S1 (A5) | 2/27/2007 | 9/9/2008 | 560 | 12/6/2010 | 142 | 702 |
| CWL 2007-S2 (A5F) | 3/29/2007 | 9/9/2008 | 530 | 11/4/2010 | 174 | 704 |
| CWL 2007-11 (2A1) | 6/28/2007 | 9/9/2008 | 439 | 12/6/2010 | 142 | 581 |
| CWL 2007-4 (A5W) | 3/28/2007 | 9/9/2008 | 531 | 11/4/2010 | 174 | 705 |

[1] Countrywide refers to this offering as "CWHEQ 2006-S9" which is another acronym used to describe the same offering. Because the Complaints utilize the "CWL" prefix, Plaintiffs will use the "CWL" prefix herein.

* 3 years= 1095 days

** Defendants concede tolled by *Luther*.

Appendix B to Plaintiffs' Opposition - 3