IRELL & MANELLA LLP
David Siegel (101355)
dsiegel@irell.com
A. Matthew Ashley (198235)
mashley@irell.com
Allison L. Libeu (244487)
alibeu@irell.com
Mytili Bala (277396)
mbala@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:   (310) 203-7199

Attorneys for Defendant
Angelo Mozilo

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION ) ) ) ) ) ) ) ) ) ) ) ) _____ ) | MDL No. 11-ML-02265-MRP (MANx) **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ANGELO MOZILO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS** Date:    June 13, 2012 Time:   11:00 a.m. Ctrm:   12 Judge:  Hon. Mariana R. Pfaelzer |
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, *et al.*, ) ) ) ) Plaintiffs, ) ) vs. ) ) COUNTRYWIDE FINANCIAL ) CORPORATION, *et al.*, ) ) Defendants. ) _____ ) | Case No. 11-CV-07166-MRP (MANx) |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1   NATIONAL INTEGRITY LIFE
    INSURANCE COMPANY,                    )
2                                         )
                Plaintiff,                )
3                                         )
         vs.                              )    Case No. 11-CV-09889-MRP (MANx)
4                                         )
    COUNTRYWIDE FINANCIAL                 )
5   CORPORATION, *et al*.,                )
                                          )
6               Defendants.               )
                                          )

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................1

II.  THE CONTROL PERSON CLAIM AGAINST MR. MOZILO
     FAILS AS A MATTER OF LAW ......................................................3

III.  NO JURISDICTION OVER THE OHIO CLAIMS ...........................6

    A.  Western & Southern's Ohio Claims Fail For Lack Of
         Personal Jurisdiction ...............................................................7

    B.  The Ohio Claims Fail For Lack Of Legislative Jurisdiction ...............9

IV.  THE OHIO CLAIMS FAIL ON THE MERITS.............................11

    A.  The Ohio Securities Act Claim ..........................................11

        1.  OSA § 1707.41(A)..............................................12

        2.  OSA § 1707.43 ................................................13

        3.  OSA § 1707.44(B)(4), (J), and (G)..........................14

    B.  The Ohio RICO Claim .....................................................15

        1.  Two Predicate Acts ...........................................15

        2.  Pattern ..........................................................17

        3.  Enterprise .......................................................18

    C.  The Civil Conspiracy Claim ..........................................21

V.  CONCLUSION ..........................................................................23

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*A.S. Goldmen & Co. v. N.J. Bureau of Sec.*,
    163 F.3d 780 (3d Cir. 1999)...............................................................10

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
    --- F. Supp. 2d ---,
    2012 WL 335730 (C.D. Cal. Feb. 2, 2012)...............................5, 20

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
    824 F. Supp. 2d 1164 (C.D. Cal. 2011)...................................11, 22

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
    551 F.2d 784 (9th Cir. 1977)...............................................................7

*Arch Ins. Co. v. Allegiant Prof'l Bus. Services, Inc.*,
    No. CV 11–1675 CAS (PJWx),
    2012 WL 1400302 (C.D. Cal. Apr. 23, 2012)..............................17

*Avery v. Rossford, Ohio Transp. Improvement Dist.*,
    762 N.E.2d 388 (Ohio Ct. App. 2001)..........................................21

*Barnebey v. E.F. Hutton & Co.*,
    715 F. Supp. 1512 (M.D. Fla. 1989)..............................................10

*Boyle v. United States*,
    556 U.S. 938 (2009).................................................................19, 20

*Braun v. N. Ohio Bank*,
    430 F. Supp. 367 (N.D. Ohio 1977)..............................................13

*Chassen v. Fid. Nat. Fin., Inc.*,
    No. 09-291 (PGS),
    2009 WL 4508581 (D.N.J. Nov. 16, 2009)..................................18

*Chirila v. Conforte*,
    47 Fed. Appx. 838 (9th Cir. 2002)...................................................8

*Collins v. Nat'l City Bank*,
    No. 19884,
    2003 WL 22971874 (Ohio Ct. App. Dec. 19, 2003)...................21

*CSAHA/UHHS-Canton, Inc. v. Aultman Health Foundation*,
    No. 2010 CA00303,
    2012 WL 750972 (Ohio Ct. App. Mar. 5, 2012)........................19

*Dexia Holdings, Inc. v. Countrywide Fin. Corp.*,
    No. 2:11-CV-07165-MRP (MANx),
    2012 WL 1798997 (C.D. Cal. Feb. 17 2012)...........................11, 22

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- ii -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

**Page(s)**

*Dowling v. Select Portfolio Servicing, Inc.*,
    No. 2:05-cv-049,
    2006 WL 571895 (S.D. Ohio Mar. 7, 2006) .......................................... 16, 17

*Emergency One, Inc. v. Waterous Co., Inc.*,
    23 F. Supp. 2d 959 (E.D. Wisc. 1998) ......................................................... 10

*Eva Midwest Nat'l Mortg. Bank, Inc.*,
    143 F. Supp. 2d 862 (N.D. Ohio 2001) ........................................................ 20

*First Nationwide Bank v. Gelt Funding, Corp.*,
    820 F. Supp. 89 (S.D.N.Y. 1993) ................................................................ 18

*Gerling Global Reinsurance Corp. of Am. v. Low*,
    296 F.3d 832 (9th Cir. 2002) ......................................................................... 9

*Herakovic v. Catholic Diocese of Cleveland*,
    No. 85467,
    2005 WL 3007145 (Ohio Ct. App. Nov. 10, 2005) ................................. 15, 16

*Hild v. Woodcrest Ass'n*,
    391 N.E.2d 1047 (Ohio Comm. Pl. 1977)..................................................... 14

*Howard v. Everex*,
    228 F.3d 1057 (9th Cir. 2000) ....................................................................... 6

*In re Bell & Beckwith*,
    89 B.R. 632 (N.D. Ohio 1988) ..................................................................... 13

*In re Countrywide Fin. Corp. Mortg. Marketing and Sales Practices
    Litig.*,
    601 F. Supp. 2d 1201 (S.D. Cal. 2009) ........................................................ 20

*In re Dynamic Access Memory*,
    No. C 02-1486 PJH,
    2005 WL 2988715 (N.D. Cal. Nov. 7, 2005)................................................ 8

*In re Homestore.com, Inc. Sec. Litig.*,
    347 F. Supp. 2d 790 (C.D. Cal. 2004)........................................................... 6

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)........................................................................ 20

*In re Nat'l Century Fin. Enters.*,
    580 F. Supp. 2d 630 (S.D. Ohio 2008)......................................................... 14

*j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*,
    No. 08-CV-4254 PJH,
    2009 WL 29905 (N.D. Cal. Jan. 5, 2009) ...................................................... 7

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

**Page(s)**

*Johnson v. KB Home*,
    720 F. Supp. 2d 1109 (D. Ariz. 2010)............................................................20

*Kerr v. Hurd*,
    694 F. Supp. 2d 817 (S.D. Ohio 2010)....................................................21, 22

*Klawans v. E.F. Hutton & Co.*,
    No. IP 83-680-C,
    1989 U.S. Dist. LEXIS 18194 (S.D. Ind. Feb. 15, 1989) .............................10

*Lopardo v. Lehman Bros., Inc.*,
    548 F. Supp. 2d 450 (N.D. Ohio 2008) ........................................................20

*Martin v. Steubner*,
    652 F.2d 652 (6th Cir. 1981) ........................................................................10

*Mass. Mut. Life Ins. Co. v. Countrywide Fin. Corp.*,
    No. 2:11-CV-10414 MRP (MANx),
    2012 WL 1322884 (C.D. Cal. Apr. 16, 2012)......................................passim

*McNulty v. Reddy Ice Holdings, Inc.*,
    No. 08-CV-13178,
    2009 WL 2168231 (E.D. Mich. Jul. 17, 2009) .............................................19

*Miller v. Griffith*,
    196 N.E.2d 154 (Ohio C.P. 1961) .................................................................14

*Nguyen v. JP Morgan Chase Bank*,
    No. SACV 11–01908 DOC (ANx),
    2012 WL 294936 (C.D. Cal. Feb. 1, 2012)...................................................17

*Nguyen v. Radient*,
    No. SA CV-11-0406 DOC (MLGx),
    2011 U.S. Dist LEXIS 124631(C.D. Cal. Oct. 26, 2011) ...............................6

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007).........................................................................20

*Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Services, LLC*,
    813 F. Supp. 2d 871 (S.D. Ohio 2011)..........................................................12

*Openwave Sys., Inc. v. Fuld*,
    No. C 08-5683 SI,
    2009 WL 1622164 (N.D. Cal. Jun. 6, 2009) ...................................................8

*Paracor Finance, Inc. v. General Electric Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996).........................................................................5

*Perkowski v. Megas Corp.*,
    563 N.E.2d 378 (Ohio Ct. App. 1990) ..........................................................14

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1

2

*Pik-Coal Co. v. Big Rivers Elec. Corp.*,
    200 F.3d 884 (6th Cir. 2000).........................................................................17

*Quill Corp. v. North Dakota*,
    504 U.S. 298 (1992) ...................................................................................10

*Schneider v. Cal. Dept. of Corr.*,
    151 F.3d 1194 (9th Cir. 1998)...............................................................12, 16

*Schneider v. Hardesty*,
    669 F.3d 693 (6th Cir. 2012) .......................................................................8

*State v. Franklin*,
    Nos. 24011, 24012,
    2011 WL 6920727 (Ohio Ct. App. Dec. 30, 2011)....................................19

*State v. Habash*,
    No. 17071,
    1996 WL 37747(Ohio Ct. App. Jan. 31, 1996)..........................................16

*Strunk v. Settles*,
    No. 827,
    1980 WL 353191 (Ohio Ct. App. Feb. 13, 1980) ......................................13

*Thrivent Fin. for Lutherans v. Countrywide Fin. Corp.*,
    No. 2:11-CV-07154-MRP (MANx),
    2012 WL 1799028 (C.D. Cal. Feb. 17, 2012)......................................11, 22

*Travelers Health Ass'n v. Comm'n of Va.*,
    339 U.S. 643 (1950) ...................................................................................10

*Unencumbered Assets Trust v. JP Morgan Chase Bank*,
    604 F. Supp. 2d 1128 (S.D. Ohio 2009).....................................................17

*Western & Southern Life Ins. Co. v. Countrywide Fin. Corp.*,
    No. 2:11-CV-07166 MRP (MANx),
    2012 WL 1097244 (C.D. Cal. Mar. 9, 2012) ...........................1, 8, 11, 22

*Williams v. Aetna Fin. Co.*,
    700 N.E.2d 859 (Ohio 1998)......................................................................21

*Z-Rock Commc'ns Corp. v. William A. Exline, Inc.*,
    No C-03-02436 WHA,
    2004 WL 1771569 (N.D. Cal. Aug. 6, 2004)...............................................8

**Statutes**

Ohio Rev. Code § 1707.41 ...................................................................................12

Ohio Rev. Code § 1707.43 ...................................................................................13

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1

**Page(s)**

2

3   Ohio Rev. Code § 1707.44 ....................................................................... 14

4   Ohio Rev. Code § 2923.34 ....................................................................... 17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- vi -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

## I.  **INTRODUCTION**

Through eighty-one pages of heated rhetoric and sweeping accusations of an imagined colossal economic conspiracy (the supposed existence of which Plaintiffs apparently will claim complete ignorance, despite their sophistication and fiduciary responsibilities with regard to the money they chose to invest in complex MBS certificates), Plaintiffs' Opposition fails utterly to link Mr. Mozilo to the alleged "title" fraud that is now the linchpin of Plaintiffs' case.[1]  And it fails utterly to link anything Mr. Mozilo supposedly said or did *to the sale of MBS to Plaintiffs*.  The Opposition, just like the Complaints which are the subject of this Motion to Dismiss, offers no particularized factual allegation of specific misconduct by Mr. Mozilo.  Instead, like the deficient Complaints themselves, the Opposition inappropriately lumps Defendants together with little to no distinction at all in contravention of controlling law that the Opposition simply ignores, including this Court's own prior Orders.

First, as a threshold matter, there is no jurisdiction as to Mr. Mozilo.  There is no personal jurisdiction in *Western & Southern*, because the federal control person claim against Mr. Mozilo fails.  Mr. Mozilo demonstrated in his moving brief that there is no link between him and the sale of MBS at issue in this case, and certainly no link is alleged between him and the only portion of the control person claim that remains – i.e., supposed "transfer of title" fraud.  Plaintiffs offer no answer to any of this, instead ignoring their admissions and governing case law (without even mentioning it) and attacking a "culpable participation" straw man that was never proffered by Mr. Mozilo.  This misdirection should fail, and the control person claim fails along with it.

---

[1] On March 9, 2012, the Court dismissed Plaintiffs' control person, Ohio Securities Act, and civil conspiracy claims as untimely, *except* to the limited extent those claims were based on the alleged title fraud scheme.  *Western & Southern Life Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-07166 MRP (MANx), 2012 WL 1097244, at *12 (C.D. Cal. Mar. 9, 2012).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 1 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1    Without the federal claim, all of Western & Southern's state law claims

2   against Mr. Mozilo fail for lack of personal jurisdiction, as Mr. Mozilo is not alleged

3   to have personally directed any wrongful conduct in connection with sales of

4   securities into the state of Ohio.  And, for the same reasons, National Integrity's

5   effort to invoke Ohio statutory claims in their action brought in a New York court (a

6   jurisdiction which does not recognize such state law claims) fails under the related

7   doctrine of legislative jurisdiction.  Plaintiffs' attempts to avoid this Court's prior

8   Orders on personal jurisdiction and Ninth Circuit authority on legislative jurisdiction

9   (all of which Plaintiffs just ignore) are fruitless.  This Court already has recognized

10  that Mr. Mozilo has no minimum contacts with Ohio, and thus he cannot be sued by

11  Western & Southern in Ohio and likewise cannot be sued under an Ohio statute.

12    Given the lack of jurisdiction, this Court need not address the merits of the

13  state law claims.  But they fail as a matter of law as well.  The Ohio Securities Act

14  claim fails because there are no allegations that Mr. Mozilo participated in the sale

15  of MBS.  Likewise, the Ohio RICO claim fails as to Mr. Mozilo because he is not

16  alleged to have committed even one predicate act, let alone the two that are required.

17  Plaintiffs attempt to avoid this result by recasting their Ohio RICO claim as a

18  conspiracy to commit an Ohio RICO violation in their Opposition.  Under Plaintiffs'

19  new theory (nowhere pled in their Complaints), it is sufficient under Ohio RICO to

20  label a corporate CEO as the "mastermind" or "ringleader" without any

21  particularized allegations as to his coordination, direction, or even knowledge of the

22  alleged misconduct.  In essence, Plaintiffs contend that Ohio RICO imposes strict

23  liability for civil racketeering over any corporate CEO whose company or affiliated

24  entity is alleged to have committed securities fraud and one other predicate act.

25  This theory fails – not only because Plaintiffs cannot amend their Complaints

26  through their Opposition – but also because Ohio RICO requires more rigorous

27  pleading and rejects such sweeping claims.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 2 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1    Even if the Complaint did allege a conspiracy to violate a conspiracy statute,

2    it would fail for the same reason the common law civil conspiracy claim fails.

3    There are no facts pled which show that Mr. Mozilo knew about the supposed fraud

4    that underlies the alleged conspiracy.  And there are no facts pled which show that

5    Mr. Mozilo entered into any *agreement* with any of the various and sundry

6    "conspirators" in Plaintiffs' fancifully vast "conspiracy," including but not limited

7    to:  "Wall Street financial institutions," "foreclosure law firms," a certain paralegal

8    named Shellie Hill, and as yet "unnamed co-conspirators."

9    Unable to plead *facts* linking *Mr. Mozilo* to the MBS sales or purported

10   conspiracy, Plaintiffs resort to throwing out monikers, like "orchestrated,"

11   "mastermind," and "ringleader."  What are glaringly absent from Plaintiffs'

12   vernacular are words that would actually mean something, such as "read,"

13   "represented," "wrote," "signed," "offered," or "sold."  Neither the Federal Rules of

14   Civil Procedure nor conspiracy law permit pleading by name-calling, and for all of

15   these reasons, Plaintiffs' Complaints against Mr. Mozilo should be dismissed with

16   prejudice.[2]

17   **II.   THE CONTROL PERSON CLAIM AGAINST MR. MOZILO FAILS**

18   **AS A MATTER OF LAW**

19   Plaintiffs' remaining case against Mr. Mozilo hinges on their control person

20   claim.  If it fails (and it does), there is no personal jurisdiction in Ohio under this

21   Court's prior rulings.  The control person claim against Mr. Mozilo fails for the

22   fundamental reason that it depends entirely on "transfer of title" allegations that

23   plainly have nothing to do with Mr. Mozilo.

24

25

26   _____

27   [2] Mr. Mozilo expressly joins in the memoranda submitted by the other Defendants to the extent applicable to him.  (Mozilo Mot. 2:5-7; Mozilo Mem. 1 n.1.)  Dismissal is also warranted as to Mr. Mozilo for all the reasons discussed therein.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 3 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

In his moving brief, Mr. Mozilo demonstrated that there is absolutely no link between him and the alleged "title transfer" fraud that now forms the sole basis for the control person claim.  (Mozilo Mem. 5:14-6:7.)  The Complaints' allegations of title transfer fraud never mention Mr. Mozilo, and the allegations that do mention him never mention title transfer.  (*Id.*)  Mr. Mozilo further demonstrated that he is not alleged to have signed, authored, or even read the MBS Offering Documents at issue in this case, much less the alleged misrepresentations in those documents concerning transfer of title.  (*Id.*)  And finally, Mr. Mozilo demonstrated that the majority of the title transfer allegations attack purported misconduct (e.g., supposed "forgery" and "witness intimidation") that took place after the Complaints concede Mr. Mozilo had retired.  (*Id.*)[3]

**The Opposition refutes none of this**.  Instead, it cites irrelevant case law stating that the Ninth Circuit does not require a plaintiff to prove "culpable participation" in connection with a control person claim.  (Opp. 63:10-14.)  This is a straw man.  Mr. Mozilo's argument is not that he did not "culpably participate" in the title transfer fraud; it is that he had no connection at all to the sale of MBS – much less the "title transfer" representations in them – culpable or otherwise.  And Mr. Mozilo cited abundant authority, including from the Ninth Circuit and Central District, demonstrating that in such circumstances, a control person claim fails as a matter of law.  (Mozilo Mem. 4:11-5:13 (citing, *inter alia, Durham*, *Impac*, *Meram*, *Downey I*, *Downey II*, and *Gap Stores*).)  The Opposition does not even mention this authority, much less attempt to distinguish it.

---

[3] Mr. Mozilo cited authority holding that there can be no control person liability for conduct occurring after an officer has left his company.  (Mozilo Mem. 4:22-24 (citing *Brown*)); *see also Mass. Mut. Life Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-10414 MRP (MANx), 2012 WL 1322884, at *6 (C.D. Cal. Apr. 16, 2012) ("*MassMutual*") (dismissing anachronistic control person claim against Mr. Kurland).  Plaintiffs ignore this authority and common sense rule.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 4 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1    Indeed, the only case cited by Mr. Mozilo that the Opposition bothers to

2  mention is *Paracor Finance, Inc. v. General Electric Capital Corp.,* 96 F.3d 1151

3  (9th Cir. 1996).  Plaintiffs purport to distinguish *Paracor* on the asserted ground

4  that:  "there was no evidence [the CEO] participated in the preparation of the

5  offering materials."  (Opp. 63 n.70.)  This is not a distinction; it is a nail in

6  Plaintiffs' own coffin.  The Complaints do not assert – nor could they – that

7  Mr. Mozilo "participated in the preparation of the offering materials."  So by

8  Plaintiffs' own proffered standard, *Paracor* is on point.  *Paracor,* 96 F.3d at 1163

9  (finding no control as a matter of law where chairman of board "did not read the

10  Placement Memorandum himself" and did not "exercise[] direct or indirect control

11  over the debenture offering in any way").

12    As Mr. Mozilo's moving brief anticipated, the Opposition relies on this

13  Court's decision in *Maine State* as to Mr. Sambol.  (*See* Mozilo Mem. 5 n.6; Opp.

14  63 n.69.)  However, the Opposition provides no answer to Mr. Mozilo's

15  demonstration that *Maine State* has no application here, and certainly none to him.

16  First, Mr. Mozilo was not an officer or director of any of the subsidiaries that sold or

17  issued the MBS, and he did not sign, author or even read any of the MBS Offering

18  Documents.  Second, *Maine State* was an "abandoned underwriting" case, not a case

19  asserting the more narrow fraud at issue here (alleged fraud in transfer of title).  This

20  Court cannot plausibly infer that Mr. Mozilo controlled the subsidiaries in

21  connection with that asserted fraud.  *Allstate Ins. Co. v. Countrywide Fin. Corp.*, ---

22  F. Supp. 2d ---, 2012 WL 335730, at *5 (C.D. Cal. Feb. 2, 2012) (liability must

23  *plausibly* follow from allegations); *MassMutual*, 2012 WL 1322884, at *6 n.8

24  (same).  Mr. Mozilo noted all of this in his moving brief (Mozilo Mem. 5:14-6:7),

25  and the Opposition has no answer to it.[4]

26

27  _____

28    [4] Similarly, this Court's ruling in *Dexia* is inapposite because the "Individual Securities Act Defendants" (a defined term that did *not* include Mr. Mozilo) were high-ranking officials at the depositors, and *Dexia* had not been limited to alleged

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 5 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1    The other authority cited by the Opposition also fails to support, and in fact
2  undercuts, Plaintiffs' position.  In *Homestore,* the Central District rejected as
3  conclusory an allegation of supposed control that is identical to Plaintiffs' here and
4  found no control person liability as a matter of law.  *Compare In re Homestore.com,*
5  *Inc. Sec. Litig.*, 347 F. Supp. 2d 790, 809-10 (C.D. Cal. 2004) (rejecting bald
6  assertion that defendant "was involved in the day-to-day business of the company")
7  *with* (Opp. 63 n.70 ("Plaintiffs allege that Mozilo and Sambol were involved in the
8  day to day operation of Countrywide when the Certificates were issued.")).  And in
9  the other case law Plaintiffs cite, the alleged control persons held positions at the
10 primary violators and actually authored or signed the documents containing the
11 material misstatements or were actively involved in the securities sales at issue, or
12 both.[5]  None of this is present here with respect to Mr. Mozilo in the context of the
13 MBS Offering Documents (much less in the specific context of an alleged fraud
14 relating to title transfer representations in the sale of MBS).  Plaintiffs' bald
15 assertions of "control" as to Mr. Mozilo fail to state a claim.

16 **III.   NO JURISDICTION OVER THE OHIO CLAIMS**

17    Without a federal claim, the sole basis for asserting personal jurisdiction over
18 Mr. Mozilo fails in *Western & Southern.*  Likewise, all of the Ohio statutory claims
19 fail for lack of legislative jurisdiction.

---

23 "title fraud" allegations.  *Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, No. 2:11-
24 CV-07165 MRP (MANx) (Dkt. 202) (C.D. Cal. Jun. 1, 2012).

    [5] *See Nguyen v. Radient*, No. SA CV-11-0406 DOC (MLGx), 2011 U.S. Dist
25 LEXIS 124631, at *28 (C.D. Cal. Oct. 26, 2011) (defendants were the CEO and
CFO of the primary violator and "were involved in the drafting, producing,
26 reviewing and/or disseminating of the allegedly false and misleading statements");
*Howard v. Everex*, 228 F.3d 1057, 1065-66 (9th Cir. 2000) (defendant was the CEO
27 and Chairman of the primary violator and "had authority over the process of
preparing and releasing the financial statements" and "signed off on the statements
28 as correct").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 6 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

**A.**     **Western & Southern's Ohio Claims Fail For Lack Of Personal Jurisdiction**

Without a federal claim with nationwide service of process, Ohio lacks personal jurisdiction over Mr. Mozilo.  (Mozilo Mem. 7:8-8:16.)  Mr. Mozilo provided extensive authority demonstrating this is so.  In response, Western & Southern ignores all of it – including this Court's own Orders.  Instead, the Opposition advances three arguments, all of which this Court has already heard and rejected, repeatedly.

First, Western & Southern contends that Ohio RICO itself confers personal jurisdiction.  (Opp. 76:3-8.)  However, Ohio RICO cannot trump the United States Constitution, as this Court held when MassMutual made the same argument.  *MassMutual*, 2012 WL 1322884, at *7; *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977) ("two inquiries must be addressed: whether an applicable rule or statute potentially confers personal jurisdiction over the defendant; and whether assertion of such jurisdiction accords with constitutional principles of due process").

Next, Western & Southern argues that Due Process is satisfied here because Messrs. Mozilo and Sambol were supposedly "the masterminds behind a corrupt enterprise that purposefully reached into the state of Ohio to commit predicate acts." (Opp. 76:9-77:4 (citing Complaint ¶¶ 5, 305-32).)  But this Court rejected a nearly-identical contention in dismissing Mr. Mozilo for lack of personal jurisdiction in *MassMutual*, where the plaintiff similarly alleged that Mr. Mozilo "masterminded the strategy to grow market share."[6]  Indeed, Western & Southern relies on the very same cases this Court considered and rejected as inapposite in *MassMutual*.  (Opp. 76 n.83 (citing *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. 08-CV-4254 PJH,

---

[6] *Mass. Mut. Life Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-10414 MRP (MANx) (Dkt. 56), ¶ 562 (C.D. Cal. Nov. 30, 2011).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 7 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1   2009 WL 29905 (N.D. Cal. Jan. 5, 2009); *Openwave Sys., Inc. v. Fuld*, No. C 08-
2   5683 SI, 2009 WL 1622164 (N.D. Cal. Jun. 6, 2009)); *see MassMutual*, 2012 WL
3   1322884, at *9.  In so doing, Western & Southern simply ignores this Court's ruling
4   in *MassMutual* as well as the settled Ninth Circuit rule that personal jurisdiction
5   cannot be shown via "conspiracy theory."  *See, e.g., In re Dynamic Access Memory*,
6   No. C 02-1486 PJH, 2005 WL 2988715, at *8 (N.D. Cal. Nov. 7, 2005) (no personal
7   jurisdiction via "conspiracy theory"); *Z-Rock Commc'ns Corp. v. William A. Exline,
8   Inc.*, No C-03-02436 WHA, 2004 WL 1771569, at *19 (N.D. Cal. Aug. 6, 2004)
9   (conspiracy theory of personal jurisdiction "would undermine the need for
10  purposeful availment to a forum for specific jurisdiction"); *Chirila v. Conforte*, 47
11  Fed. Appx. 838, 842-43 (9th Cir. 2002) (doubting "the legitimacy of this conspiracy
12  theory of personal jurisdiction").

13          Finally, Western & Southern suggests that a recent Sixth Circuit case should
14  cause this Court to reconsider its prior personal jurisdiction ruling in this case.
15  (Opp. 77:14-78:11, 75:7-12 (citing *Schneider*).)  However, *Schneider*, like *j2
16  Global*, only found personal jurisdiction because the defendant personally directed
17  conduct at Ohio.  *Schneider v. Hardesty*, 669 F.3d 693, 703 (6th Cir. 2012) ("By
18  drafting and providing Hardesty with the letters for distribution, Nelson was the key
19  actor in directing the harm inflicted on the recipients."); *see id.* (Nelson knew "that
20  the letters [he wrote] were bound for an investor in Ohio").  By contrast, this Court
21  already has ruled that "[n]othing in the Western & Southern Amended Complaint
22  indicates that the Certificates were particularly aimed at Ohio or that any of these
23  defendants helped to expressly aim the Certificates at Ohio."  *Western & Southern*,
24  2012 WL 1097244, at *13.  Consequently, *Schneider* changes nothing.

25          There is no reason for this Court to deviate from its prior, sound rulings on
26  personal jurisdiction.  Therefore, Western & Southern's Complaint against
27  Mr. Mozilo fails in its entirety.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

### B.   The Ohio Claims Fail For Lack Of Legislative Jurisdiction

Mr. Mozilo's opening brief cited extensive Circuit authority – including Ninth Circuit authority – demonstrating that when a state statute is being applied to an out-of-state defendant, the proper Due Process inquiry parallels the "minimum contacts" analysis performed in connection with personal jurisdiction.  (Mozilo Mem. 19:1-21:11.)  Plaintiffs ignore literally all of this authority.

Instead, Plaintiffs employ sophisms.  First, they cite law noting that legislative jurisdiction is "broader" than personal jurisdiction.  No doubt it is.  But only in that legislative jurisdiction has more applications than personal jurisdiction.  For instance, the Ninth Circuit has identified three different categories of legislative jurisdiction:  regulation of out-of-state *defendants* on the basis of incidental in-state contacts (which is what is at issue here); regulation of the *substance* of out-of-state transactions; and taxation of in-state entities arising from foreign transactions.  *Gerling Global Reinsurance Corp. of Am. v. Low*, 296 F.3d 832, 839-44 (9th Cir. 2002), *judgment reversed on other grounds sub nom.*, *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003).

Here, the question is whether an Ohio statute can regulate the conduct of an out-of-state defendant – that is, whether Plaintiffs can impose Ohio statutory rules over Mr. Mozilo, a California resident.  In this category of legislative jurisdiction, the Ninth Circuit counsels that the legislative jurisdiction analysis "parallels the analysis of whether the state would have personal jurisdiction over a party in the context of a judicial proceeding."  *Id.*  Other Circuits hold the exact same thing.  (*See* Mozilo Mem. 19:12-20:16 (citing Fourth and Eleventh Circuit decisions).)  Plaintiffs address *none* of this authority.

Rather, Plaintiffs purport to defend a position that is not even in dispute.  They claim that "it is settled law that Ohio can enact statutes regulating securities sales with a sufficient nexus to Ohio."  (Opp. 73:6-7.)  Yes, but that does not mean

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 9 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1   Ohio can apply those laws against defendants with no minimum contacts with Ohio.

2   Plaintiffs then proclaim:  "It is also settled law that Ohio's laws may be applied to

3   securities purchases made in Ohio."  (*Id.* at 73:7-8.)  No one contends otherwise, but

4   that does not mean Ohio can apply its securities laws to defendants wherever they

5   are throughout the entire world even if they lack minimum contacts with Ohio.

6          Indeed, the case law Plaintiffs cite actually demonstrates their own logical

7   fallacies.  *Martin v. Steubner*, for instance, only affirmed application of Ohio's blue

8   sky law to a defendant because that defendant had minimum contacts with Ohio.

9   652 F.2d 652, 653 (6th Cir. 1981) (noting that "the letter from the defendant

10  Steubner was addressed to plaintiff in Ohio" and that this meant "there were

11  sufficient contacts with the state of Ohio"); *see also Quill Corp. v. North Dakota*,

12  504 U.S. 298, 319-20 (1992) (applying minimum contacts analysis to determine

13  whether North Dakota statute could constitutionally be applied to out-of-state mail-

14  order vendors).  And *Martin* itself relied on *Travelers*, in which the Supreme Court

15  made the determination of whether Virginia's blue sky law could be applied to a

16  defendant *via a minimum contacts analysis* identical to that employed in the context

17  of personal jurisdiction.  *Travelers Health Ass'n v. Comm'n of Va.*, 339 U.S. 643,

18  648-49 (1950) (applying *International Shoe* minimum contacts analysis).[7]

19         Consequently, once Plaintiffs' attempts at misdirection are cast aside, the

20  proper legislative jurisdiction inquiry for this case is clear:  does Mr. Mozilo have

21  sufficient minimum contacts with Ohio for Ohio's statutory law to regulate his out-

22  of-state conduct?  This Court already has answered that question, no, both in this

23

24         [7] Plaintiffs' other cases are inapposite, because they address whether a state
    has legislative jurisdiction to regulate the substance of an interstate *transaction*, not
25  whether it can regulate as to an out-of-state *defendant*.  In other words, they all fall
    under the wrong category identified by *Gerling.  See Barnebey v. E.F. Hutton &*
26  *Co.*, 715 F. Supp. 1512, 1536 (M.D. Fla. 1989); *Klawans v. E.F. Hutton & Co.*, No.
    IP 83-680-C, 1989 U.S. Dist. LEXIS 18194, at *7 (S.D. Ind. Feb. 15, 1989); *A.S.*
27  *Goldmen & Co. v. N.J. Bureau of Sec.*, 163 F.3d 780, 789 (3d Cir. 1999);
    *Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959, 968 (E.D. Wisc.
28  1998).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 10 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1  case and in *MassMutual.  Western & Southern*, 2012 WL 1097244, at *13;

2  *MassMutual*, 2012 WL 1322884, at *9.[8]  That ends the analysis.

3  ## IV.   THE OHIO CLAIMS FAIL ON THE MERITS

4         This Court need not address the merits of any of Plaintiffs' Ohio claims, as all

5  of them fail for lack of jurisdiction.  Nevertheless, as demonstrated below, the

6  claims also fail as a matter of law on the merits.

7         ### A.   The Ohio Securities Act Claim

8         Each and every relevant section of the OSA requires a defendant to have

9  participated *in the sale* of the securities at issue in the case.  As to Mr. Mozilo, there

10  are no facts pled that show participation in the sale of MBS, and that ends the

11  inquiry.  Not satisfied with pursuing those who sold and participated in the sales of

12  MBS, Plaintiffs distort the law and their own allegations.  They invoke grand

13  allusions of Mr. Mozilo supposedly "masterminding" or "orchestrating" the MBS

14  sales or obliquely refer to him supposedly "contribut[ing] to the existence of false

15  statements contained in the prospectus."  (*See, e.g.,* Opp. 56:5-8.)  However, this is

16  just word play.  Just like other claims this Court repeatedly has dismissed as to

17  Mr. Mozilo for failing to link him to fraud *in the sale of MBS*, the OSA claim

18  against Mr. Mozilo fails as a matter of law.[9]

19

20

---

21         [8] Plaintiffs suggest that this Court's ruling on minimum contacts does not
apply to Mr. Mozilo because he did not sign the registration statements.  (Opp. 74
22  n.81.)  But if anything, the fact that Mr. Mozilo did not sign the registration
statements makes this Court's minimum contacts ruling with respect to the signatory
23  Defendants even stronger as to non-signatory Mr. Mozilo.

24         [9] *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1189
(C.D. Cal. 2011) ("participation in, the underwriting of risky loans" cannot
25  "establish knowledge of or participation in the alleged fraud . . . in the Offering
Documents"); *Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, No. 2:11-CV-07165-
26  MRP (MANx), 2012 WL 1798997, at *7 (C.D. Cal. Feb. 17, 2012) (same); *Thrivent
Fin. for Lutherans v. Countrywide Fin. Corp.*, No. 2:1 I-CV-07154-MRP (MANx),
27  2012 WL 1799028, at *6 (C.D. Cal. Feb. 17, 2012) (same).  Indeed, the result is
even clearer here, as only "title transfer" fraud remains, and as demonstrated above,
28  there is no link at all between Mr. Mozilo and the alleged "title transfer" fraud.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 11 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

### 1.   OSA § 1707.41(A)

Section 1707.41(A) applies to a Defendant who "offers any security for sale, or receives the profits accruing from such sale."  Ohio Rev. Code § 1707.41(A); (*see Mozilo* Mem. 9:13-17).  Mr. Mozilo did neither, and the Opposition does not argue otherwise.  Instead, the Opposition makes passing reference to Section 1707.41(B), but this tack fails because Section 1707.41(B) was not pled in the Complaints. (*Compare* Opp. 59:22-60:4 *with* Complaints ¶¶ 399-403); *Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[A] court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis added).[10]

In any event, Section 1707.41(B) is irrelevant to Mr. Mozilo.  It only applies to directors *of a primary violator*.  Here, Mr. Mozilo is only alleged to be a director of parent company Countrywide Financial Corporation ("CFC"), and CFC is not alleged to have sold securities or received profits from their sale.  (Complaints ¶¶ 28, 291-95 (alleging that other entities, not CFC received profits from MBS sales).)  Indeed, CFC as a matter of law could not be held liable as a primary violator, as Subsection (A) only applies to entities that received compensation *contingent* on a securities sale.  *See Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Services, LLC*, 813 F. Supp. 2d 871, 878 (S.D. Ohio 2011) ("[T]he language of the statute plainly requires that the profits accrue from the sale of securities").[11]  By its express terms, OSA Section 1707.41(A) does not apply to Mr. Mozilo.

---

[10]  The Opposition concedes this elsewhere, leaving one to wonder why the Section 1707.41(B) argument remains in Plaintiffs' brief.  (*See* Opp. 39:13-40:19 (listing OSA sections the Complaint invokes, and *not* including Section 1707.41(B)).)

[11]  Plaintiffs claim that *Ohio Police* does not apply because Defendants supposedly "brought the Certificates into existence solely to profit from them." (Opp. 59 n.64.)  Plaintiffs cite no authority treating "brought the Certificates into existence" as the proper test, nor do they cite a single factual allegation in the Complaints showing that CFC "brought the Certificates into existence."

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 12 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

2. OSA § 1707.43

Section 1707.43 applies to Defendants who "mak[e]" a sale or who have "participated in or aided the seller in any way *in making such sale*." Ohio Rev. Code § 1707.43 (emphasis added). Because Mr. Mozilo did neither, Plaintiffs resort to their favorite proffered cure-all, claiming that Mr. Mozilo "orchestrated the fraudulent RMBS scheme." (Opp. 57:3-4.) However, the statute does not speak of "orchestration," it speaks of participating in making a sale. If "orchestration" sufficed, then the statute's express limitation to participation in the sale would be rendered meaningless by any plaintiff willing to pen an "orchestration" allegation into a complaint.

Mr. Mozilo cited extensive case law precluding Section 1707.43 claims that were not properly tied to the sale of securities. (Mozilo Mem. 10:4-11:10 (citing, *inter alia, Braun, Bell,* and *Strunk*).) In response, Plaintiffs mischaracterize the cases, or else just miss their point:

- Plaintiffs contend that the misrepresentations in *Braun* "had nothing to do with the securities sold." (Opp. 58 n.63.) This is just wrong. The plaintiffs in *Braun* alleged that but-for defendants' misrepresentations about the company, they would not have bought the company's stock. *Braun v. N. Ohio Bank*, 430 F. Supp. 367, 370 (N.D. Ohio 1977).

- Plaintiffs contend that *Bell* is "inapposite" because the court concluded the defendants acted with reasonable diligence. (Opp. 58 n.63.) In fact, the *Bell* Court denied liability because – like Mr. Mozilo here – the director defendants in that case did not participate in making the challenged sales. *In re Bell & Beckwith*, 89 B.R. 632, 646 (N.D. Ohio 1988) ("The Trustee has not alleged that these Defendants did anything which would be considered 'participation.'") (quoting Section 1707.43).

- Plaintiffs purport to distinguish *Strunk* on the ground that "here, the Defendants were either sellers or 'contributed to the existence of false statements contained in the' Offering Materials." (Opp. 58 n.62 (citing *Strunk v. Settles*, No. 827, 1980 WL 353191, at *5 (Ohio Ct. App. Feb. 13, 1980)).) However, neither the statute, nor *Strunk,* nor any other case law supports Section 1707.43 liability on the basis of "contributing to the existence of false statements" – whatever that means. More importantly, there are no facts pled in the Complaints showing Mr. Mozilo contributed anything to the Offering Documents, much less false statements.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 13 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

Plaintiffs' purported distinction of Mr. Mozilo's authority is unavailing, as is Plaintiffs' attempt to read "in making such sale" out of the statute.  In fact, Plaintiffs' authority actually demonstrates that when the statute says participated "in making such sale," that is exactly what the statute means.[12]  Because Mr. Mozilo does not fit within the express terms of Section 1707.43, this claim fails as to him.

### 3.   OSA § 1707.44(B)(4), (J), and (G)

Subsections (B)(4) and (J) are both tied to misrepresentations made in offering documents and in connection with the sale of securities.  (Mozilo Mem. 9:18-22.)  Unable to allege that Mr. Mozilo made any misstatement in the Offering Documents or in connection with the sale of the MBS, Plaintiffs again contend that Mr. Mozilo "caused" misstatements to be made by "orchestrat[ing] the fraudulent RMBS scheme."  (Opp. 61:1-3 (citing Complaints ¶¶ 5, 305-32).)  But none of the cited Complaint paragraphs suggest that Mr. Mozilo had anything to do with statements in the Offering Documents – much less that he caused misstatements to be made "knowingly" or "with purpose to deceive" as required under Subsections (B)(4) and (J).  Ohio Rev. Code § 1707.44(B)(4), (J).[13]

---

[12] *See Perkowski v. Megas Corp.*, 563 N.E.2d 378, 379 (Ohio Ct. App. 1990) (the defendant promoted the securities, endorsed them in a pamphlet, and then served as a conduit for information by listing his name and phone number on the pamphlet); *Hild v. Woodcrest Ass'n*, 391 N.E.2d 1047, 1056-58 (Ohio Comm. Pl. 1977) (extending liability to defendant who prepared the placement memorandum to attract investors but rejecting liability as to the defendant who did not); *Miller v. Griffith*, 196 N.E.2d 154, 157 (Ohio Comm. Pl. 1961) (the defendant "signed the purported certificate for the ten shares of stock"); *In re Nat'l Century Fin. Enters.*, 580 F. Supp. 2d 630, 649-50 (S.D. Ohio 2008) ("[T]he complaint adequately alleges that Moody's ratings of the NPF XII notes helped induce Lloyds to purchase the notes.").

[13] (*See also* CW Reply Section V.A.)  And as for Subsection (G), the Opposition virtually ignores it.  It is no wonder.  On its face, it cannot possibly apply to Mr. Mozilo.  Ohio Rev. Code § 1707.44(G) ("No person *in purchasing or selling securities* shall knowingly engage in any act or practice that is, in this chapter, declared illegal, defined as fraudulent, or prohibited.") (emphasis added).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 14 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

## B.    The Ohio RICO Claim

Plaintiffs resort to this theory only after seeing that they were too late with ordinary securities fraud claims.  But this effort to convert a garden variety securities fraud suit into a RICO case is meritless, after an intensive Government investigation concluded there were no grounds to press any criminal charges. Indeed, Plaintiffs' Complaints themselves – while long on pejorative-laced but unsupported accusations as to Mr. Mozilo – fail for lack of any specific factual allegations of actual improper conduct by him.

It is well settled that to state an Ohio RICO claim, Plaintiffs must allege with specificity that: (i) Mr. Mozilo committed two or more predicate acts; (ii) such acts constituted a pattern of corrupt activity; and (iii) Mr. Mozilo conducted or participated in an enterprise through the pattern of corrupt activity.  (Mozilo Mem. 11:14-23 (citing *Universal Coach*).)  The Opposition reads these elements out of the statute, claiming in essence that Plaintiffs' inclusion of a list of supposed predicate acts in the Complaint is enough to satisfy all three requirements.  The statute and law interpreting it say otherwise.

### 1.    Two Predicate Acts

Mr. Mozilo cited case law expressly holding that, in order for a defendant to be liable under Ohio RICO, *that defendant* must have committed two or more predicate acts.  (Mozilo Mem. 11:25-12:1 (citing *Universal Tube* and *Herakovic*).) The Opposition ignores this authority.  Plaintiffs do not even try to contend that Mr. Mozilo personally committed any of the supposed acts of "forgery," "witness intimidation," and the other enumerated predicate acts in the Complaint. Mr. Mozilo had nothing to do with any of these alleged predicate acts and indeed was retired from Countrywide at the time that the vast majority of them supposedly occurred.[14]

_____

[14] Plaintiffs half-heartedly argue that Mr. Mozilo committed a predicate act because he supposedly "caused numerous misrepresentations" to be made

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 15 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1    Plaintiffs are thus forced to argue that a defendant need not "personally

2 commit" two predicate acts "so long as [the defendant] participated in the conduct

3 of the enterprise." (Opp. 6:21-7:2.) This bootstrapping fails. The "enterprise" is

4 one element; the participation in the pattern of racketeering activity is another. "To

5 rule otherwise, would make the [Ohio RICO] law a conspiracy law with no defining

6 lines[.]" *Herakovic v. Catholic Diocese of Cleveland*, No. 85467, 2005 WL

7 3007145, at *4 (Ohio Ct. App. Nov. 10, 2005).

8    Plaintiffs also try to recast their allegations to fit within a narrow line of cases

9 that uphold claims that involve conspiracies to violate Ohio RICO. (Opp. 7 n.7; *id.*

10 25-26 n.30 ("Moreover, a party may be liable for conspiring to violate [Ohio RICO]

11 regardless of whether he committed any of the predicate acts.").)[15] However, this

12 tactic fails for at least two reasons. First, the Complaints do not allege any

13 conspiracy to violate Ohio RICO; instead, they allege violations of Ohio RICO.

14 (*See* Complaints ¶¶ 418-26 (no reference to the term "conspiracy" in Ohio RICO

15 count).) The Opposition cannot amend Plaintiffs' Complaints. *Cal. Dept. of Corr.*,

16

17

18

19 concerning underwriting guidelines and the transfer of title. (Opp. 25 n.30.)
However, there is no factual allegation in the Complaint to support this contention,
nor any law holding that it constitutes an enumerated offense in the Ohio RICO

20 statute. Moreover, even assuming "causing numerous misrepresentations" were a
predicate act, it would by definition involve alleged fraud in the sale of securities

21 and thus still not satisfy the statutory requirements. Ohio Rev. Code § 2923.34(A)
(for civil actions, "the pattern of corrupt activity alleged by an injured person . . .

22 shall include *at least one incident other than* . . . any other offense involving fraud
in the sale of securities").

23

24    [15] *See Unencumbered Assets Trust v. JP Morgan Chase Bank*, 604 F. Supp.
2d 1128, 1157 (S.D. Ohio 2009) ("Courts have therefore held that *when liability is

25 premised upon a conspiracy*, the plaintiff is not required to prove that each
defendant committed two or more predicate acts"); *Dowling v. Select Portfolio

26 Servicing, Inc.*, No. 2:05-cv-049, 2006 WL 571895, at *7 (S.D. Ohio Mar. 7, 2006)
(the fact that defendants "did not personally commit predicate acts" did not preclude

27 liability for *conspiracy to violate Ohio RICO*); *State v. Habash*, No. 17071, 1996
WL 37747, at *6 (Ohio Ct. App. Jan. 31, 1996) (*imposing conspiracy liability* under

28 Ohio RICO where "actual acts of forgery and theft were committed by [the head of
the enterprise] and not defendant").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 16 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1   151 F.3d at 1197 n.1; *Nguyen v. JP Morgan Chase Bank*, No. SACV 11–01908

2   DOC (ANx), 2012 WL 294936, at *3 (C.D. Cal. Feb. 1, 2012).

3          Second, even if the Complaints were interpreted to include a conspiracy to

4   violate Ohio RICO, Plaintiffs' own authority makes clear that Plaintiffs still have to

5   properly allege a conspiracy.  *Dowling*, 2006 WL 571895, at *5 ("[A] defendant

6   may be held liable for a conspiracy to violate § 1962(c) if he knowingly agrees to

7   facilitate a scheme which includes the operation or management of a RICO

8   enterprise."); *Unencumbered Assets Trust*, 604 F. Supp. 2d at 1158 ("This is in

9   keeping with federal RICO law, where courts have held that co-conspirators are

10  liable for the acts of the enterprise: The partners in the criminal plan must agree to

11  pursue the same criminal objective[.]").[16] As discussed in more detail, *infra,* there is

12  no conspiracy properly alleged as to Mr. Mozilo, because there are no adequate

13  allegations of his knowledge or any agreement to which he was a party.  Therefore,

14  Plaintiffs' attempt to manufacture a conspiracy to violate Ohio RICO claim via their

15  Opposition fails as to Mr. Mozilo.

16              2.    Pattern

17          Mr. Mozilo cited extensive authority that requires Plaintiffs to allege

18  predicate acts other than securities fraud to meet Ohio RICO's "pattern"

19  requirement.  (Mozilo Mem. 12:15-23); Ohio Rev. Code § 2923.34(A).  Plaintiffs'

20  Opposition ignores all of this authority, instead claiming that "[t]he Complaints set

21  out at least six categories of predicate acts other than 'offense[s] involving fraud in

22  the sale of securities.'"  (Opp. 22:16-17.)  However, having already represented to

23

24          [16] Federal RICO law is in accord, and Plaintiffs concede that Ohio courts
    "look to cases interpreting [federal] RICO" when interpreting Ohio RICO (Opp.
25  8:17-18); *see also Arch Ins. Co. v. Allegiant Prof'l Bus. Services, Inc.*, No. CV 11–
    1675 CAS (PJWx), 2012 WL 1400302, at *5 (C.D. Cal. Apr. 23, 2012) ("At the
26  pleading stage, a plaintiff claiming a RICO conspiracy must allege that the
    defendant knew about and agreed to facilitate conduct that violated RICO."); *Pik-
27  Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 890 n.10 (6th Cir. 2000) (RICO
    conspiracy claim must include "allegations detailing an agreement to jointly
28  undertake specific actions illegalized by RICO").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099                                              - 17 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1  the Court that the alleged acts of perjury and forgery, among others, all fed into the

2  "circular loop" of securities fraud, Plaintiffs cannot now tell the Court that these acts

3  are, in fact, distinct.  (Feb. 13, 2012 Hrg. Tr. 52:24-55:22.)

4          3.    Enterprise

5          The Opposition all but concedes that Plaintiffs' proffered "enterprise" has no

6  organization, contains no ascertainable structure, and is supported by no agreement

7  that Plaintiffs can identify, much less an agreement between Mr. Mozilo and the

8  other alleged (and mostly unidentified) co-conspirators.  Instead, the supposed

9  "enterprise" is a stew of persons and entities comprising virtually the entire

10 mortgage lending industry.  And the "pattern" of racketeering activity that Plaintiffs'

11 argue proves the existence of the "enterprise" is comprised of so-called predicate

12 acts that are not tied to Mr. Mozilo and that, for the most part, post-date his

13 retirement from Countrywide.  (Mozilo Mem. 13:10-15:14.)

14         This grossly overbroad state RICO claim cannot be upheld against any

15 defendant, much less Mr. Mozilo.  *See, e.g., First Nationwide Bank v. Gelt Funding,*

16 *Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994)

17 ("Conclusory allegations that disparate parties were associated in fact by virtue of

18 their involvement in the real estate industry in the 1980s are insufficient to sustain a

19 RICO claim, absent allegations as to how the members were associated together in

20 an 'enterprise.'  Nor does common sense support the existence of such an

21 'enterprise.'"); *cf. Chassen v. Fid. Nat. Fin., Inc.*, No. 09-291 (PGS), 2009 WL

22 4508581, at *10 (D.N.J. Nov. 16, 2009) (rejecting overbroad RICO enterprise

23 "involving the entire title insurance industry," because "[f]rom common experience,

24 lawyers and title agents entering into a committed patter[n] of activities is very

25 doubtful.  It's like herding cats.").

26         Mr. Mozilo (and other Defendants) cited extensive authority rejecting the

27 very type of abusive enterprise allegations that Plaintiffs have employed in this case.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 18 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1 (Mozilo Mem. 13:22-14:19; CW Mem. 50:9-54:21.)  In response, Plaintiffs claim

2 that the Supreme Court's decision in *Boyle v. United States*, 556 U.S. 938 (2009)

3 nullified existing law and mandates upholding Plaintiffs' overbroad enterprise

4 theory.  *Boyle* does nothing of the sort.[17]

5        Plaintiffs' contention that Mr. Mozilo's cases "are no longer good law" post-

6 *Boyle* is demonstrably false.  Indeed, ***Plaintiffs' own cited case law cites and relies***

7 ***upon the very authority Mr. Mozilo cited***.  *See State v. Franklin*, Nos. 24011,

8 24012, 2011 WL 6920727, at *17 (Ohio Ct. App. Dec. 30, 2011) (citing *Herakovic*

9 and *Morrow*); *see also CSAHA/UHHS-Canton, Inc. v. Aultman Health Foundation*,

10 No. 2010 CA00303, 2012 WL 750972, at *8 (Ohio Ct. App. Mar. 5, 2012) (citing

11 *Morrow*).[18]

12        As the Countrywide Defendants' brief demonstrates, *Boyle* simply reiterated

13 what the Supreme Court had already held in *Turkette* – namely that in *some*

14 *circumstances*, the nature of the alleged predicate acts lend themselves to a plausible

15 inference of an enterprise.  *Boyle*, 556 U.S. at 947.  *Boyle*, a bank robber case, and

16 the cases that Plaintiffs cite (*Dodson*, *Baker*, *Franklin* – all drug trafficking cases),

17 involve fact patterns that lend themselves to such a plausible inference.  But as

18 *Boyle* itself noted, there are many instances in which an inference of an enterprise

19 from alleged predicate acts would not be plausible or appropriate:

20        *It is easy to envision situations in which proof that individuals engaged in a pattern of racketeering activity would not establish the existence of an enterprise.*  For example, suppose that several
21        individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates – for example, bribery or
22        extortion.  Proof of these patterns would not be enough to show that
23        the individuals were members of an enterprise.

24 _____

25 [17] Mr. Mozilo joins in but does not repeat all of the arguments set forth in the Countrywide Defendants' reply memorandum, but he does address herein several of the arguments in the Opposition that were addressed to Mr. Mozilo's moving brief.

26 [18] Although Plaintiffs pretend as if *Boyle* was some watershed change in

27 RICO law, Plaintiffs' own authority states otherwise.  *McNulty v. Reddy Ice Holdings, Inc.*, No. 08-CV-13178, 2009 WL 2168231, at *3 (E.D. Mich. Jul. 17,

28 2009) ("*Boyle* does not represent a watershed change in controlling law").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099                - 19 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1   *Boyle*, 556 at 947 n.4 (emphasis added).

2        This is exactly the type of case that *Boyle* "envisioned."  Plaintiffs' proffer a

3   supposed crime-spree of epic and sprawling proportions, encompassing "predicate

4   acts" of forgery, bribery, bank fraud, insurance fraud, witness retaliation, and

5   tampering with evidence and records, to name but a few.  And the perpetrators of

6   these supposed predicate acts are even more sprawling and unconnected.  They

7   supposedly include, but are not limited to:  Countrywide, Credit Suisse, Deutsche

8   Bank, other unidentified "Wall Street financial institutions," correspondent lenders,

9   foreclosure law firms and their employees, the Bank of New York, private mortgage

10  insurers and "unnamed co-conspirators."  There is simply no way to draw the

11  *plausible* inference from these scattershot allegations that there was any "enterprise"

12  here, much less an "enterprise" that included Mr. Mozilo.  *Cf. Allstate II*, 2012 WL

13  335730, at *5 (plaintiff must plead facts "which permit a 'reasonable inference' of

14  liability") (citing *Iqbal*).[19]  Indeed, because Mr. Mozilo committed no predicate acts

15  at all, even assuming any plausible inference could be drawn from this amalgam of

16  alleged predicate acts, it would not be one that properly included Mr. Mozilo in the

17  alleged "enterprise."

18

19  ───────────────

    [19] As for Plaintiffs' cited case law, it presents the opposite situation from this

20  case – factual allegations of coordinated behavior evidencing a real enterprise.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (BestBuy and

21  Microsoft entered into a "cross-marketing contract"); *Aultman*, 2012 WL 750972, at *9 (Aultman held "regular formal gatherings – annual retreats at resorts for which

22  Aultman paid"); *Lopardo v. Lehman Bros., Inc.*, 548 F. Supp. 2d 450, 470 (N.D. Ohio 2008) (entities were "coordinated as a unit"); *Eva Midwest Nat'l Mortg. Bank,*

23  *Inc.*, 143 F. Supp. 2d 862, 876 (N.D. Ohio 2001) (complaint alleged "activity which demonstrates ongoing coordinated behavior among Defendants").  Plaintiffs also

24  cite *In re Ins. Brokerage Antitrust Litig.*, but that court actually dismissed an "enterprise" as "fatally defective," holding that "plaintiffs' factual allegations [did]

25  not plausibly imply anything more than parallel conduct by the insurers."  618 F.3d 300, 374 (3d Cir. 2010).  Finally, Plaintiffs' Countrywide RICO cases are irrelevant,

26  because they rely on overruled pre-*Twombly* pleading standards.  *In re Countrywide Fin. Corp. Mortg. Marketing and Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1211

27  (S.D. Cal. 2009) (applying pre-*Twombly* "no set of facts" standard); *Johnson v. KB Home*, 720 F. Supp. 2d 1109, 1120-21 (D. Ariz. 2010) (adopting *Countrywide Sales*

28  *Practices Litig.* ruling wholesale without independent analysis).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099                                              - 20 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

### C.    The Civil Conspiracy Claim

The civil conspiracy claim fails as a matter of law because, as demonstrated above and in the other Defendants' memoranda, there is no underlying actionable tort to support the conspiracy claim.  *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) ("An underlying unlawful act is required before a civil conspiracy claim can succeed.").  But even otherwise, the civil conspiracy claim fails because Plaintiffs have not – and indeed, cannot – plead the required facts of an agreement between Mr. Mozilo and the alleged title transfer conspiracy participants.

To state a claim for civil conspiracy, Plaintiffs must allege specific facts showing that Mr. Mozilo agreed to participate in the purported title transfer conspiracy.  *Collins v. Nat'l City Bank*, No. 19884, 2003 WL 22971874, *5 (Ohio Ct. App. Dec. 19, 2003) ("A claim of civil conspiracy rests upon an *actual agreement* to participate in a wrongful activity.") (emphasis added); *Kerr v. Hurd*, 694 F. Supp. 2d 817, 832 (S.D. Ohio 2010) (same).  The Opposition does not contend otherwise.  Instead, Plaintiffs merely assert that an agreement may be "inferred" from allegations that the Defendants "worked in concert."  (Opp. 67:13-15.)  Plaintiffs then ask this Court to infer the existence of a conspiratorial agreement between Mr. Mozilo and hordes of supposed co-conspirators because he supposedly "masterminded Countrywide's fraudulent scheme."  (Opp. 67:15-19.)  This bald conclusion plainly fails to meet the heightened pleading requirements for civil conspiracy.  *Avery v. Rossford, Ohio Transp. Improvement Dist.*, 762 N.E.2d 388, 395 (Ohio Ct. App. 2001) ("The conspiracy claim must be pled with some degree of specificity, and vague or conclusory allegations which are unsupported by material facts will not be sufficient to state a claim.").  Moreover, it ignores the fact that the supposed conspiracy here includes parties far beyond Countrywide, including for example Credit Suisse, Deutsche Bank, and United Guaranty Residential Insurance.  Mr. Mozilo is not alleged to have "masterminded" these

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 21 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1   entities, nor to have agreed to do anything with them, much less commit fraud in the

2   sale of MBS by issuing allegedly false title representations.[20]

3          Finally, Mr. Mozilo's moving brief cited authority holding that Ohio civil

4   conspiracy law requires proof that the defendant had *knowledge* of the fraud alleged

5   – here, title fraud.  (Mozilo Mem. 17:20-18:16 (citing *Pumphrey*); *id.* 22:14-23:2.)[21]

6   Plaintiffs ignore this authority and point to no factual allegations showing that

7   Mr. Mozilo knew anything about the alleged fraud in the sale of MBS (much less

8   title fraud in the sale of MBS).  Moreover, Plaintiffs fail to address the fact that

9   Ohio's standard for civil conspiracy is even more stringent than the standard for

10  aiding and abetting liability.  (*See* Mozilo Mem. 18:13-16 (citing *Metz*) –

11  unaddressed by the Opposition.)  Given this Court's repeated rulings rejecting

12  aiding and abetting liability as to Mr. Mozilo in connection with alleged fraud in the

13  sale of MBS,[22] the result is even clearer here where the supposed MBS fraud is

14  limited to "title" fraud and where the state law at issue imposes an even higher

15  standard for civil conspiracy.

16

17

18

19  [20] The civil conspiracy claim fails even if Plaintiffs are heard to allege a
20  narrower conspiracy among Countrywide entities.  Plaintiffs point to no facts
    showing an agreement even between Mr. Mozilo and Countrywide.  Moreover, in
21  his moving brief, Mr. Mozilo cited case law expressly holding that a corporate
    officer as a matter of law cannot conspire with his or her company.  (Mozilo Mem.
22  16 n.15 (citing *Scanlon* and *Kerr*).)  Plaintiffs do not dispute this. (Opp. 64:13-14
    ("Indeed, [Defendants] cite only two cases applying Ohio civil conspiracy law, and
23  those two cases merely hold a corporation cannot form a civil conspiracy with its
    officers.").)  Consequently, even if the Complaint did allege facts showing an
24  agreement between Mr. Mozilo and Countrywide, the conspiracy claim would fail
    as a matter of law.

25  [21] *Western & Southern*, 2012 WL 1097244, at *12 (dismissing common law
    claims "except as to transfer of title allegations").

26  [22] *Allstate I*, 824 F. Supp. 2d at 1189 ("participation in, the underwriting of
27  risky loans" cannot "establish knowledge of or participation in the alleged fraud . . .
    in the Offering Documents"); *Dexia*, 2012 WL 1798997, at *7 (same); *Thrivent*,
28  2012 WL 1799028, at *6 (same).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099

- 22 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)

1   **V.      CONCLUSION**

2          For all of the foregoing reasons, and for the reasons stated in Mr. Mozilo's

3   opening memorandum and the other Defendants' opening and reply memoranda,

4   Mr. Mozilo respectfully requests that the Court dismiss the Complaints against him

5   with prejudice.

6

7   Dated:  June 4, 2012                      Respectfully submitted,

8                                             IRELL & MANELLA LLP

9

10                                            By:_____/s/ David Siegel_____

11                                               David Siegel
                                                 Attorneys for Defendant
12                                               Angelo Mozilo

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2653099                                    - 23 -

DEFENDANT ANGELO MOZILO'S REPLY MEM. ISO
MOT. TO DISMISS PLAINTIFFS' COMPL.
MDL No. 11-ML-02265-MRP (MANx)