LYSAGHT LAW GROUP LLP
Brian C. Lysaght (Bar. No. 61965)
blysaght@lysaghtlegal.com
233 Wilshire Blvd Suite 700
Los Angeles, CA 90025
Telephone: (310) 566-8166
(Additional counsel listed below)
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY et al., <br><br> Plaintiffs <br><br> - v - <br><br> COUNTRYWIDE FINANCIAL CORPORATION et al., <br><br> Defendants. | Case No. 2:11-cv-07166 <br><br> Hon. Mariana R. Pfaelzer <br> Date: November 5, 2012 <br> Time: 11:00 a.m. <br> Courtroom: 12 |
| NATIONAL INTEGRITY LIFE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> - v - <br><br> COUNTRYWIDE FINANCIAL CORPORATION et al., <br><br> Defendants. | Case No. 2:11-cv-09889 |

**JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY, ENTRY OF JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT ...................................................................................... 3

I.   THE SIXTH CIRCUIT'S RECENT *OUWINGA* DECISION DEMONSTRATES THAT PLAINTIFFS' ENTERPRISE ALLEGATIONS ARE SUFFICIENT ...................................... 3

II.  THE RECENT *NECA* DECISION DEMONSTRATES PLAINTIFFS' SECURITIES ACT CLAIMS AND WESTERN & SOUTHERN'S OSA CLAIMS WERE TOLLED ................................... 8

    A.   Plaintiffs' Securities Act Claims Are Tolled Because The *Luther* and *Maine State* Plaintiffs Had Standing ...................... 11

    B.   Western & Southern's OSA Claims Are Tolled ............................... 12

III. THIS COURT SHOULD RECONSIDER ITS PRIOR RULING DISMISSING PLAINTIFFS' TRANSFER OF TITLE CLAIMS ............. 14

    A.   A False Promise to Perform Is Actionable Under Ohio Law .......... 14

    B.   The Court Overlooked Multiple Alleged Misrepresentations ......... 18

    C.   The Court Overlooked Plaintiffs' Omission Based Claims ............. 20

    D.   The Court Misread the Requirements of O.R.C. § 1707.44(G) ........ 21

IV.  LEAVE TO AMEND IS PROPER HERE ................................................... 23

V.   ALTERNATIVELY, THIS COURT SHOULD ENTER JUDGMENT IN THE WESTERN & SOUTHERN ACTION ................... 24

CONCLUSION .................................................................................... 25

i

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY ENTRY OF JUDGMENT

# TABLE OF AUTHORITIES

**Case**                                                                 **Page**

*ABF Capital Corp. v. Osley,*
   414 F.3d 1061 (9th Cir. 2005) ............................................................. 25

*Allstate Life Ins. Co. v. Robert W. Baird & Co.,*
   2011 U.S. Dist. LEXIS 122454 (D. Ariz. Oct. 20, 2011) ......................... 24

*American Pipe and Construction Company v. Utah,*
   414 U.S. 538 (1974).................................................................. 2, 11, 12

*Applegate v. Northwest Title Co.,*
   2004 Ohio 1465 (Ohio Ct. App., 10th Dist. Mar. 25, 2004) ................ 15, 16

*Blum v. Yaretsky,*
   457 U.S. 991 (1982)............................................................................. 9

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) ............................................................. 23

*Bowshier v. Village of North Hampton, Ohio,*
   2002 WL 940125 (Ohio App. 2d Dist. 2002)...................................... 13, 14

*Boyle v. United States,*
   556 U.S. 938 (2009)............................................................................. 5

*Continental Bank, N.A. v. Caton,*
   1990 U.S. Dist. LEXIS 11624 (D. Kan. Aug. 6, 1990)............................. 24

*Deitrick v. Am. Mortg. Solutions, Inc.,*
   2007 Ohio 839 (Ohio Ct. App., 10th Dist. Mar. 1, 2007) .................... 15, 16

*Eminence Capital, LLC v. Aspeon, Inc.,*
   316 F.3d 1048 (9th Cir. 2003) ......................................................... 17, 23

*Foman v. Davis,*
   371 U.S. 178 (1962)........................................................................... 24

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY ENTRY OF JUDGMENT

*Galmish v. Cicchini*,
    90 Ohio St. 3d 22 (Ohio 2000) ...................................................................... 15

*Gratz v. Bollinger*,
    539 U.S. 244 (2003)........................................................................................... 9

*Howe v. Bank of N.Y. Mellon*,
    783 F. Supp. 2d 466 (S.D.N.Y. 2011) ........................................................... 24

*In re Columbus Skyline Securities, Inc.*,
    74 Ohio St.3d 495 (Ohio 1996) ............................................................... 22, 23

*J. W. v. Fresno Unified Sch. Dist.*,
    626 F.3d 431 (9th Cir. 2010) .......................................................................... 18

*Liberty Mut. Ins. Co. v. EEOC*,
    691 F.2d 438(9th Cir. 1982) ............................................................................. 3

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ........................................................................ 23

*Metmor Fin. v. Slimmer*,
    1996 Ohio App. LEXIS 2003 (Ohio Ct. App., 11th Dist. May 17, 1996) .. 14

*Monaghan v. Rietzke*,
    85 Ohio App. 497 (6th Dist. 1949) ................................................................ 14

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    2012 WL 3854431 (2d Cir. Sept. 6, 2012) ........................................... *passim*

*Ouwinga v. Benistar 419 Plan Services, Inc.*,
    2012 WL 4096145 (6th Cir. Sept. 19, 2012)................................. 1, 4, 5, 6, 7

*Park Gen., Inc. v. Namvar*,
    2009 WL 1705611 (C.D. Cal. Jun. 16, 2009)............................................... 24

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY ENTRY OF JUDGMENT

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v.*
*J.P. Morgan Acceptance Corp.*,
    No. 08-CV-1713 (E.D.N.Y. Sept. 14, 2012) ...................................10

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
    2012 U.S. App. LEXIS 12513 (6th Cir. Jun. 20, 2012) .........................18, 19

*School Dist. No. 1 J, Multnomah County, Oregon. v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) .............................................................3

*Sparling v. Daou (In re Daou Sys.)*,
    411 F.3d 1006 (9th Cir. 2005) .........................................................19

*State v. Fanaro*,
    2008-Ohio-841 (Ohio Ct. App. 5th Dist. 2008) ..............................21

*State v. Walsh*,
    66 Ohio App. 2d 85 (Ohio Ct. App., 10th Dist. 1979) ....................15

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) ..........................................................17

*Turner v. Burlington Northern Santa Fe Railroad Co.*,
    338 F.3d 1058 (9th Cir. 2003) ...........................................................3

*Vaccariello v. Smith & Nephew Richards, Inc.*
    94 Ohio St. 3d 380 (Ohio 2002) ...........................................2, 12, 13, 14

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .......................................................19, 23

*W. & S. Life Ins. Co. v. Residential Funding Co.*,
    2012 Ohio Misc. LEXIS 100 (Ohio C.P. June 6, 2012)...................19

*Western and Southern Life Ins. Co. v. Countrywide Fin. Corp.*,
    2012 WL 1097244 (C.D. Cal. Mar. 9, 2012) .....................................*passim*

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY ENTRY OF JUDGMENT

*Western and Southern Life Ins. Co. v. Countrywide Fin. Corp.*,
    No. 2:11-CV-7166-MRP-MAN (C.D. Cal.)........................................... *passim*

**Statute**                                                                    **Page**

O.R.C. § 1707.01(J) ........................................................................ 22

O.R.C. § 1707.41(A) ....................................................................... 21

O.R.C. § 1707.44(G) ............................................................ 21, 22, 23

O.R.C. § 2305.19 ...................................................................... 13, 14


**Other Authorities**                                                          **Page**

Ohio Local Rule 7-18........................................................................ 3

Ohio S. Ct. Prac. R. 18.1............................................................... 14

Restatement of Torts (First) § 530 .............................................. 15

Federal Civil Procedure Before Trial, § 8:1468 .......................... 24

Federal Rule of Civil Procedure 15(a)(2) .................................... 24

Federal Rule of Civil Procedure 58(a) ......................................... 24

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY ENTRY OF JUDGMENT

1

## **PRELIMINARY STATEMENT**

2       The Sixth and Second Circuits recently issued decisions that constitute

3   material changes in the law applicable to these actions.   Plaintiffs respectfully

4   submit that if this Court had the benefit of those decisions before issuing *Western*

5   *and Southern Life Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-7166-MRP-

6   MAN, 2012 WL 1097244 (C.D. Cal. Mar. 9, 2012) ("*Western & Southern I*") and

7   *Western and Southern Life Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-7166-

8   MRP-MAN, slip op. (C.D. Cal.) ("*Western & Southern II*"), then it would have

9   sustained Plaintiffs' claims under the Ohio Corrupt Activities Act (the "OCAA"),

10  and held that Plaintiffs' claims under the Securities Act of 1933, and certain of

11  Plaintiffs' claims under the Ohio Securities Act (the "OSA"), were tolled by the

12  filing of class actions.

13      First, in *Ouwinga v. Benistar 419 Plan Services, Inc.*, __ F.3d.__, 2012 WL

14  4096145 (6th Cir. Sept. 19, 2012), the Sixth Circuit ruled that allegations that

15  separate business entities performed specific roles in furtherance of an unlawful

16  scheme are sufficient to plead an "enterprise," even if the defendants were merely

17  acting in the normal course of their businesses.  *Id.* at *8.  The Sixth Circuit further

18  held that a plaintiff need not plead any conduct beyond participation in predicate

19  acts in order to plead conduct of an enterprise.  *Id.* at *5-6.  This Court's dismissal

20  of Plaintiffs' OCAA claims in *Western & Southern II* cannot be reconciled with

21  *Ouwinga*.  Having observed that it should give "preference to decisions from

22  within the Sixth Circuit," *Western & Southern II*, slip op. at 14 n.11, the Court

23  should reconsider its prior ruling in light of this change in the law of that Circuit.

24      Second, in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,

25  __ F.3d. __, 2012 WL 3854431 (2d Cir. Sept. 6, 2012) ("*NECA*"), the Second

26  Circuit held that a putative class plaintiff has standing to bring claims on behalf of

27

1

all purchasers of RMBS sponsored or sold by the defendants as long as the putative plaintiff's tranches included loans originated by the same originator as the tranches purchased by other class members, and the misrepresentations and omissions alleged are substantively similar.  The Second Circuit based its ruling on United States Supreme Court precedent holding that while a class plaintiff must have Article III and statutory standing in its own right, that standing need not be identical to the Article III or statutory standing of all class members.  Instead, the class plaintiff need only show that it was injured by the defendants' allegedly unlawful conduct and that the other class members' claims involve the "same set of concerns."  Given the Second Circuit's analysis of this Supreme Court precedent, plaintiffs in *Luther v. Countrywide Home Loans Servicing LP,* BC380698 (Cal. Super. Ct.) and *Maine State Retirement System v. Countrywide Financial Corporation*, No. 10-CV-0302-MRP ("*Maine State*") had standing to bring claims on behalf of a class of investors that included Plaintiffs.  Accordingly, Plaintiffs respectfully submit that this Court erred when it held that their Securities Act claims and the OSA claims asserted in the Western & Southern Action based on loan underwriting misrepresentations were not tolled under *American Pipe and Construction Company v. Utah*, 414 U.S. 538, 553 (1974) and *Vaccariello v. Smith & Nephew Richards, Inc.* 94 Ohio St. 3d 380 (Ohio 2002).

In light of this need for reconsideration, and given that no separate judgment has been entered yet in either of these cases, Plaintiffs also respectfully submit that the Court can and should take this opportunity to reconsider its dismissal with prejudice of Plaintiffs' Transfer of Title claims.[1]  Plaintiffs respectfully submit that

---

[1] Unless otherwise noted, capitalized terms shall have the meaning ascribed to them in Plaintiffs' Joint Memorandum of Points and Authorities In Opposition to Defendants' Motions to Dismiss, May 21, 2012, No. 11-cv-07166-MRP, Docket No. 229, No. 11-cv-09889, Docket No. 140  ("Western & Southern II Opp.").

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY, ENTRY OF JUDGMENT

the Court overlooked facts and relevant law when it dismissed those claims without leave to amend.  Plaintiffs ask that the Court reconsider its prior rulings pursuant to Federal Rule of Civil Procedure ("FRCP") 59(e) or FRCP 60(b) or, at a minimum, allow Plaintiffs to file amended complaints pursuant to FRCP 15.[2] Finally, in the event that the Court denies Plaintiffs' motion for reconsideration and denies leave to amend, the Plaintiffs in the Western & Southern Action request that the Court enter a judgment dismissing that action pursuant to FRCP 58 in the form attached to this motion.

## ARGUMENT

This Court may reconsider its prior order dismissing a case pursuant to Rule 59(e) or Rule 60(b).  A court may reconsider its prior order if there was a change in law since the order was issued, or if the court overlooked material facts or law. *See, e.g., Turner v. Burlington Northern Santa Fe Railroad Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003); *School Dist. No. 1 J, Multnomah County, Oregon. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993); *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 440-41 & n.5 (9th Cir. 1982); *see also* Local Rule 7-18.

## I.   THE SIXTH CIRCUIT'S RECENT *OUWINGA* DECISION DEMONSTRATES THAT PLAINTIFFS' ENTERPRISE ALLEGATIONS ARE SUFFICIENT

*Western & Southern II* dismissed Plaintiffs' OCAA claims for failure to plead an "enterprise."  Slip op. at 15.  According to the Court, Plaintiffs' allegation that Defendants formed an association-in-fact enterprise with third parties to profit

---

[2] The Proposed Second Amend Complaint in the Western & Southern Action and the Proposed Amended Complaint in the National Integrity Action (the "Proposed Am. Compls."), and blacklines showing the proposed amendments, are attached to the Plaintiffs' Notices of Lodging dated October 4, 2012.

illegally from the sale, securitization, and servicing of Countrywide mortgage loans failed because:

> each of the non-parties identified by Western and Southern entered into a business relationship for their own commercial reasons.  Even if the Court credits Western and Southern's assertion that the non-parties' actions assisted Countrywide in a scheme to "profit illegally from the sale, securitization, and servicing of Countrywide mortgage loans," . . . the AC makes clear that the assistance was in response to each entity's own business incentives.

*Id.*  This Court interpreted Sixth Circuit case law as providing that "[p]arties that enter commercial relationships 'for their own gain or benefit' do not constitute an 'enterprise.'"  *Id.*  The Court concluded that while Plaintiffs pled "a number of facts from which the Court *might* conclude that the parties acted improperly in response to incentives set by Countrywide or by the securitization process generally," these allegations were insufficient because the members of the enterprise were carrying out their normal business affairs.  *Id.* at 17.  The Sixth Circuit has now rejected this interpretation of the law.

In *Ouwinga*, the plaintiff alleged that insurance agents formed an enterprise with John Hancock and its law firm.  *See* 2012 WL 4096145, at *1-2, 7.  The purpose of the enterprise was to promote "a fraudulent welfare benefit plan to generate commissions and related fees."  *Id.*  at *8.  The plaintiff alleged that the agents approached class members with a John Hancock life insurance product that was supposedly entitled to favorable tax treatment.  *Id.* at *1.  John Hancock's law firm provided opinion letters relating to the claimed tax benefits.  *Id.*  Plaintiff (and others) purchased the product, but the IRS later ruled that the product did not qualify for favorable tax treatment.  *Id.* at *2.  Plaintiffs alleged that the defendants

1   knew that John Hancock's product would not qualify for favorable tax treatment

2   because the IRS had issued several bulletins suggesting that shelters of its type

3   would not qualify.  *Id.* at *5.

4   　　Like this Court in *Western & Southern II*, the district court in *Ouwinga*

5   found the plaintiff's allegations insufficient to establish an "enterprise" because the

6   allegations amounted to allegations of "ill-motivated activity of normal business

7   conduct."  *Id.* at *7.  The Sixth Circuit reversed, finding that the district court's

8   ruling was contrary to *Boyle v. United States*, 556 U.S. 938 (2009).  The Sixth

9   Circuit emphasized "'the breadth of the 'enterprise' concept'" announced in *Boyle*,

10   and ruled that "a plaintiff must show 'simply a continuing unit that functions with

11   a common purpose.'"  *Ouwinga*, 2012 WL 4096145, at *7 (quoting *Boyle*, 556

12   U.S. at 948).  The Sixth Circuit noted:

13   　　　In *Boyle*, the Court upheld an instruction that allowed a jury to find an

14   　　　association-in-fact enterprise "form[ed] solely for the purpose of

15   　　　carrying out a pattern of racketeering acts" and instructed that

16   　　　"[c]ommon sense suggests that the existence of an association-in-fact

17   　　　is oftentimes more readily proven by what it does, rather than by

18   　　　abstract analysis of its structure." *Id.* at 942 n. 1. "[A] pattern of

19   　　　racketeering activity may be sufficient in a particular case to permit a

20   　　　jury to infer the existence of an association-in-fact [enterprise]." *Id.* at

21   　　　951.

22   *Ouwinga*, 2012 WL 4096145, at *8 (quoting *Boyle*).

23   　　The Sixth Circuit went on to hold that the plaintiff had adequately alleged an

24   enterprise because the plaintiff "[d]elineate[d] the specific roles and relationships

25   of the Defendants, allege[d] the enterprise functioned at least five years, and

26   allege[d] it functioned for the common purpose of promoting a fraudulent welfare

27

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY, ENTRY OF JUDGMENT

benefit plan to generate commissions and related fees." *Id.* The Sixth Circuit recognized that the district court was concerned that "if allegations of mirror-image, ill-motivated activity of normal business conduct are sufficient to establish an enterprise, all business conduct gone awry would constitute a per se RICO enterprise." *Id.* However, the Sixth Circuit rejected this policy argument, stating that "[t]his concern is not well founded and ignores the statutory requirement of liberal construction to effectuate RICO's remedial purposes." *Id.*

This Court also held in the *Western & Southern II* that Plaintiffs failed to allege that the third party members of the enterprise coordinated their conduct. *Western & Southern II*, slip op. at 17. While Plaintiffs submit that this ruling overlooked allegations in the Complaints, the Sixth Circuit also rejected the legal reasoning underlying this Court's determination. In *Ouwinga*, the defendants argued that the plaintiff failed to allege that the defendants engaged in the "conduct" of an enterprise because they were merely alleged to have carried out "the operation of their own businesses." *Ouwinga*, 2012 WL 4096145, at *5. The Sixth Circuit rejected this argument because each of the alleged members of the enterprise committed acts in furtherance of the common purpose of the enterprise with knowledge of the alleged wrongful conduct (*i.e.,* each of the defendants took steps that furthered the sale of the insurance product knowing that it would not qualify for favorable tax treatment). *Id.* at *6. This was sufficient under Sixth Circuit precedent, which "makes clear that knowingly carrying out the orders of the enterprise satisfies the 'operation or management' test." *Id.* at *6.

*Western & Southern II* cannot be reconciled with *Ouwinga*. Plaintiffs allege that Countrywide conspired with Wall Street banks that knowingly marketed Countrywide's fraudulent RMBS to Plaintiffs. Complaints ¶¶ 123-30, 420. Under *Ouwinga*, this Court need look no further in order to

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY, ENTRY OF JUDGMENT

determine that Plaintiffs adequately allege the existence of an enterprise and that Defendants (and the underwriters) engaged in the conduct of the enterprise. *Ouwinga*, 2012 WL 4096145, at *5-6, 8. Similarly, Plaintiffs allege that various brokers and correspondent lenders that supplied Countrywide with loans carried out Countrywide's marching orders by engaging in fraudulent and predatory lending practices in order to provide Countrywide with the volume and types of loans necessary to perpetrate its massive fraud. Complaints ¶¶ 168-86, 419-20.[3]

The Complaints further allege that Bank of New York Mellon ("BNY") participated in the unlawful enterprise. Complaints ¶ 420. BNY served as trustee to over 500 Countrywide trusts since 2004. If BNY had not turned a blind eye to Defendants' misconduct, the scheme would never have succeeded, much less continued for years, because Countrywide would have had to repurchase the non-compliant loans that it included in its fraudulent RMBS. *Id.* And BNY willingly committed fraud in foreclosure proceedings to allow for more fraudulent securitizations and cover up prior misconduct. *Id.* ¶¶ 226-28.[4]

---

[3] *Western & Southern II* dismissed Plaintiffs' civil conspiracy claims on grounds that "[e]very member of the alleged conspiracy is a member of the Countrywide corporate family." *Western & Southern II*, slip op. at 25. However, Plaintiffs' civil conspiracy claims allege that Defendants formed "an association in fact of entities" and incorporate allegations made elsewhere in the Complaints concerning the involvement of third party co-conspirators. Complaints ¶ 495-99. Any ambiguity as to the involvement of these third parties can be easily cured through an amendment alleging additional facts relating to their involvement. *See, e.g.,* Proposed Am. Compls ¶¶ 124-45, 183-218, 318-34, 574.

[4] To the extent this Court determines that the Plaintiffs' alleged enterprise involved too many participants, such a defect could be easily remedied through an amendment. *See, e.g.,* Proposed Am. Compls. ¶¶ 513-14. Similarly, if deemed

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY, ENTRY OF JUDGMENT

## II.   THE RECENT *NECA* DECISION DEMONSTRATES PLAINTIFFS' SECURITIES ACT CLAIMS AND <u>WESTERN & SOUTHERN'S OSA CLAIMS WERE TOLLED</u>

In *NECA*, the plaintiff pension fund, NECA, purchased certificates issued in two RMBS transactions sponsored by Goldman Sachs. *NECA*, 2012 WL 3854431, at *2.   NECA filed an action asserting claims under the Securities Act on behalf of a class of purchasers of 17 separate RMBS offerings issued pursuant to the same shelf registration statement. *Id.* at *1.  The defendants moved to dismiss for lack of standing and failure to state a claim. *Id.* at *5-6.   The district court held that NECA only had standing to bring claims on behalf of investors who purchased certificates issued by the two trusts that issued NECA's certificates and, thus, dismissed the class claims brought on behalf of investors in the remaining 15 trusts. *Id.* at *6.  The district court ultimately dismissed the remaining claims for failure to plead a cognizable loss. *Id.*

On appeal, the Second Circuit reversed the dismissal for lack of standing. *NECA*, 2012 WL 3854431, at *1.[5]  The Circuit court held that NECA had standing to bring claims on behalf of investors who purchased RMBS certificates in the 15 dismissed offerings, because the certificates issued in those offerings included loans originated by entities that originated loans underlying NECA's certificates. *Id.* at *13.  The Second Circuit noted that class action standing "does not turn on whether [the named plaintiff] would have statutory or Article III standing to seek recovery for misleading statements in" the offering materials associated with the

necessary, Plaintiffs could add additional allegations concerning coordination among enterprise members. *See id.* ¶¶ 124-45, 183-218, 318-34.

[5] The Second Circuit also reversed the district court's dismissal for failure to state a claim. *NECA*, 2012 WL 3854431, at *1.

other class members certificates.  *Id.* at *9.  Relying on Supreme Court precedent, the court held:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he "personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant," . . . and (2) that such conduct implicates "the same set of concerns" as the conduct alleged to have caused injury to other members of the putative class by the same defendants . . . .

*NECA*, 2012 WL 3854431, at *12 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) and *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)).

The Second Circuit found that NECA's claims involved "the same set of concerns" as the claims of class members and that NECA had standing to sue on behalf of such class members who purchased other tranches of Goldman-sponsored RMBS in separate offerings if tranches owned by NECA and a putative class member involved substantially similar allegations of wrongdoing and were backed by at least some loans originated by a common entity.  *NECA*, 2012 WL 3854431, at *12.  NECA claimed that the same three Goldman defendants made false statements regarding three loan originators in offering materials.  *Id.*  Thus, NECA relied on misrepresentations that were similar, if not identical to, misrepresentations alleged to have been made to other class members.  *Id*  The Second Circuit expressly rejected the argument that because statements related to the mortgage loans backing each offering appear in a "prospectus supplement" unique to each RMBS offering, NECA lacked standing to bring claims on behalf of holders of certificates issued in separate RMBS offerings.  *Id.*  The Second Circuit reasoned "the location of the representations has no effect on a given purchaser's assertion that the representation was misleading (the source of the injury)."  *NECA*,

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY, ENTRY OF JUDGMENT

2012 WL 3854431, at *12.  Indeed, as here, a number of the misrepresentations alleged in NECA appeared in the base registration statement which was common to all class member offerings.  *Id.*

The Second Circuit also expressly rejected the argument that "varying levels of payment priority" dictate that class standing in the RMBS context be limited to the specific tranches purchased by the named plaintiff. *Id.* at *14.  The court reasoned:

> Within any given Offering (or within any given Group of a particular Offering), some Certificates may be entitled to cash flows from the loans backing them earlier than others.  But that does not alter the fact that all of the Certificate-holders' cash flows within any such Offering or Group derive from loans originated by some of the same originators.  Regardless of their level of subordination, each Certificate-holder within an Offering or Group backed by loans originated by similar lenders has the same "necessary stake in litigating" whether those lenders in fact abandoned their underwriting guidelines.

*Id.*

At least one court in an RMBS case has already reversed its prior dismissal for lack of standing and adopted a rule consistent with *NECA*.  *See Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp.*, No. 08-CV-1713, slip op. (E.D.N.Y. Sept. 14, 2012).  Plaintiffs expect other courts will similarly reverse themselves on this issue in the near future.  Because the Second Circuit's ruling is rooted firmly in Supreme Court precedent, Plaintiffs submit that the Ninth and Sixth Circuits will similarly rule in a manner consistent with *NECA*.

**A.** **Plaintiffs' Securities Act Claims Are Tolled Because The *Luther* and *Maine State* Plaintiffs Had Standing**

Applying *NECA*, and the Supreme Court precedent upon which it is based, the *Luther* and *Maine State* plaintiffs had standing to bring claims on behalf of all investors who purchased tranches of Countrywide-sponsored RMBS backed by loans originated by Countrywide Home Loans or its affiliates. Like the *Luther* and *Maine State* plaintiffs, Plaintiffs here purchased Countrywide RMBS tranches issued from 2005-2007 and backed by Countrywide originated mortgage loans. Like the *Luther* and *Maine State* plaintiffs, Plaintiffs allege that Countrywide systemically abandoned its underwriting standards, misrepresented its adherence to those underwriting standards, and made false and misleading statements concerning loan to value ratios and credit ratings. [6] Moreover, the *Luther* and *Maine State* plaintiffs and Plaintiffs here rely upon similar, and often identical, misrepresentations. *See* Appendix A (chart comparing misrepresentations alleged in *Luther* and *Maine State* to those alleged here). Indeed, all but three of Plaintiffs' Certificates were issued pursuant to registration statements associated with the *Luther* and *Maine State* plaintiffs. *See* Appendix B.[7]

*Luther* has been reinstated and, thus, it continues to toll all of Plaintiffs' claims to this very date. In *Western & Southern I*, this Court concluded that there was a split of authority on the issue of whether *American Pipe* tolling applies

---

[6] *See* Countrywide Defendants' Notice of and Request for Judicial Notice in Support of Motions to Dismiss, Dec. 7, 2011, No. 11-cv-07166-MRP, Docket No. 172, No. 11-cv-09889-MRP, Docket No. 65, Exs. 72-74, 79 (*Luther* and *Maine State* complaints).

[7] The Second Circuit held in *NECA* that the class members need not have relied on misrepresentations in the same offering document provided that they relied on similar misrepresentations concerning a common originator. *NECA*, 2012 WL 3854431, at *12.

11

during the pendency of an appeal when an appeals court reinstates class claims. 2012 WL 1097244, at *3.  The Court recognized that a number of cases have held that a class plaintiff is entitled to tolling from the date of the filing of the action when class claims are reinstated.  *Id.*  The Court nonetheless rejected these rulings and relied on cases that, Plaintiffs respectfully submit, were inapposite because none involved a situation where class claims had been reinstated on appeal.  *Id.*[8] This Court is the first court that Plaintiffs are aware of to hold that a class member is not entitled to tolling of its claims from the date of the filing of a class action if a court dismisses the class claims wrongfully and such claims are subsequently reinstated on appeal.   The Court's ruling is contrary to the policy considerations underlying *American Pipe* and its progeny in that the ruling would encourage duplicative litigation and create situations where class members, whose individual claims would be time barred absent tolling, cannot opt-out of a settlement or further class litigation regardless of how poorly the named plaintiff runs the litigation after claims are reinstated.[9]

### B.    Western & Southern's OSA Claims Are Tolled

In *Vaccariello v. Smith & Nephew Richards, Inc.*, the Ohio Supreme Court held "that the filing of a class action, whether in Ohio or the federal court system tolls the statute of limitations as to all asserted members of the class who would

---

[8] *See also* Plaintiffs' Memorandum of Points and Authorities In Opposition to Defendants' Motions to Dismiss, Jan. 14, 2012, No. 11-cv-07166-MRP, Docket No. 177, No. 11-cv-09889, Docket No. 84 (the "Western & Southern I Opp."), at 32 n.29.

[9] If the Court revisits it prior ruling on this issue, all of Plaintiffs' claims would be tolled because the *Luther* action was reinstated after its initial dismissal.  If this Court declines to reconsider its prior ruling, all but seven of the Certificates in the Western & Southern Action are tolled, *see* Western & Southern I Opp., App. A., and five certificates in the National Integrity Action are tolled.  *See* Appendix C.

have been parties had the suit been permitted to continue as a class action." 94 Ohio St. 3d at 382-83. The court held that where a federal class action fails "otherwise than on the merits," the Ohio savings statute (O.R.C. § 2305.19) applies, and allows a plaintiff one year from failure of the federal class action to file a new action asserting Ohio claims, regardless of whether the plaintiff was a named plaintiff in the initial action. *Id.* at 383. "Ohio law thus provides for a kind of tolling that extends, rather than suspends, a statute of limitations." *Vaccariello*, 94 Ohio St. 3d at 392.

In *Western & Southern I*, the Court held that Plaintiffs in the Western & Southern Action could not toll based on *Maine State* because the *Maine State* and *Luther* plaintiffs lacked standing to bring claims on behalf of a class of investors that included Plaintiffs. *Western & Southern I*, 2012 WL 1097244, at *9. Under the class standing rule announced in *NECA*, this ruling was incorrect. Accordingly, the Western & Southern Plaintiffs' OSA claims based on Countrywide's misrepresentation of its adherence to underwriting guidelines, LTV ratios, owner occupancy figures, and credit ratings are tolled under *Vaccariello*.

Moreover, the Court's reliance on *Bowshier v. Village of North Hampton*, Ohio, No.2001 CA 63, 2002 WL 940125, at *4–5 (Ohio App. 2d Dist. 2002) in *Western & Southern I* was misplaced. *See Western & Southern I*, 2012 WL 1097244, at *9. In *Bowshier*, the intermediate appellate court noted "we fail to see how the savings statute could have applied to the new plaintiffs by virtue of their membership in an 'unnamed' class." 2002 WL 940125, at *5. In fact, *Bowshier* simply overlooked *Vaccariello,* a binding precedent *Bowshier* did not even cite. *Vaccariello* held that where an Ohio state or federal class action fails "otherwise than on the merits," the Ohio savings statute applies to the plaintiff's claims even if she was not a named plaintiff in the prior class action. 94 Ohio St. 3d at 383. The

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY, ENTRY OF JUDGMENT

holding in *Bowshier* cannot be reconciled with the Ohio Supreme Court ruling in *Vaccariello* and, thus, *Bowshier* is simply bad law in Ohio.[10]  Similarly, this Court incorrectly concluded that no Ohio court had applied the Ohio savings statute when the prior action was dismissed for lack of standing.  *See Metmor Fin. v. Slimmer*, No. 95-T-5341, 1996 Ohio App. LEXIS 2003, at *11 (Ohio Ct. App., 11th Dist. May 17, 1996) (holding that O.R.C. § 2305.19 applies to a dismissal for lack of standing).

## III.   THIS COURT SHOULD RECONSIDER ITS PRIOR RULING DISMISSING PLAINTIFFS' TRANSFER OF TITLE CLAIMS

Plaintiffs' respectfully submit that this Court overlooked material facts and law that were before the Court in *Western & Southern II* relating to Plaintiffs' transfer of title claims.

### A.   A False Promise to Perform Is Actionable Under Ohio Law

In *Western & Southern II*, the Court held that a promise to perform under a contract is not actionable under the OSA or common law.  *Western & Southern II*, slip op. at 12.   The Court attempted to distinguish Ohio case law cited by Western & Southern noting "none of the cases cited by Western and Southern arose in the context of a 'promise' to comply with contractual obligations."  *Id.* at 12.  However, the Court overlooked numerous cases cited by Western & Southern and Countrywide that did involve just such a promise to comply with contractual obligations.

---

[10] Should this Court have any question as to how *Vaccariello* should be interpreted, Plaintiffs respectfully suggest that this Court should certify the question to the Ohio Supreme Court.  *See* Ohio S. Ct. Prac. R. 18.1 ("The Supreme Court may answer a question of law certified to it by a court of the United States.").

For example, in *Monaghan v. Rietzke*, 85 Ohio App. 497 (6th Dist. 1949), a seminal Ohio case on promissory fraud cited by Western & Southern, the court held:  "The general rule that fraud cannot be predicated merely on an unfulfilled future promise is inapplicable to prevent an action . . . where there is a willful and wrongful refusal to comply with the contract."  *Id.*  (emphasis added).  Numerous other Ohio decisions have similarly upheld promissory fraud claims. [11]  Western & Southern did not cite these authorities only because Defendants themselves conceded in their opening memoranda that a contractual promise to perform is actionable if the speaker knew or should have known performance would not occur.[12]

Countrywide itself cited *State v. Walsh*, 66 Ohio App. 2d 85 (Ohio Ct. App., 10th Dist. 1979), which is directly on point.  In *Walsh*, the defendant sold shares in a drilling operation pursuant to a registration statement that represented that certain proceeds from the sale of the securities would be deposited in a "drilling account" "in accordance with the turnkey drilling and completion agreement."  *Walsh*, 66 Ohio App. 2d at 92-93.  The court held that this statement was actionable under the OSA if "at the time of the sale, there was no intention to keep the promise, or it

---

[11] *Galmish v. Cicchini*, 90 Ohio St. 3d 22, 29-30 (Ohio 2000) (recognizing viability of promissory fraud claim); *Deitrick v. Am. Mortg. Solutions, Inc.*, 2007 Ohio 839, ¶ 16 (Ohio Ct. App., 10th Dist. Mar. 1, 2007) (contractual provision requiring monies be placed in escrow supported a fraud claim); *Applegate v. Northwest Title Co.*, 2004 Ohio 1465, ¶ 30 (Ohio Ct. App., 10th Dist. Mar. 25, 2004) ("Ohio does recognize a cause of action for fraudulent misrepresentation based upon a representation of an intention to do a future act"); *see also* RESTATEMENT OF TORTS (FIRST) § 530 ("One who fraudulently misrepresents to another that he or a third person intends to do or not to do a particular thing is subject to liability").

[12] *See, e.g.,* Countrywide Defendants' Memorandum of Points and Authorities in Support of Their Motion to Dismiss and Motion for Reconsideration, Apr. 20, 2012, No. 11-cv-07166-MRP, Docket No. 222, No. 11-cv-09889, Docket No. 133 ("Countrywide Mem.") at 23-24.

was known that the circumstances would change." *Id.* at 90.  The court further ruled "that evidence was presented at trial that was sufficient to demonstrate . . . the proceeds of the sales were diverted to corporate purposes, that no special drilling fund was created and that defendant was aware of these facts." *Id.* at 93. As a result, the misstatement was actionable.  *Id.*

The Complaints more than adequately allege that Countrywide knew that the depositors did not intend to deliver original notes and loan files to the trusts in accordance with the pooling and servicing agreements. *See, e..g.,* Complaints ¶¶ 211-17.  Under Ohio law, such evidence is sufficient to demonstrate a promise to perform was false when made. *See Applegate v. Nw. Title Co.*, 2004 Ohio 1465, ¶ 38 (evidence that defendants' practice was not to place funds in escrow sufficient to support a promissory fraud claim).  Moreover, the Complaints allege that <u>no one</u> delivered the original notes and mortgage files to the trusts.  Complaints ¶ 209. Because Countrywide had the ability to perform these acts, allegations that it did not perform support the inference that it never intended to perform. *See Deitrick v. Am. Mtge. Solutions, Inc.*, 2007-Ohio-839 (defendant's wrongful refusal to perform despite his ability to perform was evidence that  promise to place funds in escrow was false when made).

In *Western & Southern II*, this Court took issue with Plaintiffs' use of the defined term "Countrywide" in the Transfer of Title section.  According to the Court, the use of the defined term required dismissal because Plaintiffs did not "explain what actions the Depositors failed to take and which specific Defendants knew or should have known that the Depositors would fail to take those actions." Slip op. at 8-9.  But the Court overlooked that the Complaints allege that none of the Countrywide defendants delivered the original notes and loan files to the Trusts.  Complaints ¶ 209.  By definition, Plaintiffs also alleged the Depositors

failed to deliver the notes and loan files.  And the Complaints also allege that all of the Countrywide defendants knew or should have known that the Depositors would not perform because Countrywide's corporate policy was not to deliver notes and loan files to the trusts, *see* Complaints ¶¶ 211-17, and because the Depositors were controlled by other Countrywide defendants, *id.* ¶ 56, 201, 304, 464.[13]

The Court surmised that it might be "difficult" to explain what actions the depositor defendants failed to take because  the Complaints do "not allege that the servicers were not the 'custodians' of the trustees, as contemplated by the Prospectus Supplements and PSAs." *Western & Southern II*, slip op. at 9. [14] However, the Complaints plainly allege that notes and loan files should have been delivered to the <u>trusts</u> and that this did not happen because the files were delivered to <u>servicers</u> instead.  Complaints ¶¶ 206, 210, 212-13, 215, 216, 217, 240.  The only plausible reading of these allegations is that delivery to a servicer was insufficient to constitute delivery to the trusts.  Moreover, the pooling and servicing agreements themselves expressly provide delivery must be made to the trustees and make no provision for appointment of any non-trustee custodian.[15] The Court's hypothesis that a servicer might also be the trustee's "custodian" was

---

[13]  *Swartz v. KPMG LLP* teaches that Rule 9 is satisfied in a multi-defendant fraud action when the plaintiff "'identif[ies] the role of [each] defendant[] in the alleged fraudulent scheme.'"  476 F.3d 756, 765 (9th Cir. 2007).  The Complaints more than sufficiently describe the role of each Defendant.  Complaints ¶¶ 20-37, 290-96.

[14] Whether it might be difficult to amend a complaint is irrelevant.  Leave to amend should be granted "unless it is clear . . . that the complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[15] *See, e.g.,* Countrywide Defendants' Notice of and Request for Judicial Notice in Support of Motions to Dismiss, Apr. 20, 2012, No. 11-cv-07166-MRP, Docket No. 223 ("Countrywide Second RJN") Ex. 38.

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY, ENTRY OF JUDGMENT

1  not a correct inference or a permissible ground to dismiss or deny leave to amend.

2  *See J. W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 440 (9th Cir. 2010)

3  ("Although the existence of a document may be judicially noticeable, the truth of

4  statements contained in the document and <u>improper interpretation are not subject to</u>

5  <u>judicial notice</u> if those matters are reasonably disputable.") (emphasis added).

6  **B.    The Court Overlooked Multiple Alleged Misrepresentations**

7          The Complaints allege that the securities were marketed as being "backed"

8  by mortgages.  Complaints ¶¶ 1, 12, 24, 25, 26, 27, 43, 75, 178, 197, 201.  The

9  Court took judicial notice of numerous exhibits that conclusively prove that the

10  Certificates were marketed as "backed" by mortgages.  Countrywide Second RJN

11  Ex. 5, 6, 7, 31-33.  The Offering Materials represented that the mortgages loans

12  would "back" the Certificates, not merely that each loan would have a mortgage.

13          The phrase "mortgage-backed" reassured investors that the Certificates were

14  supported by secured loans, not mere unsecured debt.  Indeed, each prospectus

15  supplement expressly represented on the first page that the Certificates comprised

16  interests in loans that were secured by liens on real property.  *See, e.g,*

17  Countrywide Second RJN Ex. 11 ("The certificates represent interests in a pool

18  consisting of five loan groups of primarily 30-year conventional, fixed rate

19  mortgage loans secured by first liens on one to four family residential properties.").

20  Plaintiffs attached an appendix to their opposition brief that collected the

21  representations as made in connection with each offering.  *See* Western & Southern

22  II Opp., App. A.

23          The Court did not address the allegation that Countrywide falsely stated that

24  the Certificates were "mortgage-backed" or that each prospectus supplement

25  indicated that the Certificates "represent interests in a pool consisting of . . .

26  mortgage loans secured by first liens."  These representations do not reference the

27

pooling and servicing agreements. They are statements of present fact and representations that go to the heart of these securities. *See Republic Bank & Trust Co. v. Bear Stearns & Co.*, 2012 U.S. App. LEXIS 12513, at *18-19 (6th Cir. Jun. 20, 2012) (statements concerning the "certificates' structural qualities at the time of purchase" are not mere forward-looking predictive statements); *W. & S. Life Ins. Co. v. Residential Funding Co.*, 2012 Ohio Misc. LEXIS 100, at *25 (Ohio C.P. June 6, 2012) ("The Certificates were marketed as mortgage backed and the representations refer to present circumstances.").[16] There are also many other misrepresentations, not tied to the pooling and servicing agreements, that Plaintiffs could have identified if they were provided leave to amend. *See, e.g.,* Proposed Am. Compls. ¶¶ 239-41, 243, 250-52.[17]

---

[16] OSA claims substantively identical to Plaintiffs' OSA claims based on Transfer of Title have been sustained in <u>five</u> separate litigations pending in the Ohio Court of Common Pleas. *See W. & S. Life Ins. Co. v. Residential Funding Co.*, 2012 Ohio Misc. LEXIS 100, at *25; *W. & S. Life Ins. Co. v. DLJ Mortgage Capital, Inc., et al.,* Case No. A1105352, letter ruling at 2 (Ohio C.P. May 22, 2012) (RJN Ex. 1); *W. & S. Life Ins. Co. v. GS Mortgage Securities Corp., et al.*, Case No. A1106193, slip op. at 3, 9 (Ohio C.P., Sept. 11, 2012) (RJN Ex. 2); *W. & S. Life Ins. Co. v. Morgan Stanley Mortgage Capital, Inc., et al.*, Case No. A1105563, Transcript of Oral Argument at 82 (Ohio C.P., Aug. 3, 2012) (RJN Ex. 3); and *W. & S. Life Ins. Co. v. Bank of America, N.A., et al.,* Case No. A1106524, Transcript of Oral Argument at 82 (Ohio C.P., Aug. 3, 2012) (*Id.*). No court in Ohio has ever rejected these claims.

[17] Even if the Court concluded that the Complaints failed to comply with Rule 9, this Court should have determined whether the non-fraud allegations in the Complaints satisfied Rule 8 after stripping allegations of fraud that did not comply with Rule 9. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). At a minimum, the Court should have granted leave to replead to allow the Plaintiffs to segregate fraud allegations from its non-fraud theories of liability. *Sparling v. Daou (In re Daou Sys.)*, 411 F.3d 1006, 1028 (9th Cir. 2005); *see* Proposed Am. Compls. ¶ 227, First Cause of Action-Fifth Cause of Action (asserting non-fraud based OSA claims based on Transfer of Title allegations); *id.*

## C.    The Court Overlooked Plaintiffs' Omission Based Claims

The Complaints allege that Countrywide failed to disclose numerous material facts.  *See* Complaints ¶¶ 1, 284-86, 400-01.  For example, the Offering Materials failed to disclose Countrywide's corporate policy not to deliver original notes and loan files to the trustee despite the requirements of the pooling and servicing agreements.  *Id.* ¶¶ 209, 213-15.  BNY, as trustee for investors like Plaintiffs, systemically failed to disclose that such failures took place, and systemically failed to put mortgages lacking adequate documentation back to the Countrywide sponsor as required under the pooling and servicing agreements for prior securitizations.  *Id.* 226-28, 420.  The Offering Materials also failed to disclose that since at least 2003, the servicers of loans underlying Countrywide's mortgage-backed securities were committing acts of "robo-signing," perjury, and forgery in order to cover-up their lack of sufficient documentation to foreclose.  *Id.* ¶¶ 218-40.[18]  *Western & Southern II* provides no explanation as to why these omission based claims are not actionable.[19]

¶¶ 309-317, Fourteenth Cause of Action-Eighteenth Cause of Action (asserting scienter based OSA claims based on Transfer of Title Allegations against certain Defendants).

[18]  To the extent that the Court concludes that the Complaints could have alleged omissions with greater particularity, such a deficiency could be easily addressed in an amended pleading.  *See, e.g.,* Proposed Am. Compls. ¶¶ 249-59, 325, 489.

[19] The acts of perjury, forgery and tampering alleged in the Complaints injured investors and the trusts by (i) causing the trusts to realize losses on loans that should not have been put back to the Countrywide sponsor; (ii) casting doubts on the foreclosure process, causing costly delays in foreclosures, and increased servicing costs; (iii) preventing efficient loan modifications, where appropriate; and (iv) causing the trusts (and ultimately investors) to cover a significant portion of Bank of America's recent $26 billion robo-signing settlement entered into with state and federal regulators.  *See* Complaints ¶¶ 208-09, 224, 227, 286, 289.  If the Court desires more detailed allegations, they could be included in an amended complaint.  *See, e.g.,* Proposed Am. Compls. ¶¶ 286-88, 334, 373, 376.

20

In *Western & Southern II*, the Court stated that only affirmative misrepresentations are actionable under O.R.C. § 1707.41.  Slip op. at 4 n.5.  This is not correct.  The plain language of the statute clearly provides that omissions are actionable:

> [A]ny person that, by a written or printed circular, prospectus, or advertisement, offers any security for sale, or receives the profits accruing from such sale, is liable, to any person that purchased the security relying on the circular, prospectus, or advertisement, for the loss or damage sustained by the relying person by reason of the falsity of any material statement contained therein or **for the omission of material facts**, unless the offeror or person that receives the profits establishes that the offeror or person had no knowledge of the publication prior to the transaction complained of, or had just and reasonable grounds to believe the statement to be true or the **omitted facts** to be not material.

O.R.C. § 1707.41(A) (emphasis added).  Unlike omission claims under the Exchange Act of 1934, omissions under this provision of the OSA are actionable regardless of whether or not they rendered an affirmative statement false or misleading. [20]

---

[20] The omissions are also actionable under O.R.C. § 1707.44(G), which "prohibits both affirmative misrepresentations and fraudulent non-disclosures in the sale of securities (i.e. material omissions)."  *State v. Fanaro*, 2008 Ohio 841, ¶26 (Ohio Ct. App. 5th Dist. 2008).

**D.     The Court Misread the Requirements of O.R.C. § 1707.44(G)**

Contrary to the Court's description of the statute, liability under O.R.C. § 1707.44(G) does not depend upon a "predicate violation of the OSA." *Western & Southern II*, slip op. at 4 n.5. Section 1707.44(G) provides: "No person in purchasing or selling securities shall knowingly engage in any act or practice that is, in this chapter, declared illegal, defined as fraudulent, or prohibited." The definition of "fraudulent" appears in Section 1707.01(J):

> "Fraud," "fraudulent," "fraudulent acts," "fraudulent practices," or "fraudulent transactions" means anything recognized on or after July 22, 1929, as such in courts of law or equity; any device, scheme, or artifice to defraud or to obtain money or property by means of any false pretense, representation, or promise; any fictitious or pretended purchase or sale of securities; and any act, practice, transaction, or course of business relating to the purchase or sale of securities that is fraudulent or that has operated or would operate as a fraud upon the seller or purchaser.

O.R.C. § 1707.01(J). This language is purposefully broad because the Ohio legislature recognized "the creativity of unscrupulous securities dealers intent on defrauding Ohio investors," and intended "to address unforeseen variations in factual circumstances." *In re Columbus Skyline Securities, Inc.*, 74 Ohio St.3d 495, 499 (Ohio 1996).

Accordingly, liability under Section 1707.44(G) does not require a predicate OSA violation and is not limited to acts that otherwise violate the OSA. Indeed, the statute does not ever limit liability to misrepresentations or omissions. "[A]ny device, scheme, or artifice to defraud or to obtain money or property by means of any false pretense, representation, or promise" and "any act, practice, transaction,

1   or course of business relating to the purchase or sale of securities that is fraudulent

2   or that has operated or would operate as a fraud upon the seller or purchaser" are

3   actionable.  O.R.C. § 1707.44(G); *see also In re Columbus Skyline Securities, Inc.*,

4   74 Ohio St.3d at 500 (broker who failed to follow federal law regarding the

5   calculation of certain market prices violated Section 1707.44(G)).

6   **IV.   <u>LEAVE TO AMEND IS PROPER HERE</u>**

7          A dismissal under Rule 12(b)(6) or Rule 9 should be without prejudice

8   "unless the district court 'determines that the pleading could not possibly be cured

9   by the allegation of other facts.'"  *Bly-Magee v. California*, 236 F.3d 1014, 1019

10  (9th Cir. 2001) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)); *see*

11  *also Vess*, 317 F.3d at 1107.  Where the complaint has been previously amended,

12  leave to amend should be granted if the dismissed claim was raised for the first

13  time in the amendment, such that the plaintiff did not have the opportunity to

14  incorporate the court's guidance with respect to that claim.  *See Eminence Capital,*

15  *LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. Cal. 2003) (reversing district

16  court's dismissal without prejudice where district court concluded that plaintiff had

17  "three bites at the apple").  "A district court's failure to consider the relevant

18  factors and articulate why dismissal should be with prejudice instead of without

19  prejudice may constitute an abuse of discretion."  *Id.*

20         *Western & Southern II* does not address the possibility that Plaintiffs could

21  cure the defects identified by the Court, nor does the ruling "articulate why

22  dismissal should be with prejudice instead of without prejudice."  *Id.*  As discussed

23  above and throughout this memorandum, Plaintiffs could address this Court's

24  concerns with respect to the Transfer of Title misrepresentations and omissions.

25  To the extent the Court declines to reconsider its prior dismissal, the Court should

26  nevertheless allow Plaintiffs leave to amend to address the deficiencies identified

27

1   in *Western & Southern II*.  Plaintiffs also seek leave to add a claim for tortious

2   interference with contract.  *See* Proposed Am. Compls. ¶¶ 318-34, Nineteenth

3   Cause of Action.[21]

4        A district "court should freely give leave [to amend] when justice so

5   requires."  Fed. R. Civ. P. 15(a)(2).  Amendments are liberally allowed because a

6   plaintiff "ought to be afforded an opportunity to test his claim on the merits."

7   *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "There is no time limit for amendment

8   under FRCP 15(a)(2).  Thus, leave to amend may be sought at any time before

9   entry of judgment . . . ."  FEDERAL CIVIL PROCEDURE BEFORE TRIAL, § 8:1468 (The

10  Rutter Group).  The proposed amended pleadings would not cause any prejudice to

11  Defendants as discovery has not even commenced in these actions, nor is there any

12  other reason to preclude amendment here.  *See, e.g., Park Gen., Inc. v. Namvar*,

13  No. 09-CV-2741 CAS (FMOx), 2009 WL 1705611, at *4 (C.D. Cal. Jun. 16,

14  2009).

15  **V.   ALTERNATIVELY, THIS COURT SHOULD ENTER**

16       <u>**JUDGMENT IN THE WESTERN & SOUTHERN ACTION**</u>

17       FRCP 58(a) provides that, subject to exceptions not relevant here, "[e]very

18  judgment and amended judgment must be set out in a separate document."  FRCP

19  58(d) provides:  "A party may request that judgment be set out in a separate

20  ───────────────

21  [21] Defendants may be expected to object that this claim is subject to the no-action
    provisions of the pooling and servicing agreements.  Any such objection would be

22  incorrect.  *See Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 473-74

23  (S.D.N.Y. 2011) (sustaining investor claim for tortious interference despite no-
    action clause); *Continental Bank, N.A. v. Caton*, No. 88-1611-C, 1990 U.S. Dist.

24  LEXIS 11624, at *20-21 (D. Kan. Aug. 6, 1990) (investors retained right to sue for
    tortious interference under indenture); *see also Allstate Life Ins. Co. v. Robert W.*

25  *Baird & Co.*, No. 09-CV-8162, 2011 U.S. Dist. LEXIS 122454, at *14 (D. Ariz.
    Oct. 20, 2011) (no-action clause "do[es] not apply to remedies that lie outside the

26  Indenture").

27

document as required by Rule 58(a)."  The June 29, 2012 Order does not qualify as such a "separate document."  *See ABF Capital Corp. v. Osley*, 414 F.3d 1061, 1064 (9th Cir. 2005).  Plaintiffs submit that if the Court both denies their motion for reconsideration and declines to grant leave to amend, then the Court should enter judgment in the Western & Southern Action in the form attached hereto.  The Ninth Circuit has allowed other parties to these MDL proceedings to pursue an appeal, RJN Ex. 4, and there is no reason that Western & Southern should be deprived of its immediate right to appeal.

## CONCLUSION

For all of the foregoing reasons, Western & Southern and National Integrity respectfully submit that the Court should reconsider its rulings in *Western & Southern I* and *Western & Southern II*, and either deny Defendants' motions to dismiss in their entirety or grant Plaintiffs leave to amend.  Alternatively, should this Court deny reconsideration and leave to amend, Plaintiffs in the Western & Southern Action request that this Court enter a separate judgment pursuant to FRCP 58.

Dated: October 4, 2012

By: Brian C. Lysaght
Brian C. Lysaght (Bar. No. 61965)
blysaght@lysaghtlegal.com
LYSAGHT LAW GROUP LLP
233 Wilshire Blvd Suite 700
Los Angeles, CA 90025
Telephone: (310) 566-8166

-and-

David H. Wollmuth (*pro hac vice*)
dwollmuth@wmd-law.com
Thomas P. Ogden (*pro hac vice*)
togden@wmd-law.com

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY, ENTRY OF JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Steven S. Fitzgerald (*pro hac vice*)
sfitzgerald@wmd-law.com
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

*Attorneys for Plaintiffs The Western and Southern Life Insurance Company, Western-Southern Life Assurance Company, Columbus Life Insurance Company, Integrity Life Insurance Company, National Integrity Life Insurance Company, and Fort Washington Investment Advisors, Inc.*

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND LEAVE TO AMEND, OR, ALTERNATIVELY, ENTRY OF JUDGMENT

# Appendix A

## Comparison of Misrepresentations in *Luther*, *Maine State* and *Western & Southern*

| *Luther v. Countrywide*, No. BC380698 (Cal. Super. Los Angeles Cty.) | *Maine State v. Countrywide*, No. 10-cv-00302 (C.D. Cal.) | *Western & Southern v. Countrywide*, No. 11-cv-07166 (C.D. Cal.) |
|---|---|---|
| Each Registration Statement and Prospectus Supplement issued by CWALT and CWMBS contained the following language concerning the underwriting standards by which the mortgages pooled into CWALT's and CWMBS' Issuing Trusts were originated: "All of the Mortgage Loans have been   originated or acquired by Countrywide Home Loans, Inc., in accordance with its credit, appraisal and underwriting standards. . . ." *Luther* Complaint ¶ 153. | Each of the Registration Statements and Prospectus Supplements contained representations concerning the standards purportedly used to underwrite the mortgages in the Issuing Trusts.  For example, each of the Registration Statements issued by CWALT and CWMBS represented that: "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards. Countrywide Home Loans' underwriting standards are applied in accordance with applicable federal and state laws and regulations."  *Maine State* Complaint ¶ 77. | Countrywide represented in the Offering Materials that the loans underlying each securitization were underwritten in accordance with meaningful underwriting standards designed properly to qualify borrowers and ensure the sufficiency of loan collateral.  For example, in the Offering Materials for CWALT 2007-16CB, Countrywide told investors: "All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting process. . .." *Western & Southern* Complaint ¶ 77. |
| Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and | Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy | Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and |

| *Luther v. Countrywide,*<br>No. BC380698<br>(Cal. Super. Los Angeles Cty.) | *Maine State v. Countrywide,*<br>No. 10-cv-00302<br>(C.D. Cal.) | *Western & Southern v. Countrywide,*<br>No. 11-cv-07166<br>(C.D. Cal.) |
|---|---|---|
| repayment ability and the value and adequacy of the mortgaged property as collateral. *Luther* Complaint ¶¶ 89 and 153. | of the mortgaged property as collateral. *Maine State* Complaint ¶ 78. | repayment ability and the value and adequacy of the mortgaged property as collateral. *Western & Southern* Complaint ¶ 77. |
| Under those standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to- ratio," which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. *Luther* Complaint ¶¶ 89 and 153. | Under those standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to-income" ratios) are within acceptable limits. The maximum acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. *Maine State* Complaint ¶ 78. | The Offering Materials represented that only borrowers who had the means to repay had received loans. For example, the Offering Materials for CWALT 2007-16CB stated:<br>    "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly |

| *Luther v. Countrywide,*<br>No. BC380698<br>(Cal. Super. Los Angeles Cty.) | *Maine State v. Countrywide,*<br>No. 10-cv-00302<br>(C.D. Cal.) | *Western & Southern v. Countrywide,*<br>No. 11-cv-07166<br>(C.D. Cal.) |
|---|---|---|
| | | gross income (the "debt - to – income" ratios) are within acceptable limits."<br>*Western & Southern* Complaint ¶ 78. |
| The investment quality of the Certificates was necessarily linked to the quality of the mortgages pooled into each Issuing Trust.  Countrywide, as originator of the mortgages held by the Issuing Trusts, repeatedly touted the strength of its underwriting standards to assure plaintiffs that the mortgages held by the Issuing Trusts were issued to borrowers who satisfied certain thresholds of credit-worthiness, including having the necessary income to repay the loans. . . .  These representations and others were essential to plaintiffs' determination of the riskiness of the mortgage pool and the quality of their investment in the Certificates.  *Luther* Complaint ¶ 6. | The investment quality of the Certificates was necessarily linked to the quality of the mortgages pooled into each Issuing Trust.  Countrywide, as originator of the mortgages held by the Issuing Trusts, repeatedly touted the strength of its underwriting standards to assure plaintiffs that the mortgages held by the Issuing Trusts were issued to borrowers who satisfied certain thresholds of credit-worthiness, including having the necessary income to repay the loans. . . .  These representations and others were essential to plaintiffs' determination of the riskiness of the mortgage pool and the quality of their investment in the Certificates. *Maine State* Complaint ¶¶ 5 and 6. | The Offering Materials told investors that the loans underlying the certificates had not been adversely selected, that is that Countrywide did not intentionally select poor loans for securitization that it did not want on its balance sheet.  For example, the Offering Materials for CWALT 2007-16CB provided:<br>"Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one- to four-family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests |

| *Luther v. Countrywide,*<br>No. BC380698<br>(Cal. Super. Los Angeles Cty.) | *Maine State v. Countrywide,*<br>No. 10-cv-00302<br>(C.D. Cal.) | *Western & Southern v. Countrywide,*<br>No. 11-cv-07166<br>(C.D. Cal.) |
|---|---|---|
| | | of the certificate holders adversely." *Western & Southern Complaint* ¶ 80. |
| On a case by case basis, Countrywide Home Loans may determine that, based upon compensating factors, a prospective borrower not strictly qualifying under the underwriting risk category guidelines described below warrants an underwriting exception. Compensating factors may include low loan-to-value ratio, low debt-to-income ratio, stable employment, time in the same residence or other factors. *Luther* Complaint ¶¶ 90 and 155. | On a case by case basis, Countrywide Home Loans may determine that, based upon compensating factors, a prospective borrower not strictly qualifying under the underwriting risk category guidelines described below warrants an underwriting exception. Compensating factors may include low loan-to-value ratio, low debt-to income ratio, stable employment, time in the same residence or other factors… Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower. *Maine State* Complaint ¶¶ 78 and 79. | The Offering Materials asserted that all loans were issued in substantial compliance with underwriting standards, and that any deviation from specific criteria was justified by sufficient positive compensating factors and made on a limited case-by-case basis. For example, the Offering Materials for CWALT 2007-16CB told investors: "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." *Western & Southern* Complaint ¶ 79. |

| *Luther v. Countrywide*, No. BC380698 (Cal. Super. Los Angeles Cty.) | *Maine State v. Countrywide*, 10-cv-00302 (C.D. Cal.) | *Western & Southern v. Countrywide*, 11-cv-07166 (C.D. Cal.) |
|---|---|---|
| Each Registration Statement and Prospectus Supplement issued by CWALT and CWMBS contained the following language concerning the collateral supporting each mortgage pooled in the Issuing Trusts and the appraisals by which the collateral was valued: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar | Each Registration Statement and Prospectus Supplement issued by CWALT and CWMBS contained the following language concerning the collateral supporting each mortgage pooled in the Issuing Trusts and the appraisals by which the collateral was valued: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." *Maine State* Complaint ¶ 156. | The Offering Materials uniformly represent that Defendants required and relied upon independent, industry-standard appraisals to value homes pledged pursuant to the mortgages underlying the Certificates. For example, the Prospectus Supplement for CWALT 2007-16CB told investors: "Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are |

| *Luther v. Countrywide*, No. BC380698 (Cal. Super. Los Angeles Cty.) | *Maine State v. Countrywide*, 10-cv-00302 (C.D. Cal.) | *Western & Southern v. Countrywide*, 11-cv-07166 (C.D. Cal.) |
|---|---|---|
| home.  All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." *Luther* Complaint ¶ 162. | | required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." *Western & Southern* Complaint ¶ 243. |
| Rating agencies, like Moody's Investors Service, Inc. ("Moody's"), Fitch, Inc. ("Fitch") and/or Standard & Poor's Corporation ("S&P"), rated the investment quality of the Certificates based on information provided by the defendants about the quality of the mortgages in each mortgage pool, and the seniority of the Certificate among the various Certificates issued by each Issuing Trust.  These ratings, in part, determined the price at which these Certificates were offered to the Class. . . .<br><br>        Based on the representations concerning the purported quality of the underlying mortgages pooled in the Issuing Trusts set forth in the Registration Statements and Prospectus Supplements, the Rating Agencies assigned investment grade ratings on | Because Moody's and S&P were using flawed information and models to generate their ratings, the ratings assigned to the Certificates did not accurately reflect their risk. Certificates were given investment grade ratings when in reality they were not of investment grade quality.  As such, the statements regarding the ratings of the Certificates were false and misleading…<br><br>The problems identified above were not disclosed to the public and resulted in artificially high ratings for the Certificates. These artificially high ratings, which were published in the Prospectus Supplements, were false and misleading in that they did not reflect the true risk of the Certificates. *Maine State* Complaint ¶¶ 181-184. | These representations were false or misleading.  The ratings given to the Certificates by the major credit rating agencies were based on the loan profiles fed to the agencies by Defendants.  But as described upon above and below, most (if not all) of the key components of that data were false because Defendants failed to adhere to disclosed underwriting standards, failed to assign title to the underlying mortgages properly, and manipulated the appraisal of properties underlying the mortgage pools.  As such, Defendants essentially pre-determined the ratings by "feeding garbage" into the ratings system.  This rendered misleading Defendants' representations concerning the ratings and their significance, because Defendants failed to disclose that |

| *Luther v. Countrywide,*<br>No. BC380698<br>(Cal. Super. Los Angeles Cty.) | *Maine State v. Countrywide,*<br>10-cv-00302 (C.D. Cal.) | *Western & Southern v. Countrywide,*<br>11-cv-07166 (C.D. Cal.) |
|---|---|---|
| all tranches of the Certificates.<br>    As alleged more fully below, the Registration Statements and Prospectus Supplements misstated and omitted material information regarding, *inter alia,* the process used to originate and the quality of the mortgages that were pooled in the Issuing Trusts and were used as the financial basis for the Certificates. *Luther* Complaint ¶¶ 8-11. | | ratings were based on unreliable information provided by Defendants themselves, and therefore did not reflect the true credit risks associated with the Certificates. *Western & Southern* Complaint ¶ 258. |

**Appendix B**

# MBS Purchased by National Integrity

| Offering/Tranche | Prospectus Supplement Date | Date Added to *Luther* | Days Elapsed Prior to Inclusion | Date Dismissed from *Maine State* | Days Elapsed Prior to Filing of *National Integrity* Action | Total Days Elapsed* |
|---|---|---|---|---|---|---|
| CWALT 2005-10CB (1A8) | 3/28/2005 | 11/14/2007 | 961 | 11/4/2010 | 370 | 1331 |
| CWALT 2005-20CB (1A3) | 5/25/2005 | 11/14/2007 | 903 | 11/4/2010 | 370 | 1273 |
| CWALT 2005-20CB (1A4) | 5/25/2005 | 11/14/2007 | 903 | 11/4/2010 | 370 | 1273 |
| CWALT 2005-26CB (A6) | 5/24/2005 | 11/14/2007 | 904 | 11/4/2010 | 370 | 1274 |
| CWALT 2005-30CB (1A6) | 6/27/2005 | 11/14/2007 | 870 | 11/4/2010 | 370 | 1240 |
| CWALT 2005-47CB (A11) | 8/25/2005 | 11/14/2007 | 811 | 11/4/2010 | 370 | 1181 |
| CWALT 2005-49CB (A3) | 9/27/2005 | 11/14/2007 | 778 | 11/4/2010 | 370 | 1148 |
| CWALT 2005-54CB (1A4) | 9/27/2005 | 11/14/2007 | 778 | 11/4/2010 | 370 | 1148 |
| CWALT 2006-7CB (1A14) | 3/29/2006 | 11/14/2007 | 595 | 11/4/2010 | 370 | 965 |
| CWALT 2007-15CB (A6) | 5/31/2007 | 11/14/2007 | 167 | 11/4/2010 | 370 | 537 |
| CWALT 2007-15CB (M) | 5/31/2007 | 11/14/2007 | 167 | 11/4/2010 | 370 | 537 |
| CWALT 2007-16CB (M1) | 6/28/2007 | 9/9/2008 | 439 | 11/4/2010 | 370 | 809 |
| CWALT 2007-17CB (M1) | 6/28/2007 | 9/9/2008 | 439 | 11/4/2010 | 370 | 809 |
| CWALT 2007-21CB (1A6) | 7/27/2007 | 9/9/2008 | 410 | 11/4/2010 | 370 | 780 |
| CWALT 2007-5CB (1A13) | 2/26/2007 | 9/9/2008 | 561 | 12/6/2010 | 338 | 899 |

\* 3 years= 1095 days

| Offering/Tranche | Prospectus Supplement Date | Date Added to *Luther* | Days Elapsed Prior to Inclusion | Date Dismissed from *Maine State* | Days Elapsed Prior to Filing of *National Integrity* Action | Total Days Elapsed* |
|---|---|---|---|---|---|---|
| CWHL 2005-24 (A7) | 9/27/2005 | 9/9/2008 | 1,078 | 11/4/2010 | 370 | 1448 |
| CWHL 2005-25 (A6) | 9/27/2005 | 9/9/2008 | 1,078 | 11/4/2010 | 370 | 1448 |
| CWHL 2006-21 (A15) | 12/27/2006 | 9/9/2008 | 622 | 11/4/2010 | 370 | 992 |
| CWHL 2007-15 (M) | 7/27/2007 | 9/9/2008 | 410 | 11/4/2010 | 370 | 780 |
| CWHL 2007-5 (A5) | 3/29/2007 | 9/9/2008 | 530 | 11/4/2010 | 370 | 900 |
| CWL 2006-S8 (A4) | 12/27/2006 | 9/9/2008 | 622 | 12/6/2010 | 338 | 960 |
| CWL 2006-S9 (A4) | 12/28/2006 | 9/9/2008 | 621 | 6/6/2011 | 156 | 777 |
| CWL 2006-S9 (A6) | 12/28/2006 | 9/9/2008 | 621 | 6/6/2011 | 156 | 777 |
| CWL 2007-S1 (A5) | 2/27/2007 | 9/9/2008 | 560 | 12/6/2010 | 338 | 898 |
| CWL 2007-S2 (A5F) | 3/29/2007 | 9/9/2008 | 530 | 11/4/2010 | 370 | 900 |
| CWL 2007-4 (A5W) | 3/28/2007 | 9/9/2008 | 531 | 11/4/2010 | 370 | 901 |

* 3 years= 1095 days

# Appendix C

## Registration Statements in *Luther* at issue in the *Western & Southern* and *National Integrity* Actions

| Plaintiffs' Offerings | Registration Statement | *Luther* Offerings |
|---|---|---|
| CWALT 2005-J1<br>CWALT 2005-10CB<br>CWALT 2005-13CB | **333-117949** | CWALT 2005- J1 3A1 |
| CWALT 2005-20CB<br>CWALT 2005-26CB<br>CWALT 2005-28CB<br>CWALT 2005-30CB | **333-123167** | CWALT 2005-11CB 2A8<br>CWALT 2005-26CB A6 |
| CWALT 2005-46CB<br>CWALT 2005-47CB<br>CWALT 2005-49CB<br><br>CWALT 2005-54CB | **333-125902** | CWALT 2005-38 A3<br>CWALT 2005-46CB A20<br>CWALT 2005-51 1A1<br>CWALT 2005-51 2A1<br>CWALT 2005-51 4A1<br>CWALT 2005-54CB 1A7<br>CWALT 2005-56 3A1<br>CWALT 2005-56 4A1<br>CWALT 2005-59 1A1<br>CWALT 2005-59 1A2A<br>CWALT 2005-62 1A1<br>CWALT 2005-62 2A1<br>CWALT 2005-63 3A1<br>CWALT 2005-64CB 1A7<br>CWALT 2005-72 A1<br>CWALT 2005-76 2A1<br>CWALT 2005-76 3A1<br>CWALT 2005-81 A1<br>CWALT 2005-J10 1A16<br>CWALT 2006-2CB A3 |

* *Luther* holdings are based on certifications provided by the *Luther* plaintiffs in *Maine State*. *See* Countrywide Defendants' Notice of and Request for Judicial Notice in Support of Motions to Dismiss, Dec. 7, 2011, No. 11-cv-07166-MRP, Docket No. 172, No. 11-cv-09889-MRP, Docket No. 65, Ex. 102 (*Luther* and *Maine State* purchases identified in briefing submitted in *Maine State*).

** Excerpts from the relevant Prospectus Supplements identifying the applicable Registration Statements are attached to Plaintiffs' Request for Judicial Notice as Exhibits 5 (*Luther*) and 6 *(Western & Southern)*.

| Plaintiffs' Offerings | Registration Statement | *Luther* Offerings |
|---|---|---|
| CWALT 2007-17CB<br>CWALT 2007-15CB<br>CWALT 2007-16CB<br>CWALT 2007-21CB | **333-140962** | CWALT 2007-17CB 1A3<br>CWALT 2007-19 1A34<br>CWALT 2007-22 2A16<br>CWALT 2007-24 A4 |
| CWHL 2005-24<br>CWHL 2005-25 | **333-125963** | CWHL 2005-23 A1<br>CWHL 2005-29 A1<br>CWHL 2005-HYB8 4A1<br>CWHL 2006-1 A2<br>CWHL 2006-1 A3<br>CWHL 2006-3 1A1<br>CWMBS 2005-23 A1<br>CWMBS 2005-29 A1<br>CWMBS 2005-HYB8<br>CWMBS 2006-1 A2<br>CWMBS 2006-1 A3 |
| CWHL 2005-J2 | **333-121249** | CWHL 2005-HYB4 2A1<br>CWL 2005-11 AF1<br>CWL 2005-12 2A2 |
| CWHL 2006-21<br>CWHL 2007-5 | **333-131662** | CWHL 2006-HYB3 2A1A<br>CWHL 2007-5 A2<br>CWHL 2006-HYB4 1A2<br>CWHL 2007-3 A12<br>CWHL 2006-HYB3 3A1A<br>CWL 2006-11 1AF 3<br>CWL 2006-15 A3<br>CWL 2006-9 1AF3<br>CWMBS 2006-HYB3 2A<br>CWMBS 2006-HYB3 3A<br>CWMBS 2006-HYB4 1A2<br>CWMBS 2006-HYB5 2A1 |

| Plaintiffs' Offerings | Registration Statement | *Luther* Offerings |
|---|---|---|
| CWHL 2007-14<br>CWHL 2007-15 | **333-140958** | CWHL 2007-9 A13 |
| CWL 2006-S8<br>CWL 2007-S1<br>CWL 2007-S2<br>CWL 2006-S9 | **333-132375** | CWL 2006-S3 A2<br>CWL 2006-S6 A2<br>CWL 2006-S7 A3<br>CWL 2006-S9 A3 |
| CWL 2007-4 | **333-135846** | CWABS 2006-15 A3<br>CWABS 2006-15 A3<br>CWL 2006-24 2A1 |
| CWALT 2006-14CB<br>CWALT 2006-39CB<br>CWALT 2006-7CB<br>CWALT 2006-5CB | **333-131630** | CWALT 2006-28CB A8<br>CWALT 2006-33CB M<br>CWALT 2006-33CB MM<br>CWALT 2006-HY12 A1<br>CWMBS 2006-OA2 A1<br>CWMBS 2006-OA2 A2A |
| CWL 2007-11 | **333-140960** | N/A |

Appendix C
3